JESSE SBAIH & ASSOCIATES, LTD.
Jesse M. Sbaih (#7898)
Ines Olevic-Saleh (#11431)
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
Tel     (702) 896-2529
Fax     (702) 896-0529
Email: jsbaih@sbaihlaw.com

*Attorneys for Relator*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* TALI ARIK, M.D. | Case No.: 2:19-cv-01560-JAD-VCF |
| Plaintiffs/Relators, | |
| vs. | **SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT** |
| DVH HOSPITAL ALLIANCE, LLC, d/b/a DESERT VIEW HOSPITAL; VALLEY HEALTH SYSTEM LLC, d/b/a THE VALLEY HEALTH SYSTEM; UNIVERSAL HEALTH SERVICES, INC.; VISTA HEALTH MIRZA, M.D. P.C. d/b/a VISTA HEALTH; and IRFAN MIRZA, M.D. | **&** |
| | **JURY TRIAL DEMANDED** |
| Defendants, | |

## I.

## INTRODUCTION

1.      This case involves a widespread, massive, intentional, and fraudulent billing scheme to defraud the Medicare and Medicaid health insurance programs by Defendants DVH Hospital Alliance, LLC, d/b/a Desert View Hospital; Valley Health System LLC, d/b/a The Valley Health System; Universal Health Services, Inc.; Vista Health Mirza, M.D. P.C., d/b/a Vista Health; and Irfan Mirza, M.D.

2.      This action arises under the Federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* (the "False Claims Act").

3.      This Honorable Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3730(b) and 3732(a).

4.      This Honorable Court also has jurisdiction over this case pursuant to 31 U.S.C. § 1331.

5.      This action is not based on a public disclosure.

6.      The operative allegations are based on the Relators' direct knowledge.

7.      Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because the Defendants transact business in this District and because most, if not all, of the acts and omissions of which Relator complains occurred in this District.

8.      As required by 31 U.S.C. § 3730(b)(2), Relators have provided to the Attorney General of the United States and the United States Attorney for the District of Nevada a statement of material evidence and information that Relators possess regarding this Complaint.

9.      Because the statement includes attorney-client communications and work product of Relators' counsel and was submitted to the Attorney General of the United States and the United States Attorney, in their capacity as potential co-counsel in this litigation, the Relators understand the subject statement to be confidential.

## II.

## THE PARTIES

10.      Relator Tali Arik, M.D. ("Dr. Arik"), is a resident of the State of Nevada and has been a board-certified cardiologist since 1987.

11.      In or about January 2005, Dr. Arik began practicing medicine, in the field of cardiology, in Pahrump, Nevada.

12.     On or about November 15, 2015, Dr. Arik began seeing cardiac patients at Desert View Hospital, the only hospital in Nye County, Nevada, which serves a rural population of approximately forty-five thousand (45,000) people.

13.     From January 1, 2018 to December 31, 2018, Dr. Arik (who had completed residency in internal medicine and a fellowship in cardiology) served as Medical Chief of Staff at Desert View Hospital.

14.     The United States of America (the "United States") provides reimbursement to Desert View Hospital for claims and requests for payment under Medicare, Champus, and Tricare.

15.     The United States also pays for a significant portion of claims and requests for payments that are made to the Medicaid program of the State of Nevada.

16.     DVH Hospital Alliance, LLC, d/b/a Desert View Hospital ("Desert View Hospital") is a Delaware corporation, which owns, operates, and does business as Desert View Hospital, a Critical Access Hospital in Pahrump, Nevada.

17.     Valley Health System LLC, d/b/a The Valley Health System ("Valley Health") is a Delaware Limited Liability Company.

18.     Based on information and belief, in or about August 2016, Valley Health acquired Desert Valley Hospital.

19.     Based on information and belief, Universal Health Services, Inc. ("Universal Health") is a foreign corporation and is the parent company of Valley Health and Desert View Hospital.

20.     Since the acquisition of Desert View Hospital in or about August 2016, Valley Health and Universal Health have taken an active role in managing and directing the billing for medical services provided by Desert View Hospital to state and federally funded health insurance programs.

21.     Based on information and belief, there exists, and at all relevant times there existed, a unity of interest and ownership between Defendants Desert View Hospital, Valley Health, and

Universal Health such that any individuality and separateness between Desert View Hospital, Valley Health, and Universal Health does not exist.

22.     Based on information and belief, Valley Health and Universal Health are the alter egos of Desert View Hospital.  Valley Health and Universal Health have been dominating and controlling the business and daily operations of Desert View Hospital. Adherence to the fiction of the separate existence of Desert View Hospital, Valley Health, and Universal Health would permit an abuse of the corporate privilege, sanction fraud, and promote injustice.

23.     Vista Health Mirza, M.D., P.C., d/b/a Vista Health ("Vista Health") is a domestic professional corporation.

24.     Since approximately January 10, 2019 to the present, Vista Health has provided hospitalist services at Desert View Hospital pursuant to a Hospitalist Services Agreement.

25.     Irfan Mirza, M.D. ("Dr. Mirza") is a resident of the State of Nevada and is an officer/employee/agent of Vista Health.

26.     Since approximately January 10, 2019, Dr. Mirza has provided hospitalist services at Desert View Hospital.

27.     Based on information and belief, there exists, and at all relevant times there existed, a unity of interest and ownership between Defendants Vista Health and Dr. Mirza such that any individuality and separateness between Vista Health and Dr. Mirza does not exist.

28.     Based on information and belief, Dr. Mirza is the alter ego of Vista Health.  Dr. Mirza has been dominating and controlling the business and daily operations of Vista Health. Adherence to the fiction of the separate existence of Vista Health would permit an abuse of the corporate privilege, sanction fraud, and promote injustice.

///

///

///

### III.

### <u>THE FALSE CLAIMS ACT</u>

29.     In salient part, the False Claims Act provides that any person who:

A. ***knowingly*** presents, or causes to be presented, a false or fraudulent ***claim*** for payment or approval;

B. knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

C. conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G)

31 U.S.C. §§ 3729(a)(1)(A)-(C)(emphases added).

30.     The term, "claim:"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—
    (i) is presented to an officer, employee, or agent of the United States; or
    (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—
        (I)     provides or has provided any portion of the money or property requested or demanded; or
        (II)    will reimburse such contractor, grantee, or other recipient for any portion of the money or other property which is requested or demanded; and
. . .

31 U.S.C. §§ 3729(b)(2)(A)-(B).

31.     A person who violates 31 U.S.C. §§ 3729(a)(1)(A)-(C)

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

32.     The False Claims Act is to be interpreted broadly, "in keeping with the Congress's intention 'to reach all types of fraud, without qualification, that might result in financial loss to the Government.'" *United States v. Neifert-White Co.*, 390 U.S. 228, 232, 88 S.Ct. 959, 19 L.Ed.2d 1061 (1968).

## IV.

## MEDICARE AND NEVADA MEDICAID PROGRAMS

33.     Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, et seq., establishes the Health Insurance for the Aged and Disabled Program, commonly referred to as the Medicare Program (the "Medicare Program" or "Medicare").

34.     Under Title XIX of the Social Security Act (42 U.S.C. §§ 1396-1, et seq.) Nevada Medicaid was established.

35.     Medicaid provides health coverage for people with low income and various disabilities and is jointly administered by the Centers for Medicare and Medicaid Services (CMS) of the federal government and the Nevada Department of Health and Human Services.  Medicaid is funded in part by federal government funds.

36.     The Medicare Program is comprised of four parts: A, B, C, and D.

37.     Medicare Part A provides federal government funds to help pay for, among other things, the costs of hospital, related post-hospital, home health services, and hospice care provided to Medicare beneficiaries. *See* generally 42 U.S.C. §§ 1395c, et seq.

38.     Medicare Part A is administered through contracts with Medicare administrative contractors. 42 U.S.C. § 1395h.

39.     Medicare Part B provides federal government funds to help pay for, among other things, physician services. *See* generally 42 U.S.C. §§ 1395j – 1395w-5.

40.     The Medicare Program, through the Medicare administrative contractor, pays a significant portion of every claim.  The Medicare beneficiary, or his or her supplemental insurance

carrier, is required to pay the balance owed the provider. The beneficiary's payment is sometimes referred to as a "co-payment." Beneficiaries also pay deductibles. *See* 42 U.S.C. §§ 1395d, 1395e, 1395f, 1395o, 1395p, 1395q, 1395r, 1395s.

41.     A Medicare Advantage Plan (like an HMO or PPO) is available under Medicare Part C and is offered by private companies approved by Medicare.   https://www.hhs.gov/answers/medicare-and-medicaid/what-is-medicare-part-c/index.html.

42.     A person who joins a Medicare Advantage Plan will obtain Part A (Hospital Insurance) and Part B (Medical Insurance) coverage.  Medicare Advantage Plans may offer extra coverage, such as vision, hearing, dental, and/or health and wellness programs. Most include Medicare prescription drug coverage (Part D). *Id.*

43.     Under a Medicare Advantage Plan, Medicare pays a fixed amount every month to the companies offering the Medicare Advantage Plan to enrollees. *Id.*

44.     CMS adjusts the monthly payments to Medicare Advantage organizations to reflect the health status of their enrollees. *See* 42 U.S.C. § 1395w-23(a)(1)(C)(i), (a)(3); 42 C.F.R. § 422.308(c)(2).

45.     Such adjustment ensures that Medicare Advantage "organizations are paid appropriately for their plan enrollees (that is, less for healthier enrollees and more for less healthy enrollees)." *See* Establishment of the Medicare Advantage Program, 70 Fed. Reg. 4588, 4657 (Jan. 28, 2005).  The risk adjustment methodology relies on enrollee diagnoses. *See* Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs, 74 Fed. Reg. 54,634, 54,673 (Oct. 22, 2009).

46.     Physicians and other health care providers submit diagnosis codes to the Medicare Advantage organizations, which in turn submit them to CMS. *See id.* at 54,674. These diagnosis codes contribute to an enrollee's risk score, which is used to adjust a base payment rate. *See id.* Each

diagnosis code submitted must be supported by a properly documented medical record. *See* 42 U.S.C. §§ 1395*l*(e), 1395y(a)(1)(A); 42 C.F.R. § 422.310(d).

47.     Desert View Hospital's fraud as it relates to the Medicare Advantage programs, as alleged herein, went undetected, thereby passing along inflated risk-adjustment data to the government and resulting in inaccurate capitation rates for services.

48.     Desert View Hospital is liable for fraud as described herein, as it relates to Medicare, because it has submitted cost report(s) that contain inaccurate inpatient service reports and has received an inflated reimbursement above its per diem rate.

## V.

## THE "MEDICAL NECESSITY" REQUIREMENT

49.     The Medicare program provides basic health insurance for individuals who are 65 or older, disabled, or have end-stage renal disease. 42 U.S.C. § 1395c.

50.     "[N]o payment [by Medicare] may be made ... for any expenses incurred for items or services ... [that] are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member[.]" 42 U.S.C. § 1395y(a)(1)(A).

51.     Medicare reimburses medical providers for inpatient hospitalization only if "a physician certifies that such services are required to be given on an inpatient basis for such individual's medical treatment, or that inpatient diagnostic study is medically required and such services are necessary for such purpose[.]" 42 U.S.C. § 1395f(a)(3).

52.     The Department of Health and Human Services, Centers for Medicare & Medicaid Services ("CMS"), administers the Medicare program and issues guidance governing reimbursement.

53.     CMS defines a "reasonable and necessary" service as one that "meets, but does not exceed, the patient's medical need," and is furnished "in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition ... in a setting appropriate to

the patient's medical needs and condition[.]" CMS, Medicare Program Integrity Manual § 13.5.4 (2019).

54.     The Medicare program defines "medically necessary" as those health care services, which are "needed to diagnose or treat an illness, injury, condition, disease, or its symptoms and that meet accepted standards of medicine." CMS, Medicare & You 2020: The Official U.S. Government Medicare Handbook 114 (2019).

55.     Inpatient admission "is generally appropriate for payment under Medicare Part A when the admitting physician expects the patient to require hospital care that crosses two midnights" 42 CFR § 412.3(d)(1).

56.     For inpatient CAH services, the physician must certify that the patient may reasonably be expected to be discharged or transferred to a hospital within 96 hours after admission to the CAH. 42 CFR § 424.15(a).

57.     Doctors do not have unfettered discretion to decide whether inpatient admission is medically necessary: "The factors that lead to a particular clinical expectation ***must be documented in the medical record*** in order to be granted consideration." 42 CFR § 412.3(d)(1)(i) (emphasis added).

58.     The regulations consider medical necessity a question of fact: "No presumptive weight shall be assigned to the physician's order under § 412.3 or the physician's certification ... in determining the medical necessity of inpatient hospital services .... A physician's order or certification will be evaluated in the context of the evidence in the medical record." *Id.* § 412.46(b).

59.     "Because medical necessity is a condition of payment, every Medicare claim includes an express or implied certification that treatment was medically necessary." ***Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.***, 953 F.3d 1108, 1114 (9th Cir. 2020). Therefore, "***claims for unnecessary treatment are false claims***." ***Id.***  (emphasis added).

///

///

# VI.

## INTERQUAL

60.     InterQual Level of Care Criteria 2019 ("InterQual") is a hospital industry-standard set of criteria developed (and updated annually) by McKesson Health Solutions LLC, and are reviewed and validated by a national panel of clinicians and medical experts, including those in the community and academic practice settings, as well as within the managed care industry throughout the United States. *See Winter*, 953 F.3d at 1115.

61.     InterQual criteria are a synthesis of evidence-based standards of care, current practices, and consensus from licensed specialists and/or primary care physicians.  InterQual criteria provide support for determining the medical appropriateness of hospital admission, continued stay, and discharge. *Id.*

62.     Medicare uses InterQual to evaluate whether claims are appropriate for payment. *Id.*

63.     In fact, "the InterQual criteria represent the 'consensus of medical professionals' opinions,' so a failure to satisfy the criteria also means that the admission went against the medical consensus." *Id.*

64.     Many hospitals (including, upon information and belief, Desert View Hospital) use InterQual as a benchmark for whether a patient should be admitted to the hospital for treatment.

# VII.

## SCIENTER AND MATERIALITY UNDER THE FCA

65.     Concerns about doctors being exposed to liability due to their clinical judgment can be alleviated through the "strict enforcement of [The False Claim] Act's" scienter and materiality requirements.  *Winter*, 953 F.3d at 1117.

66.     "Defendants act with the required scienter if they know the treatment was not medically necessary, or act in deliberate ignorance or reckless disregard of whether the treatment was medically necessary." *Winter*, 953 F.3d at 1117*; see also* 31 U.S.C. § 3729(b)(1).

67.     "A complaint needs only to allege facts supporting a plausible inference of scienter." *Winter*, 953 F.3d at 1122.

68.     "[T]he term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

69.     "[P]roof of materiality can include ... evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2003, 195 L. Ed. 2d 348 (2016).

70.     "Congress *prohibited* payment for treatment 'not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member[.]'" *Winter*, 953 F.3d at 1122 (9th Cir. 2020) (*quoting* 42 U.S.C. § 1395y(a)(1)(A)).

71.     Medicare pays inpatient hospitalization "only if such services are required to be given on in inpatient basis for such individuals' medical treatment[.]" *Id.* (*quoting* 42 U.S.C. § 1395f(a)(3)).

72.     To ensure compliance, Medicare regulations require all doctors to sign an acknowledgment that states as follows:

> Medicare payment to hospitals is based in part on each patient's principal and secondary diagnoses and the major procedures performed on the patient, as attested to by the patient's attending physician by virtue of his or her signature in the medical record. Anyone who misrepresents, falsifies, or conceals essential information required for payment of Federal funds, may be subject to fine, imprisonment, or civil penalty under applicable Federal laws.

*Id.* (quoting 42 C.F.R. § 412.46(a)(2)).

73.     "[I]f a physician cannot in good faith certify that an individual may reasonably be expected to be discharged or transferred within 96 hours after admission to the CAH, the CAH will not receive Medicare reimbursement for any portion of that individual's inpatient stay.  This would be determined based on a medical review of the case."  CMS Manual, Transmittal 234, March 10, 2017.

74.     A hospital and physician's compliance with the requirements and regulations detailed above are material to Medicare's decision of whether to allow payment of claims for services provided.  *See* 42 C.F.R. § 412.3(a) ("This physician order must be present in the medical record and

be supported by the physician admission and progress notes, in order for the hospital to be paid for hospital inpatient services under Medicare Part A"); 42 C.F.R. § 412.46(a)(2) ("Anyone who misrepresents, falsifies, or conceals essential information required for payment of Federal funds, may be subject to fine imprisonment, or civil penalty under applicable Federal laws").

75.    Allegations of a provider's false certification of the medical necessity requirement, along with those that the government would not have paid for such claims had it known that inpatient hospitalizations were medically unnecessary constitutes sufficiently pled materiality requirement under the FCA. *Id.* at 1122.

## VIII.

## <u>THE FALSE CLAIMS ACT & THE IMPLIED FALSE CERTIFICATION THEORY</u>

76.    In *Universal Health Services, Inc. v. United States*, 136 S.Ct. 1989 (2016), the United States Supreme Court explained that the Implied False Certification Theory applies "when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment.  But if that claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement, so the theory goes, the defendant has made a misrepresentation that renders the claim 'false or fraudulent' under § 3729(a)(1)(A)." *Id.* at 1995.

77.    Specifically, the United States Supreme Court held that, "[t]he implied false certification theory can be a basis for FCA liability when a defendant submitting a claim makes specific representations about the goods or services provided, but fails to disclose noncompliance with material statutory, regulatory, or contractual requirements that make those representations misleading with respect to those goods or services." *Id.* at 1993-94.

///

///

///

///

## IX.

## DESERT VIEW HOSPITAL AND ITS INTERACTIONS WITH GOVERNMENT HEALTH INSURANCE PLANS

78.     Desert View Hospital is a rural hospital with a Medicare Critical Access Hospital ("CAH") designation in accordance with 42 CFR § 485.601, *et seq*.

79.     CAH designation is given to eligible rural hospitals by the Centers for Medicare and Medicaid Services ("CMS").

80.     Congress created the CAH designation through the Balanced Budget Act of 1997 in response to the prevalence of rural hospital closures during the 1980s and early 1990s.

81.     The CAH designation is designed to reduce the financial vulnerability of rural hospitals and improve access to healthcare by keeping essential services in rural communities.

82.     During the relevant time period, Desert View Hospital's revenue was mostly derived from Medicare, Medicare Advantage, and Medicaid, a joint state-federal program in which healthcare providers serve financially disadvantaged or disabled patients and submit claims for government reimbursement.

83.     A CAH, such as Desert View Hospital, is paid for its services primarily by submitting invoices to various payers, including Medicare, Medicare Advantage, Medicaid, CHAMPUS, and Tricare.

84.     Based on information and belief, employee/agents of Valley Health and Universal Health perform billing services to state and federally funded health insurance programs (such as Medicaid and Medicare) for Desert View Hospital relating to its hospital services.

85.     Desert View Hospital, as a CAH, is not subject to Medicare's Inpatient Prospective Payment System ("IPPS") or the Hospital Outpatient Prospective Payment System ("OPPS").

86.     Rather, due to its CAH status, the Medicare program reimburses Desert View Hospital for most inpatient and outpatient services to Medicare patients under a "cost-based reimbursement."

87.    "Cost-based reimbursement" provides a tremendous financial advantage to CAHs (such as Desert View Hospital) by allowing them to be reimbursed at one hundred one percent (101%) of costs on all their hospital Medicare revenue.

## X.

## THE VISTA HEALTH DEFENDANTS

88.    On January 10, 2019, to further its objective of enhancing its revenue by increasing inpatient admissions, decreasing patient transfers to a higher level of care facility, and performing more testing/procedures on individuals admitted as inpatients, Desert View Hospital entered into a Hospitalist Services Agreement with Vista Health and Dr. Mirza (collectively "Vista Health Defendants") for the provision of hospitalist services to Desert View Hospital Patients ("Vista Health Hospitalist Agreement").

89.    On or about January 10, 2019, in accordance with the Vista Health Hospitalist Agreement, Dr. Mirza began to treat patients at Desert View Hospital.

90.    Among other duties, in their role as the Desert View hospitalists, Vista Health Defendants were responsible for determining when a patient's medical condition warrants an inpatient admission at Desert View Hospital, when the patients should be transferred to a facility with a higher level of care, and what types of medical testing/procedures the patient's condition necessitates.

91.    Pursuant to the Vista Health Hospitalist Agreement, in addition to direct compensation from Desert View hospital for their hospitalist services, the Vista Health Defendants directly billed to and collected from state and federally funded insurance programs (such as Medicare and Medicaid) for the services they provided to those individuals admitted as inpatients at the Desert View Hospital.

92.    Therefore, the Vista Health Defendants' compensation has been and is directly correlated to the earnings of Desert View Hospital. In other words, the more inpatient admissions, the less patient transfers, and the longer a patient remains hospitalized at Desert View Hospital, the more money Vista Health Defendants earned and continue to earn.

93.    Since January 2019, based on documents recently produced by Desert View Hospital in this action and review of numerous medical charts generated by Desert View Hospital, the Vista

Health Defendants increased Desert View Hospital's revenue by, among other things, (1) fraudulently increasing inpatient admissions to Desert View Hospital; (2) not transferring patients to a higher level of care facility and admitting them as inpatients at Desert View Hospital; (3) and ordering a multitude of medical testing without supporting requisite medical necessity.

94.     Moreover, the Vista Health Defendants have been knowingly submitting claims for payment to and collecting payments from Medicare and Medicaid health insurance programs for medically unnecessary inpatient admissions.

95.     As a direct result of the concerted and fraudulent efforts of Desert View Hospital, the Vista Health Defendants, and the other named Defendants to increase inpatient admissions without medical necessity, Desert View Hospital's inpatient volume grew tremendously.

96.     For example, despite generally lower emergency department visits at Desert View Hospital, the Vista Health Defendants were able to convert such visits at an alarmingly high rate to inpatient admissions.  Specifically, in January 2019 inpatient admissions increased by 68.1% from January 2018; in February 2019 inpatient admissions increased 63.1 % from February 2018; in March 2019 inpatient admissions increased by 37.4% from March 2018; and April 2019 inpatient admissions increased by 62.7% from April 2018.

**XI.**

**SUMMARY OF CLAIMS**

97.     From January 1, 2018 to December 31, 2018, Dr. Arik (who had completed residency in internal medicine and a fellowship in cardiology) served as Medical Chief of Staff at Desert View Hospital.

98.     Prior to January 10, 2019, Dr. Arik believed that Desert View Hospital was operating under the guidelines of Federal law regarding inpatient admissions.  However, in doing so, Desert View Hospital's inpatient admissions and volume of testing/procedures were low, which resulted in severe financial distress for Desert View Hospital.

99.     Consequently, Susan Davila (the CEO at Desert View Hospital) met with Dr. Arik (who was Medical Chief of Staff at Desert View Hospital at the time) on multiple occasions to discuss increasing admissions of patients, decreasing transfers from the hospital, and performing tests/procedures in order to enhance the financial stability and profitability of Desert View Hospital.

100.    In December 2018, a meeting was attended by Ms. Davila, Dr. Arik, and James Oscarson (manager of business development at Desert View Hospital).

101.    During the meeting, Ms. Davila advised Dr. Arik and others that she had relieved Rural Physicians Group ("RPG") of their duties as hospitalists at Desert View Hospital because RPG was not admitting a sufficient number of individuals as inpatients, were transferring too many patients out of Desert View Hospital to higher level of care facilities, and that RPG's manner of practicing medicine was contrary to the financial interests of Desert View Hospital.

102.    Ms. Davila further advised Dr. Arik that her "job was on the line" if more beds are not filled at Desert View Hospital by increasing inpatient admissions and decreasing transfers in order to enhance revenue.

103.     Ms. Davila further told Dr. Arik that more testing/procedures on patients must be performed in order to ensure the financial viability of Desert View Hospital.

104.    Finally, Ms. Davila advised Dr. Arik that Desert View Hospital will be entering into a lucrative contract (believed to be approximately 30% more than RPG was paid) with Vista Health, to replace RPG and to assume the hospitalist duties at Desert View Hospital.

105.    From approximately January 10, 2019 to the present, Desert View Hospital (in conspiracy with other named defendants) implemented and executed a widespread scheme in violation of the False Claims Act.

106.    After becoming aware of Desert View Hospital's scheme to defraud Medicare and Medicaid and lack of concern for patient safety for the sake of profit, Dr. Arik met with Dr. Daniel McBride (Chief Medical Officer at Valley Health) to convey his concerns.

107.    On or about May 17, 2019, after Dr. Arik's concerns about Desert View Hospital's widespread violation of the law and jeopardizing patient safety went unremedied, Dr.   Arik   resigned his medical privileges at Desert View Hospital.

108.    Dr. Arik is presently the only resident cardiologist living and working in Pahrump, Nevada who provides full-time outpatient cardiology medical care to members of the community.

109.    In such capacity, Dr. Arik is privy to highly sensitive and confidential medical records/charts that are generated at Desert View Hospital for his cardiology patients.

110.    In addition, Dr. Arik is privy to highly sensitive and confidential medical records/charts from another medical provider in Pahrump, Nevada and acquired confidential information relating to Desert View Hospital's billing practices from a former biller at Desert View Hospital.

111.    Such information supports Dr. Arik's allegations that the Defendants violated the False Claims Act as follows:

**A.    False Express Certification of Medical Necessity**

112.    **Patient 1**

Patient 1 presented to Desert View Hospital on _____ with complaints of chest pain and cardiac enzymes diagnostic of myocardial infarction, a heart attack. Patient 1's presentation was consistent with the High-Risk-Criteria.

Dr. Mirza wrote in Patient 1's chart, "stable for Lexiscan. I m [sic] aware of elevated enzymes." Dr. Mirza's notation is consistent with a patient experiencing a heart attack.

According to *Braunwald's Cardiology Practice Standards*, patients (like this patient) having a heart attack must be immediately transferred to an acute care hospital that has a cardiac cath lab, which is properly equipped and staffed to provide angiograms and coronary intervention (stents). *Braunwald's Cardiology Practice Standards*, pg. 290.

However, even though Desert View Hospital does not have a cath lab necessary to treat this patient, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital.  Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

In addition, according to the medical chart, this patient underwent an unnecessary nuclear stress test, a very costly test used to determine whether a patient has coronary artery disease and heart attack risk. However, according to the medical chart, the subject patient was already diagnosed with a heart attack using a very inexpensive blood test.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Humana/Medicare in the amount of $20,854.80 for the inpatient admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Humana/Medicare for hospitalist services rendered to the subject patient.

113.   **Patient 2**

Patient 2 presented to Desert View Hospital on _____with complaints of chest pain and cardiac enzymes diagnostic of myocardial infarction, a heart attack. Patient 2's presentation was consistent with High-Risk Criteria.

A notation on the nuclear stress test worksheet indicates that Dr. Mirza was aware of Patient 2's elevated cardiac enzyme (troponin), which is evidence of myocardial infarction.

According to *Braunwald's Cardiology Practice Standards*, patients (like this patient) having a heart attack must be immediately transferred to an acute care hospital that has a cardiac cath lab, which is properly equipped and staffed to provide angiograms and coronary intervention (stents). *Braunwald's Cardiology Practice Standards*, pg. 290.

However, even though Desert View Hospital does not have a cath lab necessary to treat this patient, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital. Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); ***see also Winter***, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

In addition, according to the medical chart, this patient underwent an unnecessary nuclear stress test, a very costly test used to determine whether a patient has coronary artery disease and heart attack risk. However, according to the medical chart, the subject patient was already diagnosed with a heart attack using a very inexpensive blood test.

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $25,585.54 for the inpatient

admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

114.   **Patient 3**

Patient 3 presented to Desert View Hospital on _____ with complaints of chest pain, abnormal EKG and enzymes positive for myocardial infarction, a heart attack.  Patient 3's presentation was consistent with Very-High-Risk Criteria.

According to *Braunwald's Cardiology Practice Standards*, patients (like this patient) having a heart attack must be immediately transferred to an acute care hospital that has a cardiac cath lab, which is properly equipped and staffed to provide angiograms and coronary intervention (stents).  *Braunwald's Cardiology Practice Standards*, pg. 290.

However, even though Desert View Hospital does not have a cath lab necessary to treat this patient, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital.  Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); ***see also Winter***, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Anthem in the amount of $17,076.85 for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Anthem for hospitalist services rendered to the subject patient.

115.   **Patient 4**

Patient 4 presented to Desert View Hospital on _____ with complaints of NSTEMI-type acute coronary syndrome manifest as heart palpations, abnormal EKG, and shortness of breath with positive cardiac enzymes (a heart attack).  Patient 4's presentation was consistent with High-Risk Criteria.

Dr. Mirza wrote in Patient 4's chart that the patient will "get an echocardiogram, carotid ultrasound, and Lexiscan stress test for a further cardiac workup."

According to *Braunwald's Cardiology Practice Standards*, patients (like this patient) having a heart attack must be immediately transferred to an acute care hospital that has a cardiac cath lab, which is properly equipped and staffed to provide angiograms and coronary intervention (stents).  *Braunwald's Cardiology Practice Standards*, pg. 290.

However, even though Desert View Hospital does not have a cath lab necessary to treat this patient, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital. Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

In addition, according to the medical chart, this patient underwent several unnecessary tests to determine whether the patient has coronary artery disease and heart attack risk. However, according to the medical chart, the subject patient was already diagnosed with a heart attack using a very inexpensive blood test.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $18,726.54 for the inpatient admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

116. **Patient 5**

Patient 5 presented to Desert View Hospital on _____and was diagnosed with myocardial infarction, NSTEMI-type (a heart attack). Patient 5's presentation was consistent with High-Risk Criteria.

In his notes, the admitting physician states in his plan, "if troponin continued to be mounting upward trend probably need intervention cardiology services which will be discussed [sic]." However, Patient 5 already had the diagnosis of NSTEMI.

According to *Braunwald's Cardiology Practice Standards*, patients (like this patient) having a heart attack must be immediately transferred to an acute care hospital that has a cardiac cath lab, which is properly equipped and staffed to provide angiograms and coronary intervention (stents). *Braunwald's Cardiology Practice Standards*, pg. 290.

However, even though Desert View Hospital does not have a cath lab necessary to treat this patient, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital. Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to

provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

In addition, according to the medical chart, this patient underwent several unneeded cardiac tests and an unnecessary nuclear stress test, a very costly test used to determine whether a patient has coronary artery disease and heart attack risk. However, according to the medical chart, the subject patient was already diagnosed with a heart attack using a very inexpensive blood test.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $25,585.54 for the inpatient admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

117.   **Patient 6**

Patient 6 presented to Desert View Hospital on _____ with complaints of dizziness while undergoing dialysis. A blood test revealed that the patient suffered from congestive heart failure, and myocardial infarction with serum troponin 0.24. Patient 6's condition was consistent with High-Risk Criteria.

However, even though Desert View Hospital does not have an Intensive Care Unit ("ICU") to deal with the subject patient's serious medical comorbidities, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital. Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $6,581.53 for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

118.    **Patient 7**

Patient 7 presented to Desert View Hospital on _____with complaints of worsening shortness of breath due to congestive heart failure, in the context of multiple critical diagnoses including a gastrointestinal bleed only one week prior.  On admission, there was clinical and chest x-ray evidence of congestive heart failure with further confirmation based on laboratory studies, and laboratory evidence of non-ST segment elevation myocardial infarction.  Patient 7's condition was consistent with Very-High-Risk Criteria.

However, even though Desert View Hospital does not have an ICU to deal with the subject patient's serious medical comorbidities, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital.  Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/AARP in the amount of $31,876.63 for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____  for payment to Medicare/AARP for hospitalist services rendered to the subject patient.

119.    **Patient 8**

Patient 8 presented to Desert View Hospital on _____ with complaints of cardiac instability and a history of coronary bypass surgery with congestive heart failure and rapid atrial fibrillation.

Patient 8 already had an established cardiologist and electrophysiologist in Las Vegas and was scheduled for evaluation and treatment of the atrial fibrillation condition with a procedure (TEE/Cardioversion) not available at Desert View Hospital.

However, even though Desert View Hospital is not an appropriate setting to perform a cardioversion (a procedure that requires a certified nurse anesthetist or anesthesiologist and a Transesophageal Echo), the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital and underwent a cardioversion.  Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Anthem in the amount of $34,798.36 for the inpatient admission.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Humana/Medicare for hospitalist services rendered to the subject patient.

120. **Patient 8(a)**

Patient 8(a) presented to Desert View Hospital on _____ with complaints of severe cardiac chest pain.

However, even though Desert View Hospital does not have an ICU to deal with the subject patient's serious medical comorbidities, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital. Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

121. **Patient 8(b)**

Patient 8(b) presented to Desert View Hospital on _____ with complaints of generalized weakness and shortness of breath.

However, even though Desert View Hospital does not have an ICU to deal with the subject patient's serious medical comorbidities, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital. Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual §

13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

122.  **Patient 9**

Patient 9 presented to Desert View Hospital on _____ with a diagnosis of cerebrovascular accident, a stroke patient.

According to the "*Stroke Guidelines for the Early Management of Patients with Acute Ischemic Stroke*," January 31, 2013 (the "Stroke Guidelines"), patients having a stroke (like the subject patient) must be immediately transferred to a Primary Stroke Center ("PSC") or Comprehensive Stroke Center ("CSC").

However, even though Desert View Hospital is not a PSC or CSC necessary to treat this patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

In addition, according to the medical chart, this patient underwent unnecessary pulmonary testing, a very costly test/treatment not indicated for a stroke patient.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $49,962.41 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

123.    **Patient 10**

Patient 10 presented to Desert View Hospital on _____ with a diagnosis of "TIA with left-sided weakness resolved with some numbness on the left side of the face."

According to the Stroke Guidelines, patients having a stroke (like the subject patient) must be immediately transferred to a Primary Stroke Center ("PSC") or Comprehensive Stroke Center ("CSC").

However, even though Desert View Hospital is not a PSC or CSC necessary to treat this patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Humana Medicare in the amount of $24,918.63 for the admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Humana Medicare for hospitalist services rendered to the subject patient.

124.    **Patient 11**

Patient 11 presented to Desert View Hospital on _____ with a diagnosis of cerebrovascular accident, a stroke.

According to the Stroke Guidelines, patients having a stroke (like the subject patient) must be immediately transferred to a Primary Stroke Center ("PSC") or Comprehensive Stroke Center ("CSC").

However, even though Desert View Hospital is not a PSC or CSC necessary to treat this patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $22,008.54 for the admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

125.   **Patient 12**

Patient 12 presented to Desert View Hospital on_____ with a diagnosis of a TIA.

According to the Stroke Guidelines, patients having a stroke (like the subject patient) must be immediately transferred to a Primary Stroke Center ("PSC") or Comprehensive Stroke Center ("CSC").

However, even though Desert View Hospital is not a PSC or CSC necessary to treat this patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Tricare in the amount of $22,145.42 for the admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Tricare for hospitalist services rendered to the subject patient.

126.   **Patient 13**

Patient 13 presented to Desert View Hospital on _____ with a diagnosis of a TIA.

According to the Stroke Guidelines, patients having a stroke (like the subject patient) must be immediately transferred to a Primary Stroke Center ("PSC") or Comprehensive Stroke Center ("CSC").

However, even though Desert View Hospital is not a PSC or CSC necessary to treat this patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare

Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Optumcare Network of Nevada/United Healthcare Medicare in the amount of $89,813.15 for the admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Optumcare Network of Nevada/United Healthcare Medicare for hospitalist services rendered to the subject patient.

127.   **Patient 14**

Patient 14 presented to Desert View Hospital on _____ with a diagnosis of a TIA.

According to the Stroke Guidelines, patients having a stroke (like the subject patient) must be immediately transferred to a Primary Stroke Center ("PSC") or Comprehensive Stroke Center ("CSC").

However, even though Desert View Hospital is not a PSC or CSC necessary to treat this patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $27,151.80 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

128.   **Patient 14(a)**

Patient 14(a) presented to Desert View Hospital on _____ with a diagnosis of a stroke.

According to the Stroke Guidelines, patients having a stroke (like the subject patient) must be immediately transferred to a Primary Stroke Center ("PSC") or Comprehensive Stroke Center ("CSC").

However, even though Desert View Hospital is not a PSC or CSC necessary to treat this patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

129.    **Patient 14(b)**

Patient 14(b) presented to Desert View Hospital on _____ with a diagnosis of a stroke.

According to the Stroke Guidelines, patients having a stroke (like the subject patient) must be immediately transferred to a Primary Stroke Center ("PSC") or Comprehensive Stroke Center ("CSC").

However, even though Desert View Hospital is not a PSC or CSC necessary to treat this patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for

the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

130.   **Patient 15**

Patient 15 presented to Desert View Hospital on _____ with serious rectal bleeding in the context of a history of coronary stents taking recommended dual antiplatelet therapy, consisting of aspirin and clopidogrel.

According to the *Acute Lower Gastrointestinal Bleeding* published in the prestigious New England Journal of Medicine on March 16, 2017 ("GI Bleeding Standards"), patients (like the subject patient) having a GI Bleed must be immediately undergo a colonoscopy, which Desert View Hospital was not staffed and/or equipped to perform on patients admitted to Desert View Hospital.

However, even though Desert View Hospital was not staffed and/or equipped to perform colonoscopies on GI bleed patients admitted to Desert View Hospital, the medical chart reveals that the patient was admitted to Desert View Hospital.  Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  ***See*** Medicare Program Integrity Manual § 13.5.4 (2019); ***see also Winter***, 953 F.3d at 1114 (admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

In addition, according to the medical chart, this patient underwent CT scan of the head, carotid ultrasound, an echocardiogram (very expensive testing), which had nothing to do with treatment for rectal bleeding.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); ***Winter***, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $34,905.26 for the inpatient admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

///

///

131. **Patient 16**

Patient 16 presented to Desert View Hospital on _____ with multiple critical medical conditions including, but not limited to, renal failure and congestive heart failure, and pneumonia.

Patients (such as this one) having renal failure and other organ failures must be immediately transferred to a higher level facility to obtain critical care evaluation and treatment.

However, even though Desert View Hospital does not have an ICU to deal with the subject patient's serious multiple medical comorbidities, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital.  Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $42,356.08 for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

132. **Patient 17**

Patient 17 presented to Desert View Hospital on _____ with diagnoses of sepsis and pneumonia, in the context of underlying congestive heart failure and renal failure.

Patients (such as this one) having renal failure and other organ failures must be immediately transferred to a higher level facility to obtain critical care evaluation and treatment.

However, even though Desert View Hospital does not have an ICU to deal with the subject patient's serious multiple medical comorbidities, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital.  Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Anthem in the amount of $29,740.78 for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Anthem for hospitalist services rendered to the subject patient.

133.  **Patient 18**

Patient 18 presented to Desert View Hospital on _____ with a diagnosis of acute renal failure and altered mental status.

Patients (such as this one) having renal failure must be immediately transferred to a higher level facility to obtain critical care evaluation and treatment.

However, even though Desert View Hospital does not have an ICU to deal with the subject patient's serious multiple medical comorbidities, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital.  Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $46,950.90 for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

134.  **Patient 19**

Patient 19 presented to Desert View Hospital on _____ with multiple critical diagnoses of congestive heart failure, deep vein thrombosis, acute renal failure, and atrial fibrillation with rapid ventricular response.

However, even though Desert View Hospital does not have an ICU to deal with the subject patient's serious multiple medical comorbidities, the medical chart reveals that the patient was

admitted as an inpatient to Desert View Hospital.  Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/United/Optumcare in the amount of $28,377.09 for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/United/Optumcare for hospitalist services rendered to the subject patient.

135.   **Patient 20**

Patient 20 presented to Desert View Hospital on _____ with acute hypoxic respiratory failure.

However, even though Desert View Hospital does not have an ICU to deal with the subject patient's serious multiple medical comorbidities, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital.  Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Anthem in the amount of $19,122.44 for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Anthem for hospitalist services rendered to the subject patient.

136.   **Patient 21**

Patient 21 presented to Desert View Hospital on _____ with a diagnosis of congestive heart failure, one of many such admissions for this patient.

However, even though Desert View Hospital does not have an ICU to deal with the subject patient's serious multiple medical comorbidities, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital. Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $40,456.43 for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

137. **Patient 22**

Patient 22 presented to Desert View Hospital with complaints of weakness, fatigue, poor appetite, and abdominal discomfort.  No cardiac complaints.

According to the medical chart, this patient underwent an unnecessary nuclear stress test even though the patient did not have any cardiac complaints.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/SR Care Plus P3 in the amount of $24,175.69 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/SR Care Plus P3 for hospitalist services rendered to the subject patient.

138. **Patient 23**     Omitted

139. **Patient 24**

On _____, Patient 24 was admitted as an inpatient into Desert View Hospital with complaints of dizziness.

However, there was no medical indication for an inpatient admission of this patient and any certification by the admitting physician, that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, according to the medical chart, this patient was subjected to an MRI of the brain, CT scan of the brain, carotid ultrasound, and a cardiac echocardiogram, which were not indicated and did not correlate with the patient's complaints in the medical chart.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/AARP in the amount of $68,353.73 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/AARP for hospitalist services rendered to the subject patient.

140.   **Patient 25**

Patient 25 presented to Desert View Hospital on _____ with weakness and shortness of breath due to a left molar tooth infection.

However, there was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, according to the medical chart, this patient with the "tooth infection" was subjected to an echocardiogram, which was not indicated and did not correlate with the patient's complaints in the medical chart.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $30,660.04 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

141.   **Patient 26**

Patient 26 presented to Desert View Hospital on _____ with weakness and fatigue and found to have hyponatremia (low sodium level) when the laboratory studies returned.

According to the medical chart, despite the absence of any cardiac symptoms or any abnormal cardiac findings on examination, the patient underwent an echocardiogram during the hospitalization.

In his admission note, Dr. Mirza stated, "because of history of hypertension, will get an echocardiogram." However, history of hypertension does not meet appropriate use criteria for obtaining a hospital echocardiogram in a patient admitted for noncardiac reasons.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/AARP in the amount of $26,765.81 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/AARP for hospitalist services rendered to the subject patient.

142.   **Patient 27**

Patient 27 presented to Desert View Hospital on _____ after a recent discharge for airways disease and COPD. He was re-admitted for similar reasons with admission diagnosis of COPD and sepsis.

In a _____ progress note, Dr. Mirza states, "wife reported that he is not breathing well. She would like to have a stress test and an echocardiogram done while he is here… Which I will order."

According to the medical chart, despite the absence of any cardiac complaints or any abnormal cardiac findings on examination, the patient underwent a nuclear stress test and an echocardiogram during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $41,527.51 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

143.   **Patient 28**

Patient 28 presented to Desert View Hospital on _____ because of atrial fibrillation. This was 1 of at least 4 admissions for the same diagnosis in the past two (2) months at Desert View Hospital.

Despite having had multiple echocardiograms in the previous two (2) months, including one at Summerlin Hospital to which this patient had been transferred in the interim for atrial fibrillation ablation and insertion of a pacemaker as set forth in the medical chart, this patient underwent yet another echocardiogram on _____.

In the medical chart, Muhammad Syed, M.D. (the patient's attending physician) clearly stated as follows: "Since patient recently had an extensive cardiac workup done at Summerlyn [sic], will not repeat cardiac workup at this time, will just monitor heart rate and cardiac enzymes."

However, despite Dr. Syed's findings and acknowledging in the medical chart that a TEE (a more in-depth echocardiogram) was done two weeks prior, Dr. Mirza ordered and the patient underwent an echocardiogram.

The test was not indicated due to recent multiple echocardiograms performed on this patient.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $47,698.26 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

144.   **Patient 29**

Patient 29 presented to Desert View Hospital on _____ with complaints of nausea and vomiting along with passing of gas and diarrhea. Patient 29 had had a similar episode in _____.

Despite the absence of cardiac symptoms in the medical chart, this patient underwent an echocardiogram and carotid ultrasound, which did not correlate with this patient's complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Mutual of Omaha in the amount of $44,459.38 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Mutual of Omaha for hospitalist services rendered to the subject patient.

145.   **Patient 30**

Patient 30 presented to Desert View Hospital on _____ with an admission diagnosis of palpitations and underwent a nuclear stress test on _____.

In the medical chart, Dr. Mirza states that the patient came to the hospital because of palpitations but had a normal cardiac rhythm on arrival. Dr. Mirza further states that the patient was excessively fatigued and deconditioned and therefore "needs a [sic] echo and Lexiscan stress test, along with treatment as per ACC guidelines."

This patient underwent a Lexiscan stress test, which did not correlate with this patient's complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $19,844.71 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

146.   **Patient 31**

Patient 31 presented to Desert View Hospital on _____ with a chief complaint of groin pain due to an injury. In the hospital emergency room, Patient 31 denied any cardiac symptoms.

However, this patient underwent a Lexiscan stress test, which had nothing to do with the patient's groin injury.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $33,518.20 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

147.   **Patient 32**

Patient 32 presented to Desert View Hospital on _____ with notation in the admission history that there was chest pain that had resolved by the time the patient arrived in the emergency room.   Patient 32's EKG and cardiac enzymes showed no evidence of myocardial infarction.

Patient 32 was diagnosed as Acute Coronary Syndrome ("ACS").   However, Patient 32 did not meet the criteria for this diagnosis.

Nonetheless, Patient 32 was kept at Desert View Hospital as an inpatient and underwent an echocardiogram and a nuclear stress test.   Patient had already had an echocardiogram on _____.   However, there was no medical indication for an inpatient admission of Patient 32 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).   Furthermore, the inpatient admission of Patient 32 did not meet InterQual criteria.

In addition, while at Desert View Hospital, Patient 32 also underwent multiple other tests including a CT angiogram of the chest with history noted to be fever and cough, which patient did not have according to the admission history, a CT scan of the abdomen and pelvis with and without contrast even though Patient 32 was admitted with chest pain, and an abdominal ultrasound two (2) days in a row even though nothing was mentioned in the admission history about abdominal symptoms.

None of these tests were indicated and did not correlate with Patient 32's complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $19,001.68 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

148.   **Patient 33**

Patient 33 presented to Desert View Hospital on _____ with syncope/fainting. In the admission history, it was documented that Patient 33 was in no distress and, in the emergency room, she already underwent a brain CT scan that showed no significant abnormality.

Despite the unremarkable brain CT scan, Patient 33 underwent a brain MRI scan on _____.  On admission, Dr. Mirza inappropriately pre-determined that Patient 33 would be admitted as an inpatient for 2-3 days.

However, there was no medical indication for an inpatient admission of Patient 33 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of Patient 33 did not meet InterQual criteria.

While at Desert View Hospital, Patient 33 underwent multiple tests including an echocardiogram even though the physical exam documented no abnormality of the heart.  Patient 33 also underwent a nuclear medicine stress test, which was not indicated by the medical chart.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $34,111.51 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

149.   **Patient 34**

Patient 34 presented to Desert View Hospital on _____ with a chief complaint of shortness of breath due to pneumonia.  Prior to that admission, Patient 34 had been at Desert View Hospital during which admission she underwent implantation of a pacemaker and subsequently developed pneumonia.

In the admission history and physical, Dr. Mirza states, "needs a echo [sic] and Lexiscan stress test, along with treatment as per, will be addressed as well.  In the ER cardiac enzymes were not elevated. EKG showed nonspecific changes no acute ST elevations seen."

Despite being admitted with a noncardiac problem with a recent history of cardiac admissions and cardiac testing, repeat cardiac testing was ordered by Dr. Mirza and performed by Desert View Hospital.

None of these tests were indicated and did not correlate with Patient 34's complaints during the hospitalization.

In addition, even though Desert View Hospital is not properly staffed (no anesthesiologist/nurse anesthetist, staff trained to assist in cardiac procedures, and/or staff to address complications, and was not properly equipped (no cardiac cath lab) to implant pacemakers, a pacemaker implant was performed on Patient 34.  Therefore, the pacemaker implant was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $95,983.11 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

150.   **Patient 35**

Patient 35 presented to Desert View Hospital on _____ with shortness of breath and palpitations and was found to have atrial fibrillation.

This was a new onset, not accompanied by symptoms of acute coronary syndrome, no EKG or cardiac enzyme evidence of myocardial ischemia.  Despite the absence of an indication, the patient underwent a nuclear stress test on _____.

The nuclear stress test was not indicated and did not correlate with Patient 35's complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $37,461.13 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

151.   **Patient 35(a)**

Patient 35(a) presented to Desert View Hospital on _____ with an aching of the right posterior jaw.

The medical chart is devoid of any mention of previous heart disease or current heart disease. However, Patient 35(a) underwent an echocardiogram.

The echocardiogram was not indicated and did not correlate with Patient 35(a)'s complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

152.   **Patient 35(b)**

Patient 35(b) presented to Desert View Hospital on _____ with a history of back pain of 2 days duration that occurred during lifting heavy objects.

The medical chart is devoid of any cardiac symptoms.  However, Patient 35(b) underwent an echocardiogram.

The echocardiogram was not indicated and did not correlate with Patient 35(b)'s complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

153.    **Patient 35(c)**

Patient 35(c) presented to Desert View Hospital on _____ with complaints of an episode of dizziness that occurred when in bed ongoing from the previous night.

The medical chart is devoid of any cardiac symptoms.  However, Patient 35(c) underwent an echocardiogram and a Lexiscan nuclear stress test.

The echocardiogram and the nuclear stress test were not indicated and did not correlate with Patient 35(c)'s complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

154.    **Patient 35(d)**

Patient 35(d) presented to Desert View Hospital on _____ with a complaint of upper abdominal pain.

The medical chart is devoid of any cardiac symptoms.  However, Patient 35(d), an 88-year old woman, underwent an echocardiogram and a Lexiscan nuclear stress test.

The echocardiogram and the nuclear stress test were not indicated and did not correlate with Patient 35(d)'s complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

155.   **Patient 35(e)**

Patient 35(e) presented to Desert View Hospital on _____ with a complaint of chest pain.

Patient 35(e) had coronary disease for many years, has cardiomyopathy, has a cardiology team at UCLA, and has been evaluated by other cardiologists including Relator Arik as recently as January 30, 2020.  Despite having echo and nuclear cardiac imaging on December 28, 2019 and January 16, 2020, Patient 35(e) was again admitted to the hospital and underwent the same tests on _____.

Patient 35(e) medical records, including the results for echo and the nuclear cardiac imaging, were not requested by Desert View Hospital and Dr. Mirza insisted that the tests be repeated at Desert View Hospital.

No changes were made in the patient's therapy and no changes were made in the management plan for the patient. The tests were not indicated due to having been done recently.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

156.   **Patient 35(f)**

Patient 35(f) presented to Desert View Hospital on _____ with a diagnosis of bronchitis.

The medical chart is devoid of any cardiac symptoms.  However, Patient 35(f), underwent, among other things, echocardiogram, a Lexiscan nuclear stress test, and a chest CT Angiogram.

The echocardiogram, a Lexiscan nuclear stress test, and a chest CT Angiogram were not supported by the patient's medical chart, were not indicated and did not correlate with Patient 35(f)'s complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

157.   **Patient 35(g)**

Patient 35(g) presented to Desert View Hospital on _____ with a diagnosis of congestive heart failure.

However, Patient 35(g), underwent, among other things, an abdominal CT scan.   The abdominal CT scan was not indicated and did not correlate with Patient 35(g)'s complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

158.   **Patient 35(h)**

Patient 35(h) presented to Desert View Hospital on _____ with a complaint of generalized weakness.

However, Patient 35(h), age 84, underwent (among other things) repeated laboratory studies, chest x-ray, brain scan, lower extremity arterial and venous ultrasound, and cardiac echo. These tests were not indicated and did not correlate with Patient 35(h)'s complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

159.   **Patient 35(i)**

Patient 35(i) presented to Desert View Hospital on _____ with a diagnosis of dizziness with near syncope.

However, Patient 35(i), underwent (among other things) an echocardiogram, carotid ultrasound, and brain MRI.  These tests were not indicated and did not correlate with Patient 35(i)'s complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

160.   **Patient 35(j)**

Patient 35(j) presented to Desert View Hospital on _____ with complaints of dizziness and weakness.

However, Patient 35(j), underwent (among other things) a CT of the neck, an echocardiogram, and a nuclear stress test.  These tests were not indicated and did not correlate with Patient 35(j)'s complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

161. **Patient 35(k)**

Patient 35(k) presented to Desert View Hospital on _____ with complaints of shortness of breath.

However, Patient 35(k), underwent (among other things) an echocardiogram and a nuclear stress test. An echocardiogram was not indicated and medically unnecessary because the patient had recently had it performed. The nuclear stress test was not indicated and was medically unnecessary because the patient had a recent previous normal coronary angiogram.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

162. **Patient 35(l)** Omitted

163. **Patient 35(m)**

Patient 35(m) presented to Desert View Hospital on _____ with complaints of dizziness while lying in bed. No other symptoms were reported.

However, Patient 35(m), underwent (among other things) an echocardiogram, and a nuclear stress test. These tests were not indicated and were medically unnecessary.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

164.    **Patient 35(n)**

Patient 35(n) presented to Desert View Hospital on _____ with complaints of shortness of breath, leg swelling, and out of medication.

However, Patient 35(n), underwent (among other things) an echocardiogram and a CT angiogram of the chest. These tests were not indicated and were medically unnecessary because they were recently done on the patient.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

165.    **Patient 35(o)**

Patient 35(o) presented to Desert View Hospital on _____ due to dizziness leading to a fall that resulted in superficial laceration on the head.

However, Patient 35(o), underwent (among other things) an echocardiogram, a carotid ultrasound, and a nuclear stress test. These tests were not indicated and were medically unnecessary based on the patient's complaints.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/AARP for hospitalist services rendered to the subject patient.

166.    **Patient 35(p)**

Patient 35(p) presented to Desert View Hospital on _____ due to elevated blood pressure.

However, Patient 35(p), underwent (among other things) a nuclear stress test. This test was not indicated and was medically unnecessary because according to his medical chart, the patient "was chest pain free."

The patient also underwent (among other things) an echocardiogram which was previously recently performed. This test was not indicated and medically unnecessary because it was recently performed.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

167. **Patient 35(q)**

Patient 35(q) presented to Desert View Hospital on _____ due to generalized weakness due to side effects of a new medication.

This test was not indicated and was medically unnecessary because according to his medical chart, the patient "was chest pain free."

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

168. **Patient 35(r)**

Patient 35(r) presented to Desert View Hospital on _____ due to dizziness, weakness, and dark stools.

However, Patient 35(r), underwent (among other things) a carotid ultrasound, echocardiogram, a CT of the brain, and a blood transfusion. These tests and the blood transfusion were not indicated and were medically unnecessary based on the patient's complaints, a diagnosis of hemorrhoidal bleeding, and hemoglobin of 9.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

169.    **Patient 36**

Patient 36 presented to Desert View Hospital on _____. This patient was admitted with noncardiac chest pain.

However, Patient 36 underwent (among other things), an echocardiogram and nuclear stress test, which were not indicated and were medically unnecessary based on the patient's complaints in the medical chart.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/AARP in the amount of $58,476.03 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/AARP for hospitalist services rendered to the subject patient.

170.    **Patient 37**

Patient 37 presented to Desert View Hospital on _____.  Multiple diagnoses are listed on page two (2) of the emergency department Summary of Care.

According to the billing records, Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/CHAMPVA in the amount of $47,268.75 for, among other things, "ICU/Intermediate." However, Desert View Hospital does not provide "ICU/Intermediate" care services to patients.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/CHAMPVA for hospitalist services rendered to the subject patient.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) the False Claims Act.

171.   **Patient 38**

Patient 38 presented to Desert View Hospital on _____with symptoms of bronchitis.

However, based on the medical chart, there was no medical indication for an inpatient admission of Patient 38 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of Patient 38 did not meet InterQual criteria.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/AARP in the amount of $12,836.17 for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/AARP for hospitalist services rendered to the to the subject patient.

172.   **Patient 39** Omitted

173.   **Patient 40**

Patient 40 presented to Desert View Hospital on _____ and was admitted for sepsis.

However, Patient 40, underwent (among other things), an echocardiogram and nuclear stress test, which were not indicated and was medically unnecessary based on the patient's complaints in the medical chart.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Magellan in the amount of $67,649.78 for the

admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Magellan for hospitalist services rendered to the subject patient.

174.   **Patient 41** Omitted

175.   **Patient 42** Omitted

176.   **Patient 42(a)**

Patient 42(a) presented to Desert View Hospital on _____ with cough and shortness of breath and believed he had a fever at home.

However, based on the medical chart, there was no medical indication for an inpatient admission of Patient 42(a) and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1).   Furthermore, the inpatient admission of Patient 42(a) did not meet InterQual criteria.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the to the subject patient.

177.   **Patient 43**

Patient 43 presented to Desert View Hospital on _____ with a chief complaint of nausea and vomiting and generalized weakness going on for a week.

However, Patient 43, underwent (among other things) a nuclear stress test, which was not indicated and medically unnecessary based on the patient's complaints in the medical chart.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $32,400.97 for the

admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

178.  **Patient 43(a)**

Patient 43(a) presented to Desert View Hospital on _____ with a rapid atrial fibrillation.

However, even though Desert View Hospital is not equipped to perform a cardioversion (a procedure involving direct shock of the patient's heart while sedated) was performed on Patient 43(a) for which there was not appropriate staff (no anesthesiologist/nurse anesthetist), equipment (no transesophageal echo), or facility (no procedure room). Therefore, the cardioversion was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the inpatient admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

179.  **Patient 43(b)**

Patient 43(b) presented to Desert View Hospital on _____ with a rapid atrial fibrillation.

Patient 43(b) was admitted as an inpatient into Desert View Hospital.  However, there was no medical indication for an inpatient admission of Patient 43(b) and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of Patient 43(b) did not meet InterQual criteria.

In addition, even though Desert View Hospital is not equipped to perform a cardioversion (a procedure involving direct shock of the patient's heart while sedated) was performed on Patient 43(b) for which there was not appropriate staff (no anesthesiologist/nurse anesthetist), equipment (no transesophageal echo), or facility (no procedure room). Therefore, the cardioversion was not medically necessary because Desert View Hospital was not a setting

appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the inpatient admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

180.   **Patient 44**

Patient 44 presented to Desert View Hospital on _____ and was diagnosed with rapid atrial fibrillation.

Patient 44 was admitted as an inpatient.  However, there was no medical indication for an inpatient admission of Patient 44 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of Patient 44 did not meet InterQual criteria.

In addition, Patient 44 underwent a chest CT angiogram and Lexiscan nuclear stress test, which were not indicated and did not correlate with the patient's complaints in the medical chart.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

181.   **Patient 45**

Patient 45 presented to Desert View Hospital on _____ with complaints of three (3) months history of cough and congestion.

Patient 45 was admitted as an inpatient. However, there was no medical indication for an inpatient admission of Patient 45 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of Patient 45 did not meet InterQual criteria.

In addition, Patient 45 underwent, among other things, a CT of the soft tissue of the neck and CT of the brain. However, these tests were not indicated and did not correlate with Patient 45's complaints during the hospitalization.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

182.  **Patient 46**

Patient 46 presented to Desert View Hospital on _____ due to high blood pressure without any symptoms.

Patient 46 was admitted as an inpatient. However, there was no medical indication for an inpatient admission of Patient 46 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of Patient 46 did not meet InterQual criteria.

In addition, Patient 46 underwent, among other things, an echocardiogram and a CT of the brain. However, these tests were not indicated and was medically unnecessary.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

183. **Patient 47**

Patient 47 presented to Desert View Hospital on _____ due to shortness of breath.

Patient 47 was admitted as an inpatient. However, there was no medical indication for an inpatient admission of Patient 47 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of Patient 47 did not meet InterQual criteria.

In addition, Patient 47 underwent, among other things, an CT angiogram. However, this test was not indicated and was medically unnecessary because patient's chest x-ray was clear.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

184. **Patient 48**

Patient 48 presented to Desert View Hospital on _____ due to generalized weakness, poor appetite, and gait instability.

Patient 48 was admitted as an inpatient. However, there was no medical indication for an inpatient admission of Patient 48 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of Patient 48 did not meet InterQual criteria.

In addition, Patient 48 underwent, among other things, an echocardiogram and Lexiscan nuclear stress. An echocardiogram was not indicated and was medically unnecessary because the patient had recently had it performed. The nuclear stress test was not indicated and was was medically unnecessary because the patient had a recent previous normal coronary angiogram.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

185. **Patient 49**

Patient 49 presented to Desert View Hospital on _____ due to dizziness and blurry vision.

Patient 49 was admitted as an inpatient.  However, there was no medical indication for an inpatient admission of Patient 49 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).   Furthermore, the inpatient admission of Patient 49 did not meet InterQual criteria.

In addition, Patient 49 underwent, among other things, an echocardiogram and Lexiscan nuclear stress, which were not indicated and did not correlate with the patient's complaints in the medical chart.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); **Winter**, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

186. **Patient 50**

Patient 50 presented to Desert View Hospital on _____ due to an accidental fall.

Patient 50 was admitted as an inpatient.  However, there was no medical indication for an inpatient admission of Patient 50 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).   Furthermore, the inpatient admission of Patient 50 did not meet InterQual criteria.

In addition, Patient 50 underwent, among other things, an echocardiogram.   An echocardiogram was not indicated and was medically unnecessary because the patient did not have any cardiac symptoms and/or findings.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

187.   **Patient 51**

Patient 51 presented to Desert View Hospital on _____ with chief complaints of blurry vision and headaches.

Patient 51 was admitted as an inpatient for six (6) days.   However, there was no medical indication for an inpatient admission of Patient 51 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of   42 CFR § 412.3(d)(1).     Furthermore, the inpatient admission of Patient 51 did not meet InterQual criteria.

In addition, Patient 51 underwent, among other things, an echocardiogram, CT scan of the cervical spine, and a nuclear stress test.   These tests were not indicated and was medically unnecessary because the patient did not have any cardiac symptoms and/or findings.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

188.   **Patient 52**

Patient 52 presented to Desert View Hospital on _____ with a chief complaint of shortness of breath.

Patient 52 was admitted as an inpatient.  However, there was no medical indication for an inpatient admission of Patient 52 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).   Furthermore, the inpatient admission of Patient 52 did not meet InterQual criteria.

In addition, Patient 52 underwent, among other things, a nuclear stress test.  This test was not indicated and did not correlate with the patient's complaints in the medical chart.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare/Humana in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare/Humana for hospitalist services rendered to the subject patient.

189.   **Patient 53**

Patient 53 presented to Desert View Hospital on _____ with complaints of bleeding from this patient's known hemorrhoids and no other symptoms. Patient reported no abdominal pain, nausea or vomiting.  The hemorrhoidal bleeding stopped while the patient was at the emergency room.

No rectal exam was documented at any time during Patient 53's stay at Desert View Hospital. The patient's blood count was normal.  There were no indicators that this patient had any kind of lower gastrointestinal bleeding.

Patient 53 was admitted as an inpatient.  However, there was no medical indication for an inpatient admission of Patient 53 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).   Furthermore, the inpatient admission of Patient 53 did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 53 underwent an echocardiogram, a test which was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

190.   **Patient 54**

Patient 54 presented to Desert View Hospital on _____ due to having fever two (2) days before arriving and had developed a productive cough with left-sided chest pain.

In the emergency department, it was documented that the patient did not have an elevated temperature and the patient's oxygen levels were documented as normal, ranging from 94%-99%. Although the patient's heart rate was elevated at 109 when the patient arrived at the emergency department, by the time the patient left the emergency department, the heart rate was normal at 86.   A chest CT scan was taken and it indicated left upper lobe abnormality stated by the radiologist to be postobstructive pneumonia, not acute.

Based on the symptoms, Patient 54 should have been discharged with a prescription for= antibiotics and a referral for a follow up.

Instead, Patient 54 was admitted for inpatient care at Desert View Hospital with a diagnosis of pneumonia and kept at the hospital for five (5) days.

To support the inappropriate admission of Patient 54, and in stark contrast to the findings from the emergency department, in his notes, Dr. Mirza claimed that the patient was short of breath, could not breathe at night or when lying flat, claimed that the patient was having fevers (even though there was no documented fever for the entirety of the patient's stay), chills and rigors. In fact, Dr. Mirza claimed that the patient's symptoms were 10 out of 10. Further, Dr. Mirza claimed that the patient's saturation of oxygen was 92% even though there is no documented finding of the oxygen saturation being at that level at any time.

Patient 54 was admitted as an inpatient.  However, there was no medical indication for an inpatient admission of Patient 54 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).   Furthermore, the inpatient admission of Patient 54 did not meet InterQual criteria.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

191. **Patient 55**

Patient 55 presented on Desert View Hospital on _____ due to chronic right shoulder and bilateral knee pain "keeping [the patient] up all night". Patient 55 stated the pain had been going on for more than one year and had worsened over the 2 months prior to arriving in the emergency department. Patient denied any other symptoms and the emergency department notes clearly state that the patient has no complaints of cough, shortness of breath and his oxygen level is 98%.

Patient 55 underwent a right shoulder x-ray which was negative for a fracture.

Patient 55 should have been evaluated at the emergency department and discharged with a referral for an outpatient follow up.

Instead, Patient 55 underwent a chest x-ray which was incidentally abnormal, and an EKG showing Atrial Fibrillation, a long-standing and stable condition for which Patient 55 had already been receiving treatment. Patient 55 had no symptoms requiring either test.

In his notes, Dr. Mirza claims that the patient's symptoms are 10/10 while the patient was exhibiting no symptoms whatsoever related to Pneumonia or Atrial Fibrillation.

Patient 55 was admitted as an inpatient at Desert View Hospital for five (5) days with diagnosis of Pneumonia, Atrial Fibrillation and right shoulder fracture even though the shoulder x-ray was negative for a fracture.

In addition, while an inpatient at Desert View Hospital, Patient 55 underwent an echocardiogram, a test which was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

Patient 55 was discharged with a diagnosis of COPD and hypovolemia, and bronchitis – diagnosis completely different than his admission diagnosis.

Patient 55 was admitted as an inpatient. However, there was no medical indication for an inpatient admission of Patient 55 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of Patient 55 did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 55 underwent, among others, an echocardiogram, a test which was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

192.   **Patient 56**

Patient 56 presented on Desert View Hospital on _____ due to complaints of anxiety with a several-day history of cough and congestion.  The documented vital signs in the emergency room were unremarkable.  The patient was treated in the emergency room and it is documented that the patient's breathing was improved and she was feeling better. Oxygen levels were normal. The patient was not hypoxic or short of breath.

This patient should have been treated in the emergency department and then discharged with a recommended outpatient follow up.

Instead, Patient 56 was subjected to a chest x-ray which showed possible changes but it showed no evidence of pneumonia and no evidence of COPD.   However, the clinical impression of the emergency room physician was COPD exacerbation and anxiety.

Patient 56 was admitted as an inpatient at Desert View Hospital for four (4) days with a diagnosis of acute COPD with a possible component of congestive heart failure.   The admitting hospitalist documented that Patient 56 complained of wheezing and sputum, none of which the patient complained about while treated at the emergency department.

However, there was no medical indication for an inpatient admission of Patient 56 and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).   Furthermore, the inpatient admission of Patient 56 did not meet InterQual criteria.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

///

193.  **Patient 57**

Patient 57 presented to their primary care physician on _____ with a two (2)-week history of right lower quadrant abdominal pain, difficulty with urination, and chills.  The primary care physician directed Patient 57 to the Desert View Hospital emergency department.

While on her way to the hospital, Patient 57 nearly lost consciousness due to dizziness and generalized weakness when she was standing.  When Patient 57 arrived to the Desert View Hospital emergency department, the patient's vital signs included critically low blood pressure 90/57 with an elevated heart rate of 90.  In addition, the initial hemoglobin was 6.6 and the CBC parameters were consistent with acute instead of chronic anemia.

Patient 57 needed to be transferred to a higher level of care facility in order to have gastrointestinal testing which Desert View Hospital does not have the capability of performing.

Instead, this patient was admitted as observation, given 1 unit of blood and discharged home the next day, without the necessary treatment which the Desert View Hospital knew it does not have the capability of providing.

However, even though Desert View Hospital was not equipped to treat the patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

194.  **Patient 58**

Patient 58 presented to Desert View Hospital on _____ and was diagnosed with sepsis, pyelonephritis, seizure and altered mental status from severe hyponatremia.

This patient required transfer to a higher level of care facility for ICU and neurology evaluation.

However, even though Desert View Hospital does not have an ICU to deal with the subject patient's serious multiple medical comorbidities, the medical chart reveals that the patient was admitted as an inpatient to Desert View Hospital for four (4) days. Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (inpatient admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

195.   **Patient 59**

Patient 59 presented to Desert View Hospital on _____ with worsening pain of the fifth toe of the right foot. The patient had a history of diabetes and previous amputations due to infection. The patient had elevated white blood cells count and an MRI showed evidence of osteomyelitis.

Patient 59 needed an immediate transfer to a higher level of care because the patient required immediate evaluation, consultation, and treatment by an orthopedist.

Instead, Patient 59 was admitted as an inpatient at Desert View Hospital for five (5) days and received IV antibiotics and discharged.

Subsequently, after the discharge from Desert View Hospital, the patient had to be treated at a higher level of care facility as an inpatient for one (1) week and then had to have four (4) weeks of rehabilitation.

Even though Desert View Hospital was not equipped to treat the patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the inpatient admission of the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

196.    **Patient 60**

Patient 60 presented to Desert View Hospital on _____ with active severe vomiting of copious amounts of blood in the context of a history of a bleeding gastric ulcer.  In the emergency room she reported symptoms of nausea and abdominal pain.  There was a significant drop in hemoglobin and hematocrit noted on Complete Blood Count (CBC) testing.

This patient should have been transferred to a higher level of care facility in order to receive appropriate care for active gastrointestinal bleeding which Desert View Hospital is not equipped to provide.

Even though Desert View Hospital was not equipped to treat the patient, the medical chart reveals that the patient was admitted to Desert View Hospital for five (5) days. Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

In addition, while an inpatient at Desert View Hospital, Patient 60 underwent, among others, a nuclear stress test and a cardiac echocardiogram, tests which was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); **Winter**, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

///

///

197.  **Patient 61**

Patient 61 presented to Desert View Hospital on _____ due to slurring of speech with generalized weakness consistent with acute stroke. An MRI scan of the brain was done which confirmed an acute stroke of the left posterior frontal lobe involving Broca's area.  Broca's area is the part of the brain that controls speech.

This patient needed to be transferred to a higher level of care facility as Desert View Hospital has no stroke treatment program.

Instead, Patient 61 was admitted as an inpatient to Desert View Hospital and kept for four (4) days.  In the discharge summary for the Patient 61's stay at Desert View Hospital, there is no mention in the MRI findings confirming the patient had a stroke.

Shortly after her discharge, Patient 61 had another stroke.

Even though Desert View Hospital was not equipped to treat the patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the inpatient admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

In addition, while an inpatient at Desert View Hospital, Patient 61 underwent, among other things, an echocardiogram while exhibiting no chest pain, no shortness of breath, no dizziness or any other symptoms which would indicate said testing. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); ***Winter***, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

198.  **Patient 62**

Patient 62 presented to Desert View Hospital on _____ with symptoms of facial tingling and no other symptoms.

Even though Patient 62 had no complaints which would indicate that the patient had a urinary tract infection ("UTI"), a urinalysis on Patient 62 was done which came back positive.

This patient should have been treated with antibiotics for a UTI while at the emergency department and discharged with a referral for an outpatient neurology consult.

Instead, Patient 62 was diagnosed with a UTI and a Transient Ischemic Attack ("TIA") without the requisite symptoms. Even though Desert View Hospital is not equipped to treat patients with TIA (had this patient suffered one), Patient 62 was admitted as an inpatient to Desert View Hospital for three (3) days.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 62 underwent, among others, an echocardiogram while exhibiting no chest pain, no shortness of breath, no dizziness or any other symptoms which would indicate said testing. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

199.   **Patient 63**

Patient 63 presented to Desert View Hospital on _____ with complaints of shortness of breath.  While in the emergency department, Patient 63 was diagnosed with acute exasperation of COPD and high flow oxygen.

Approximately four (4) months prior to presenting to Desert View Hospital, Patient 63 underwent a full cardiac workup including stress test and an echocardiogram while an outpatient.

Patient 63 should have received treatment for exasperation of the patient's COPD and discharged.

///

Instead, the Desert View Hospital hospitalist changed Patient 63's diagnosis to acute coronary syndrome, congestive heart failure and COPD.  Further, Patient 63 was admitted as an inpatient at Desert View Hospital for four (4) days.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 63 underwent, among others, a stress test and an echocardiogram, the same exact tests the patient just recently underwent as an outpatient and which were not indicated and did not correlate with Patient 63's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); **Winter**, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

200.   **Patient 64**

Patient 64 presented to Desert View Hospital on _____ with speech difficulties, right facial numbness, and loss of vision in the right eye.  Onset was sudden.  Patient also reported difficulty text messaging.

Based on the symptoms, Patient 64 should have immediately been transferred to a stroke center for a consultation with neurology and if needed, neurosurgery or neuroradiology.

Instead, Patient 64 was admitted as observation status and discharged the next day after being subjected to a CAT scan, carotid ultrasound, and brain MRI.  Those tests should not have been done at Desert View Hospital as Desert View Hospital has no specialists who could treat Patient 64 based on the results of the subject testing.

Even though Desert View Hospital was not equipped to treat the patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

In addition, while an inpatient at Desert View Hospital, Patient 64 underwent, among others, an echocardiogram while exhibiting no symptoms which would indicate said testing. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

201.   **Patient 65**

Patient 65 presented to Desert View Hospital on _____ with a dry cough, generalized weakness, elevated temperature, slight shortness of breath and generalized weakness going on for 5 or 6 days.  In the emergency room, the only findings were a mildly elevated temperature of 38°C.

Patient 65 should have been under observation or discharged from the emergency department with instructions to follow up on an outpatient basis.

Instead, Patient 65 had a chest x-ray which was read by the radiologist as "Normal chest". Patient 65's blood was drawn which showed that white blood count was low normal at 4900. There was no evidence of dehydration.

Patient 65 was diagnosed with acute pneumonia despite a complete absence of any findings to support such diagnosis. In addition, Patient 65's oxygen level was 94% and she was unnecessarily placed on oxygen.

Patient 65 was admitted as an inpatient to Desert View Hospital and remained as an inpatient for four (4) days.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 65 underwent, among others, an echocardiogram, which was not indicated and did not correlate with Patient 65's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

202. **Patient 66**

Patient 66 presented to Desert View Hospital on _____ with complaints of severe neck pain, anxiety and fatigue.  Patient reported no chest pain.  Objective findings included low potassium and magnesium which were treated at the emergency department.

Appropriate treatment for Patient 66 should have been observation or discharge with referral for an outpatient follow up.

Instead Patient 66 was admitted as an inpatient to Desert View Hospital for three (3) days with a diagnosis of Acute Coronary Syndrome, Critical Electrolyte Imbalance and Congestive Heart Failure.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 66 underwent, among others, an echocardiogram, which was not indicated and did not correlate with Patient 66's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

203.   **Patient 67**

Patient 67 presented to their primary care physician on _____.   Patient 67 was an established congestive heart failure and cirrhosis patient with recurrent ascites (abdominal fluid due to cirrhosis).   Upon examination, the primary care physician determined that Patient 67 was experiencing an episode of significant abdominal swelling.

Patient 67 was sent to Desert View Hospital for drainage of swelling, a procedure known as paracentesis, only.   This is a 30-60 minute outpatient procedure. Patient 67 had no other symptoms and needed no other treatment.

Despite a clear directive from the primary care physician and absence of any acute symptoms, upon presentation to Desert View Hospital, Patient 67 was seen by Dr. Mirza and admitted as an inpatient for three (3) days.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 67 underwent, among others, an echocardiogram, which was not indicated and did not correlate with Patient 67's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); **Winter**, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

204.   **Patient 68**

Patient 68 presented to Desert View Hospital on _____ with complaints of being dehydrated, weak and lethargic, not eating or drinking properly for approximately 1 week. Also, Patient 68's family reported that he recently fell three (3) times including a fall off of a ladder at which time he hit his head.

Patient 68 needed to be treated with intravenous fluids for his dehydration, and an MRI of his brain on an outpatient basis.

Instead, Patient 68 was admitted as an inpatient at Desert View Hospital for four (4) days for acute renal failure, dehydration and altered mental status.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 68 underwent, among others, an echocardiogram and a nuclear stress test, which was not indicated and did not correlate with Patient 68's complaints during the hospitalization (Patient 68's oxygen was 98-100%, he reported no chest pain, no shortness of breath, or difficulty breathing). Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

205. **Patient 69**

Patient 69 presented to Desert View Hospital on _____ due to choking on food and passing out. The patient reported no other notable symptoms.

This patient should have been discharged from the emergency department and referred for Esophagogastroduodenoscopy (EGD) for dysphasia on an outpatient basis.

Even Dr. Mirza, the admitting hospitalist, states in his admission history that while in the emergency room Patient 69 "markedly improved speaking in full sentences[,] awake alert without complaints".

Despite his acknowledgment of Patient 69's stable condition, Dr. Mirza admitted Patient 69 as an inpatient for four (4) days at Desert View Hospital with the diagnosis of Sepsis, Urinary Tract Infection, and Aspiration.

There was no basis whatsoever for this patient to be diagnosed and admitted for sepsis. In fact, the patient's white cell count was normal at 8400 and the patient had no elevation of temperature on admission. Furthermore, the patient's blood culture was negative all of which negate the diagnosis of sepsis.

Also, even though there were no complaints or symptoms indicating a urinary tract infection, a urinalysis was done on Patient 69 with an incidental finding of asymptomatic bacteriuria which is normally treated with a prescription for oral antibiotics.  Instead, Patient 69 was treated with intravenous antibiotics.

Subsequently, a urine culture was done on Patient 69 which came back negative indicating no urinary tract infection.  Moreover, as a result of Patient 69 receiving unnecessary intravenous antibiotics, Patient developed C. Difficile.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 69 was subjected to a CT scan of the brain with and without contrast, CT of the spine, as well as a chest x-ray and laboratory studies which were not indicated and did not correlate with Patient 69's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); **Winter**, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

206.   **Patient 70**

Patient 70 presented to their primary care physician on _____.  Patient 70 was an established cirrhosis patient with recurrent ascites (abdominal fluid due to cirrhosis).  Upon examination, the primary care physician determined that Patient 70 was experiencing an episode of significant abdominal swelling.

Patient 70 was sent to Desert View Hospital for drainage of swelling, a procedure known as paracentesis, only.  This is a 30-60 minute outpatient procedure. Patient 70 had no other symptoms and needed no other treatment.

Instead, upon presentation to Desert View Hospital on _____, Patient 70 was admitted as an inpatient at Desert View Hospital for three (3) days.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more

than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 70 was subjected to a chest x-ray, CT of his abdomen and an MRI which were not indicated and did not correlate with Patient 70's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

207.   **Patient 71**

Patient 71 is the same individual as Patient 70. As stated, Patient 71 was an established cirrhosis patient with recurrent ascites (abdominal fluid due to cirrhosis). Same as previously, Patient 71 was experiencing an episode of significant abdominal swelling.

On _____, Patient 71 presented to Desert View Hospital for drainage of swelling, a procedure known as paracentesis, only. This is a 30-60 minute outpatient procedure. Patient 71 had no other symptoms and needed no other treatment.

Instead, the patient was admitted as an inpatient at Desert View Hospital for four (4) days.

In addition, during his time as an inpatient at Desert View Hospital, Patient 71 underwent, among other tests, a CT of his abdomen which was not necessary or relevant to the patient's symptoms.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 71 was subjected to a CT of his abdomen which was not indicated and did not correlate with Patient 71's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

208.   **Patient 72**

Patient 72 has a history of kidney transplantation and congestive heart failure, with multiple specialists including cardiology and nephrology coordinating his care.

Patient 72 presented to Desert View Hospital on _____ with complaints of a 4-5 day history of shortness of breath with exertion and lower extremity swelling and nonproductive cough.   The patient denied chest pain, shortness of breath, cough, orthopnea, paroxysmal nocturnal dyspnea, weight gain, and exertional chest pain.

Patient 72's chest was examined which sounded normal.   Chest x-ray was taken and the radiologist found no traces of congestive heart failure.   Specifically, the radiologist found "no pleural fluid.  No evidence of edema."  Patient 72's respiratory rate was normal.

This patient should have been treated with Lasix on an outpatient basis and discharged.

Instead, Patient 72 was admitted as an inpatient to Desert View Hospital under a diagnosis of "acute congestive heart failure and pulmonary edema" even though he exhibited no symptoms to support such admission.  The admitting hospitalists requested that the patient stay three (3) days but the patient had checked himself out after two (2) days.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 72 was subjected to an echocardiogram which was not indicated and did not correlate with Patient 72's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicaid in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicaid for hospitalist services rendered to the subject patient.

209.   **Patient 73**

Patient 73 presented to Desert View Hospital on _____ with complaints of progressive weakness over a 2-week period and confusion on the day of admission.  Urinalysis was done with abnormal results but there was no clinical evidence of urinary tract infection.  It does not even appear that Patient 73's urine was cultured to confirm the infection.

Patient 73 should have been given antibiotics and discharged from Desert View Hospital.

Instead, Patient 73 was admitted to Desert View Hospital for a two (2) day observation.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, Patient 73 was subjected to an echocardiogram which was not indicated and did not correlate with Patient 73's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

210.   **Patient 74**

Patient 74 presented to Desert View Hospital on _____ due to a new onset of seizures associated with a fracture of the arm.  Although exhibiting no symptoms that would warrant it, Patient 74 was subjected to a chest x-ray which was negative for pneumonia.  Patient did not have elevated fever and the heart rate was normal.

Patient 74 should have been transferred to a higher level of care facility due to a new onset of seizures and a fracture for an evaluation and treatment by neurology and an orthopedist.

Instead, Patient 74 was admitted as an inpatient to Desert Valley Hospital for four (4) days with diagnosis of pneumonia, sepsis, and syncope which had no symptomatic or diagnostic support.

Shortly after discharge, Patient 74 had another seizure.

However, even though Desert View Hospital was not equipped to treat the patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition. *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, in addition to an unnecessary chest x-ray, Patient 74 was subjected to a CT of abdomen which was not indicated and did not correlate with Patient 74's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

211.   **Patient 75**

Patient 75 presented to Desert View Hospital on _____ with complaints of a fall with injury to her elbow. She had difficulty getting out of her bathtub and slipped and fell hurting her left elbow.  She denied hitting her head or loss of consciousness.  No mental status changes or neurologic findings were described on admission.

Patient 75 should have been discharged from the emergency department with a referral for a consultation with an orthopedic surgeon.

Instead, Patient 75 was admitted as an inpatient to Desert View Hospital for four (4) days with a diagnosis of acute heart failure even though she had no related complaints and the chest x-ray (which was also unnecessary) had no findings of acute heart failure.  Patient 75 was also diagnosed with a urinary tract infection even though the patient had no symptoms, and both urinalysis and urine culture were negative for infection.

In addition, while at Desert View Hospital, Patient 75 underwent a CT of her brain and neck even though she denied hitting her head or losing consciousness.

Also, while at Desert View Hospital, Patient 75 underwent an echocardiogram which was not necessary or relevant to the patient's admission diagnosis or treatment plan.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, in addition to others, Patient 75 underwent a chest x-ray, urinalysis, urine culture, CT of her brain and echocardiogram which were not indicated and did not correlate with Patient 75's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

212.  **Patient 76**

Patient 76 presented to Desert View Hospital on _____  due to having tripped and sprained an ankle.

Patient 76 should have been treated at the emergency department and discharged with a referral to an orthopedist.

///

Despite having no fever, no shortness of breath, no hypoxia or any other symptoms which would require it, a chest x-ray was performed on Patient 76. Chest x-ray was inconclusive and a follow up chest x-ray was needed.

Patient 76 was diagnosed with pneumonia and was admitted as an inpatient for five (5) days to Desert View Hospital. During the patient's stay, the recommended follow up chest x-ray was never performed.

Further, while at Desert View Hospital, Patient 76 was subjected to a CT of her head as well as an echocardiogram, neither which were reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of 42 CFR § 412.3(d)(1). Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, in addition to others, Patient 76 underwent a chest x-ray, CT of her head as well as an echocardiogram which were not indicated and did not correlate with Patient 76's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

213.   **Patient 77**

Patient 77 presented to Desert View Hospital with progressive neurologic issues including left-sided weakness consistent with a stroke.

Patient 77 should have been transferred to a higher level of care stroke facility for appropriate and indicated diagnostics and therapeutics.

Instead, Patient 77 was admitted as an inpatient to Desert View Hospital for three (3) days with a diagnosis of Left Sided Numbness and Weakness.

During Patient 77's stay at Desert View Hospital, Patient 77 had an MRI study which clearly showed that she had an acute stroke.

Even though Desert View Hospital was not equipped to treat the patient, the medical chart reveals that the patient was admitted to Desert View Hospital. Therefore, the admission was not medically necessary because Desert View Hospital was not a setting appropriate for the subject patient's medical needs and condition.  *See* Medicare Program Integrity Manual § 13.5.4 (2019); *see also Winter*, 953 F.3d at 1114 (admissions of a patient to a medical facility, which lacks the ability to provide treatment for the patient's condition, gives rise to a false certification of medical necessity).

In addition, while an inpatient at Desert View Hospital, Patient 77 underwent, among other tests, a chest x-ray, and an echocardiogram while exhibiting no symptoms which would indicate said testing. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

214.   **Patient 78**

Patient 78 presented to Desert View Hospital on _____ due to having a pressure-like dull chest discomfort.  Patient 78's cardiac enzymes were negative.  Patient 78's EKG was negative.

According to current cardiology guidelines, Patient 78 should have been discharged from the emergency room with an outpatient cardiology follow-up.

Instead, Patient 78 was admitted as an inpatient to Desert View Hospital for three (3) days with a diagnosis for acute coronary syndrome.

There was no medical indication for an inpatient admission of this patient and any certification by the admitting physician that this patient would require hospital care for more than two (2) midnights is false within the meaning of  42 CFR § 412.3(d)(1).  Furthermore, the inpatient admission of this patient did not meet InterQual criteria.

In addition, while an inpatient at Desert View Hospital, in addition to others, Patient 78 underwent echocardiogram and a nuclear stress testing which were not indicated and did not correlate with Patient 78's complaints during the hospitalization. Therefore, such testing was not reasonable, necessary or relevant to the patient's complaints, admission diagnosis or treatment plan.

The conduct of Desert View Hospital (in conspiracy with the Vista Health Defendants) violated (among other things) 42 U.S.C. § 1395y(a)(1)(A); *Winter*, 953 F.3d at 1114 ("claims for unnecessary treatment are false claims").

Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.

The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted a false claim in the amount of $_____ for payment to Medicare for hospitalist services rendered to the subject patient.

215.    CMS defines a "reasonable and necessary" service as one that "meets, but does not exceed, the patient's medical need," and is furnished "in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition ... in a setting appropriate to the patient's medical needs and condition[.]" CMS, Medicare Program Integrity Manual § 13.5.4 (2019).    The inpatient admission and/or the testing/procedures were not supported by the medical charts of Patients 1 through 78 and, therefore, not "reasonable and necessary" at Desert View Hospital.

216.    For Patients 1 through 78, Desert View Hospital and the Vista Health Defendants were paid by the federally funded insurer based on the false certification of their compliance with 42 U.S.C. § 1395y(a)(1)(A).

217.    For Patients 1 through 78, Desert View Hospital (in conspiracy with Valley Health and Universal Health) and the Vista Health Defendants knew that their claim for payment to the federally funded insurer was false, or had deliberately ignored its falsity, or had recklessly disregarded its falsity, in violation of the False Claims Act.

218.    For Patients 1 through 78, had the federally funded insurer known that the admission and/or medical testing of Patients 1 through 78 was not reasonable and medically unnecessary, it would not have paid on the claims of Patients 1 through 78.

219.   Based on information and belief, from January 2019 through May 2019 (due to Desert View Hospital's submission of claims in violation of the False Claims Act), Desert View Hospital's revenue grew by approximately 50% year-over-year for Humana Medicare Advantage patients and likely for other government funded programs.

**B.**   **Altered Inpatient Admission Times**

220.   Dr. Arik is aware that (since Valley Health's acquisition of Desert View Hospital in August 2016), Desert View Hospital falsely altered inpatient admissions times in order to increase revenue from Medicare, Medicaid, and other government subsidized insurers.  Specifically, the ER doctor would call and request an evaluation by the hospitalist whether a patient meets the criteria for inpatient admission.  At that time, usually within 1-2 hours (but can go as long as 8 hours or more, depending on the census and work load at Desert View Hospital), a patient would be evaluated by the hospitalist by looking at labs, reports, and in person evaluation to determine if an inpatient admission is appropriate.  If appropriate, the patient would be examined, a history taken, and admission orders are placed by the hospitalist.  This is done in writing (date/time written) and medications and nurse orders are also placed. Some basic orders in writing, other orders placed directly in the Electronic Health Records ("EHR").

221.   However, the house supervisors (at the direction of Desert View Hospital's management) would ask the hospitalist to change the inpatient admission order to an earlier time from when they saw the patient to allow for the increase in the length of stay.

222.   Even though the hospitalist (Dr. Marianne Hazelitt) warned the house supervisors that doing so would be fraudulent and refused to engage in such conduct, the house supervisors would alter (back time) the inpatient admission time to reflect an earlier inpatient admission time in complete disregard to the actual admission time on the hospitalists' inpatient admission order.

223.   Desert View (in conspiracy with Valley Health and Universal Health) knowingly submitted to Medicare, Medicaid, and other government subsidized insurers claims for payment for

additional days of inpatient services not provided based on the express false certification that the patient met "inpatient" criteria when the patient was actually in "observation" status in violation of (among other things) 42 U.S.C. § 1395f(a)(3), 42 U.S.C. § 1395y(a)(1)(A), and the False Claims Act.

224.    Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted the subject false claims to government funded insurers and contractors in an amount to be determined through discovery.

225.    The Vista Health Defendants (in conspiracy with Desert View Hospital) also knowingly submitted the subject false claims to government funded insurers and contractors in an amount to be determined through discovery.

226.    Desert View Hospital (in conspiracy with Valley Health and Universal Health) and the Vista Health Defendants knew that their claims for payment to the federally funded insurers and contractors were false, or had deliberately ignored its falsity, or had recklessly disregarded its falsity, in violation of the False Claims Act.

227.    Desert View Hospital and the Vista Health Defendants were paid by the federally funded insurers based on the false certifications of time of the inpatient admissions.

228.    Had the federally funded insurers and contractors known that the time of the admissions were falsified to increase an inpatient length of stay, the federally funded insurers and contractors would not have paid on the subject claims.

## C.    Altered Billing Codes

229.    Dr. Arik is aware that (since Valley Health's acquisition of Desert View Hospital in August 2016), Desert View Hospital falsely altered billing codes in order to increase revenue from Medicare, Medicaid, and other government subsidized insurers.

230.    Medicare and other government-funded programs have a strict policy about medical providers altering billing records.

231.   For example, when an individual is admitted into a hospital as an "inpatient," the individual's "inpatient" status can only be changed by the hospital to "observation" status   when (among other things) the treating physician approves of the change and prior to the individual's discharge from the hospital.  *See also* CMS Manual, Transmittal 299, September 2004.

232.   At Desert View Hospital, since August 2016, numerous individuals were admitted as inpatients.

233.   After such individuals were discharged from Desert View Hospital, the hospital would bill government funded insurers (such as Medicare/Medicare Advantage) for those individuals as "inpatients."

234.   However, at times, the claim would be denied by the government funded insurer (such as Medicare/Medicare Advantage) because the patient did not meet "inpatient" admission criteria.

235.   In or about the beginning of 2018, Bonnie Havel, (a billing manager at Desert View Hospital/Valley Health System/Universal Health during relevant times) and Tina McKintosh (an assistant director of billing at Valley Health System/Universal Health) expressed deep concerns about numerous claims being denied by Medicare programs due to failure to meet "inpatient" criteria.

236.   Consequently, the biller(s) at Desert View Hospital were instructed that they must appeal the denial decisions.

237.   The biller(s) were further instructed that, if the denial is upheld after the appeal, the biller(s) must change the Bill Type, the Revenue Code and the CPT Code on the Claim Form and re-bill the claim as an "outpatient" service to allow Desert View Hospital to obtain reimbursement from the government funded insurer.

238.   Ms. Havel advised that "this order has come from Corporate [Valley Health/Universal Health] and it must be followed."

239.   Melissa Milk (one of the billers at Desert View Hospital) responded to Ms. Havel and Ms. McKintosh that she would not engage in such conduct as doing so would be wrong, fraudulent,

and against the law because altering the billing codes would not be supported by the medical records and that only a physician can change the patient's status criteria (inpatient v. outpatient), which Ms. Havel and Ms. McKintosh did not appear to be concerned about.

240.    Ms. Milk further told Ms. Havel and Ms. McKintosh that since the subject patients have already been discharged from Desert View Hospital, their "inpatient" status could not legally be changed to "outpatient" per Medicare regulations and that the hospital must write off the charges as required by law.

241.    In response, Ms. Havel and Ms. McKintosh demanded that Ms. Milk train Lydia Hunt, another biller, on how to alter the Claim Form and re-bill the numerous denied claims for failure to meet the "inpatient" criteria.

242.    Ms. Milk became very concerned and immediately went to speak with the Desert View Hospital coders to inquire whether they will engage in such fraudulent conduct.  The coders advised Ms. Milk that it would not be lawful and they wanted nothing to do with changing any codes in order to allow Desert View Hospital to receive payment on a previously denied claim.

243.    Thereafter, Ms. Milk printed Noridian Medicare "Inpatient to Outpatient Status Change," shared it with Ms. Hunt, and advised Ms. Hunt that what Desert View Hospital was requesting is wrong, unlawful, and fraudulent.

244.    Despite Ms. Milk's objection and her cautioning to Desert View Hospital to not participate in such a fraudulent billing scheme, Desert View Hospital in conspiracy with Valley Health/Universal Health knowingly submitted numerous altered claims to government funded programs (including Medicare) for payment and the Medicare-funded programs did make payments on those claims.

245.    A true, accurate, and genuine copy of various emails illustrating the practice of submitting false claims to government funded programs (including Medicare) by Defendant Desert Valley Hospital in conspiracy with Valley Health/Universal Health were produced as a part of

Relator's Initial Witness and Document Disclosures Pursuant to FRCP 26 and LR 26-1.  RELATOR 001226-RELATOR 001253.

246.   Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted the subject false claims to government funded insurers and contractors in an amount to be determined through discovery.

247.   Desert View Hospital (in conspiracy with Valley Health and Universal Health) and the Vista Health Defendants knew that their claims for payment to the federally funded insurers and contractors were false, or had deliberately ignored its falsity, or had recklessly disregarded its falsity, in violation of the False Claims Act.

248.   Desert View Hospital was paid by federally funded insurers based on altered CPT and Revenue Codes (the false certifications).

249.   Had the federally funded insurers and contractors known of the altered CPT and Revenue Codes, the federally funded insurers and contractors would not have paid on the subject claims.

**D.    Inflated Billing for Outpatient/ER Patients**

250.   Dr. Arik is aware that (since Valley Health's acquisition of Desert View Hospital in August 2016), Desert View Hospital falsely billed Medicare, Medicaid, and other government subsidized insurers as follows:

251.   Medicare, Medicaid and other government-funded programs have a limit on certain services/items per day which are reimbursable, such as blood draws.

252.   For example, at times, a patient would require blood draws greater than what is reimbursable.  As a result, if Desert View Hospital would have billed the accurate number of blood draws the patient received, some, or most of the blood draws, would not be reimbursed since the government-funded program only pays for a set maximum number.

253.    To ensure payment for ALL blood draws, including those that would have been excluded from reimbursement, Desert View Hospital had a pattern and practice of knowingly and fraudulently billing for the exact number of blood draws allowed by the government-funded programs but increasing the price of the service to encompass all of the blood draws performed on the patient.

254.    Specifically, if at the time, Medicare allowed one blood draw per day that was billed at $36.00 and there were five (5) blood draws performed, Desert View Hospital would bill for one (1) blood draw but would price it at an inflated, fraudulent rate of $180.00, which Medicare and other government-funded programs paid.

255.    This type of fraudulent billing practice was commonly used (and based on information and belief continues to be used) by Desert View Hospital for billing Medicare and other government programs for medications, IV solution, and radiology services.

256.    Desert View Hospital (in conspiracy with Vista Health, Valley Health, and Universal Health) knowingly submitted the subject false claims to government funded insurers and contractors in an amount to be determined through discovery.

257.    Desert View Hospital (in conspiracy with Valley Health and Universal Health) and the Vista Health Defendants knew that their claims for payment to the federally funded insurers and contractors were false, or had deliberately ignored its falsity, or had recklessly disregarded its falsity, in violation of the False Claims Act.

258.    Desert View Hospital was paid by federally funded insurers for the subject false claims.

259.    Had the federally funded insurers and contractors known of the inflated charges as described herein, the federally funded insurers and contractors would not have paid on the subject claims.

///

///

**FIRST CLAIM FOR RELIEF**

**(Violations of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A) v. Desert View Hospital and the Vista Health and Dr. Mirza)**

260.    Relator incorporates paragraphs 1 through 259 of this Complaint as though fully set forth herein.

261.    By virtue of the acts described above (*i.e.*, the medically unnecessary and non-economical inpatient admissions and testing; altered inpatient admission times, altered billing codes, and inflated billing for Outpatient/ER Patients), Defendants Desert View Hospital, Vista Health and Dr. Mirza knowingly presented or caused to be presented to the government funded insurers and contractors false or fraudulent claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

262.    As alleged herein, Defendants Desert View Hospital's, Vista Health's and Dr. Mirza's claims for payment or approval from the government funded insurers and contractors were false.

263.    The government funded insurers and contractors, unaware of the falsity of the claims made or submitted by Defendants Desert View Hospital, Vista Health and Dr. Mirza, paid and continue to pay for claims that would not be paid if the true facts were known.

264.    As a proximate cause of Defendants Desert View Hospital's, Vista Health's and Dr. Mirza's false claims, the United States of America has been damaged in an amount exceeding the jurisdictional limit, and to be proven at trial.

**SECOND CLAIM FOR RELIEF**

**(Violations of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(B) v. Desert View Hospital, Vista Health and Dr. Mirza)**

265.    Relator incorporates paragraphs 1 through 264 of this Complaint as though fully set forth herein.

266.    By virtue of the acts described above (*i.e.*, the medically unnecessary and non-economical inpatient admissions and testing; altered inpatient admission times, altered billing codes,

and inflated billing for Outpatient/ER Patients), Defendants Desert View Hospital, Vista Health and Dr. Mirza knowingly made or used a false record or statement to get a false or fraudulent claim paid or approved by the government funded insurers and contractors in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

267.    As alleged herein, Defendants Desert View Hospital, Vista Health and Dr. Mirza knowingly made or used or caused to be made or used false government funded insurers and contractors' claim forms and supporting materials, such as false certifications of the truthfulness and accuracy of the claims submitted and medical necessity, to get false or fraudulent claims paid or approved by government funded insurers and contractors.

268.    The government funded insurers and contractors, unaware of the falsity of the statements or records material to the false claims made or submitted by Defendants Desert View Hospital, Vista Health and Dr. Mirza, paid and continue to pay for claims that would not have been paid if the true facts were known.

269.    As a proximate cause of Defendants Desert View Hospital's, Vista Health's and Dr. Mirza's false claims, the United States of America has been damaged in an amount exceeding the jurisdictional limit, and to be proven at trial.

### THIRD CLAIM FOR RELIEF

**(Violations of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(C) v. All Defendants)**

270.    Relator incorporates paragraphs 1 through 269 of this Complaint as though fully set forth herein.

271.    By virtue of the acts described above, Defendants knowingly conspired to: (1) present or cause to be presented to government funded insurers and contractors, false or fraudulent claims for payment or approval; and (2) make or use a false record or statement to get a false or fraudulent claim paid or approved by government funded insurers and contractors, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(C).

272.     The circumstantial evidence demonstrates that Defendants Desert View Hospital, Vista Health, Dr. Mirza, Valley Health, and Universal Health knowingly agreed to defraud government funded insurers and contractors.

273.     Upon information and belief, Defendants all performed at least one act in furtherance of the conspiracy, ignored warnings from Relator and its prior employees/business partners to cease their fraudulent conduct at the expense of taxpayers.

274.      The government funded insurers and contractors, unaware of the falsity of the claims made or submitted by Defendants, and records or statements material to such claims, paid and continue to pay Defendants for claims that would not have been paid if the true facts were known.

275.     As a proximate cause of Defendants' conspiracy, the United States of America has been damaged in an amount exceeding the jurisdictional limit, and to be proven at trial.

**WHEREFORE**, Relators prays for judgment against Defendants, jointly and severally**,** as follows:

1.   Defendants to pay an amount equal to three (3) times the amount of damages the United States has sustained because of the Defendants' actions, plus a civil penalty against Defendants of not less than $5,000.00 and not more than $11,000.00 for each violation of 31 U.S.C. § 3729;

2. Relators be awarded the maximum allowed pursuant to 31 U.S.C. § 3730(d);

3. Defendants to cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, *et seq.*;

4. Relators be awarded all costs of this action, including attorney fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d); and

///

///

///

///

5.  The United States and Relators be granted all such other relief as the Court deems just and proper.

DATED this 10th day of November, 2020.

JESSE SBAIH & ASSOCIATES, LTD.


By /s/ Jesse M. Sbaih
Jesse M. Sbaih (#7898)
Ines Olevic-Saleh (#11431)
The District at Green Valley
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
*Attorneys for Relator*


### RELATOR'S DEMAND FOR JURY TRIAL

Relator, by and through the law firm of Jesse Sbaih & Associates, Ltd., hereby demands a jury trial of all issues in the above-captioned matter.

DATED this 10th day of November, 2020.

JESSE SBAIH & ASSOCIATES, LTD.


By /s/ Jesse M. Sbaih
Jesse M. Sbaih (#7898)
Ines Olevic-Saleh (#11431)
The District at Green Valley
170 South Green Valley Parkway, Suite 280
Henderson, Nevada 89012
*Attorneys for Relator*

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to FRCP Rule 5(b), I certify that I am an employee of the law firm of Jesse Sbaih &

Associates, Ltd., and that on this 10th day of November, 2020, I caused **SECOND AMENDED**

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT & JURY**

**TRIAL DEMANDED** to be served via electronic service to the following:

> John H. Cotton, Esq.
> JOHN H. COTTON & ASSOCIATES, LTD.
> 7900 West Sahara, Suite 200
> Las Vegas, NV 89117
> jhcotton@jhcottonlaw.com
> > *Attorneys for Defendants*

> Gregory R. Jones, Esq.
> McDERMOTT WILL & EMERY, LLP
> 2049 Century Park East, Suite 3200
> Los Angeles, CA 90067
> gjones@mwe.com
> > *Attorneys for Defendants*

> Lindsay Ager, Esq.
> U.S. ATTORNEY'S OFFICE
> 501 Las Vegas Boulevard South, Suite 1100
> Las Vegas, NV 89101
> roger.wenthe@usdoj.gov
> > *Attorneys for the United States*


> /s/ *Jennifer Davidson*_____
> An employee of Jesse Sbaih & Associates, Ltd.