# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America ex rel. Tali Arik, <br><br> Plaintiff <br><br> v. <br><br> DVH Hospital Alliance, LLC, et al., <br><br> Defendants | Case No.: 2:19-cv-01560-JAD-VCF <br><br> **Order Granting Motions to Dismiss and Leave to Amend; Denying Motion to Extend Deadline** <br><br> [ECF Nos. 69, 70, 72, 86, 94] |

Relator Tali Arik brings this qui tam suit under the False Claims Act (FCA) against defendant DVH Hospital Alliance, LLC; Valley Health Systems LLC; Universal Health Services, Inc.; Vista Health Mirza, M.D. P.C.; and hospitalist Irfan Mirza, claiming that they conspired to defraud the federal government by seeking reimbursement for medically unnecessary and improper services, treatments, tests, and hospitalizations.[1] The defendants, led by DVH Hospital, move to dismiss Arik's amended claims, arguing that Arik fails to plead his allegations with sufficient particularity under Federal Rule of Civil Procedure 9(b); alleges nothing more than his subjective disagreement with the hospital staff's treatment plans, hospitalization decisions, and diagnoses; asserts claims barred by the FCA; and fails to adequately allege the existence of a conspiracy.[2] Arik seeks to extend his time to respond to the defendants' motions,[3] maintains that his allegations are sufficient to survive the defendants' Rule 9(b) and 12(b)(6) challenges, and requests leave to file a third amended complaint.[4]

---

[1] ECF No. 53 (second amended complaint).
[2] ECF Nos. 69, 70, 72 (motions to dismiss).
[3] ECF No. 86 (motion to extend time).
[4] ECF No. 94 (countermotion to amend complaint).

I find that Arik's claims for violations of the FCA are insufficiently pled because (1) he has failed to clarify whether and how fraudulent claims for reimbursement were submitted to the federal government and (2) some, though not all, of his disagreements with the hospital's treatments fail to show fraudulent conduct. I also find that he does not and cannot allege a conspiracy, given the unified corporate interests of the defendants. So I grant the defendants' motions to dismiss, deny as moot Arik's motion to extend deadlines, and grant Arik's motion for leave to amend his first and second causes of action.

## Background[5]

### I. Arik's allegations

Arik is an experienced cardiologist who worked at Desert View Hospital in Nye County, Nevada, for roughly three years as a physician, including one year as Medical Chief of Staff.[6] In early 2019, Arik became troubled by certain new practices and policies at the hospital.[7] The hospital's CEO, Susan Davila, had informed Arik that low patient admissions, high patient transfer rates, and conservative testing and treatment practices had plunged the hospital into financial precarity.[8] To remedy this problem, Davila proposed two solutions: contracting with Vista Health and Mirza, and proactively treating more patients at Desert View, thereby increasing patient admissions and decreasing transfers to other hospitals.[9] Davila's solution appeared to work—in the late winter and early spring of 2019, inpatient admissions increased

---

[5] This is merely a summary of facts alleged in the complaint and should not be construed as findings of fact.
[6] ECF No. 53 at ¶¶ 11–13.
[7] *Id.* at ¶ 106.
[8] *Id.* at ¶ 99.
[9] *Id.* at ¶¶ 89, 104.

2

between 37.4% to 68.1% in any given month, and revenue at the hospital grew by 50% for patients covered by Humana Medicare Advantage insurance.[10]

But Arik maintains that the hospital generated this revenue by seeking "cost-based reimbursement" from private and commercial insurers, including Medicare, Medicare Advantage, and Medicaid, for medically unnecessary and improper services and hospital admissions, as well as by altering inpatient-admission times and billing codes and inflating billing for emergency patients.[11] Arik's complaint details 98 patients[12]—identified by number, their medical histories, chief complaints, diagnoses, and, in some cases, their treatments, diagnostic testing, and amount sought in reimbursements from their insurer. Arik claims that each of these patients was mistreated in some way, relying both on his medical experience and the practice standards articulated by medical texts like *Braunwald's Cardiology Practice Standards*, the Medicare Program Integrity Manual, and InterQual Level of Care Criteria 2019.[13] For each patient, he broadly claims that the defendants "knowingly submitted a false claim" to various insurers for "hospitalist services," "unreasonable and medically unnecessary testing," and improper inpatient "admission."[14] For certain patients, he specifies the amount of the "false claim;" for others, he leaves that information blank.[15]

---

[10] *Id.* at ¶¶ 101–05, 219.
[11] *Id.* at ¶¶ 216–17, 220, 229, 250.
[12] *See id.* at ¶¶ 112–214.
[13] *See, e.g., id.* at ¶¶ 60, 112–13, 125, 139–40, 147.
[14] *Id.* at ¶¶ 112–214.
[15] *Compare id.* at ¶ 125 ("Desert View Hospital . . . knowingly submitted a false claim to Medicare/Tricare in the amount of $22,145.42 for the admission of the subject patient."), *with* ¶ 197 ("Desert View Hospital . . . knowingly submitted a false claim to Medicare in the amount of $_____ for the admission and the unreasonable and medically unnecessary testing performed on the subject patient.").

3

Arik's assessments of these patients' treatments are not uniform—some describe specific discrepancies between symptom presentation and diagnosis/treatment,[16] others express his disagreement with certain diagnoses,[17] and still others show his frustration with the hospital's decision to admit patients.[18] Many of these accounts are quite detailed. For example, Arik describes patient 12's stroke; improper admission to Desert View, which lacks a primary or comprehensive stroke center; and resultant, fraudulent claim to "Medicare/Tricare" for $22,145.42.[19] But other accounts are vague, like that of patient 35(q), who complained of "generalized weakness due to [the] side effects of a new medication" and received a "medically unnecessary," unspecified "test"—resulting, apparently, in admission to the hospital, hospitalist services, and an unspecified claim to "Medicare" for an uncertain amount.[20]

## II. Desert View Hospital, Medicare, and Medicaid

The Department of Health and Human Services, Centers for Medicare & Medicaid Services (CMS) designated Desert View Hospital a "critical access hospital" (CAH), which receives significant federal funding to maintain access to and reduce the financial vulnerability

---

[16] *See, e.g.*, *id.* at ¶ 167 ("Patient 35(f) presented . . . dizziness, weakness, and dark stools . . . . [He] underwent . . . a carotid ultrasound, echocardiogram, a T of the brain, and a blood transfusion[, which] were not indicated and were medical unnecessary based on the patient's complaints, a diagnosis of hemorrhoidal bleeding, and hemoglobin of 9.").

[17] *See, e.g.*, *id.* at ¶ 214 ("Patient 78 presented . . . pressure-like dull chest discomfort[, but] cardiac enzymes [and] EKG [were] negative[; t]here was no medical indication for an inpatient admission of this patient" for "three [] days with a diagnosis for acute coronary syndrome.").

[18] *See, e.g.*, *id.* at ¶¶ 170, 213 ("Patient 37 presented . . . with symptoms of bronchitis . . . based on the medical chart, there was no medical indication for an impatient admission of Patient 38."); (Patient 77 presented . . . progressive neurologic issues including left-sided weakness consistent with a stroke . . . [and] was admitted as an inpatient . . . for three [] days . . . . Desert View Hospital was not equipped to treat the patient.").

[19] *Id.* at ¶ 125.

[20] *Id.* at ¶ 167.

of hospitals serving rural communities.[21] It also receives payments under Medicare and Medicaid for patients that it treats with those programs' insurance.[22] The Medicare program provides basic health insurance for individuals who are 65 or older, disabled, or have end-stage renal disease.[23] Under Medicare, "no payments may be made . . . for any expenses incurred for items or services . . . [that] are not reasonable and necessary for the diagnosis or treatment of illness or injury to improve the functioning of a malformed body member[.]"[24] Medicare reimburses providers for inpatient hospitalization only if "a physician certifies that such services are required to be given on an inpatient basis for such individual's medical treatment, or that inpatient diagnostic study is medically required and such services are necessary for such purpose."[25]

      CMS defines a "reasonable and necessary" service as one that "meets, but does not exceed, the patient's medical need" and is furnished "in accordance with accepted standards of medical practice for the diagnosis or treatment of the patient's condition . . . in a setting appropriate to the patient's medical needs and condition."[26] Medically necessary services are those "needed to diagnose or treat an illness, injury, condition, disease, or its symptoms and that meet accepted standards of medicine."[27] The Medicare program expects doctors to exercise their clinical judgment based on "complex medical factors" but does not give them unfettered

---

[21] *Id.* at ¶¶ 78–81.
[22] *Id.* at ¶¶ 50–53.
[23] 42 U.SC. § 1395c.
[24] *Id.* § 1395y(a)(1)(A).
[25] *Id.* § 1395f(a)(3).
[26] CMS, Medicare Program Integrity Manual § 13.5.4 (2019).
[27] CMS, Medicare & You 2020: The Official U.S. Government Medicare Handbook 114 (2019).

5

discretion to decide whether inpatient admission is medically necessary: "The factors that lead to a particular clinical expectation must be documented in the medical record in order to be granted consideration."[28] And medical necessity is considered a question of fact: "A physician's order or certification will be evaluated in the context of the evidence in the medical record."[29]

As a CAH, Desert View Hospital is reimbursed for patient treatment through at least two separate Medicare schemes—for those insured under Medicare Advantage, the hospital receives a "capitation" rate and, for Medicare insureds, it receives "cost-based reimbursement."[30] Under Medicare Advantage's capitation-rate scheme, a private insurer provides benefits to insureds in exchange for federal capitation revenue and pays for Desert View Hospital's services.[31] Capitation rates fluctuate based on the severity of the insured's medical diagnoses, adjustments prescribed by statute, and any audits performed by the private insurer.[32] But under Medicare's cost-based-reimbursement scheme, Desert View Hospital receives an interim per diem rate based on its prior year's actual, allowable, and reasonable costs.[33] At the end of the year, the hospital submits its actual operating-costs report to Medicare, which is compared to the interim rate, resulting in a credit, debit, or change to next year's rate.[34] Reimbursements under both schemes appear throughout Arik's complaint.[35]

---

[28] 42 C.F.R.§ 412.3(d)(1)(i); *see also id.* § 412.3(a)–(c); *see generally* 42 U.S.C. § 1395f(a)(3).
[29] 42 C.F.R. § 412.46(b); *see also id.* §§ 412.3(d)(1)(i), 412.3(d)(3).
[30] 42 U.S.C. § 1395w-23; 42 C.F.R. §§ 413.1(a)(2)(i), 413.1(b), 413.5, 413.70, 422.300.
[31] 42 C.F.R. §§ 422.300, 422.304(a).
[32] *Id.* § 422.308(c).
[33] *Id.* §§ 413.5, 413.50, 413.60(a)–(c), 413.64(e).
[34] *Id.* §§ 413.5, 413.20, 413.60(a)–(c), 413.64(e).
[35] *See, e.g.*, ECF No. 53 at ¶¶ 47, 219, 233, 234.

### III. Arik's suit

Arik brings this qui tam suit for violations of the FCA on behalf of the United States, which has declined to intervene in this action.[36] In his first complaint, he alleged that Desert View Hospital falsely certified its compliance with certain federal rules governing CAH-based services.[37] But upon amendment, Arik has abandoned those theories, now theorizing that Desert View Hospital's staff and an assortment of new defendants conspired to provide medically unnecessary testing and services; improperly admitted patients; and altered their billing codes, billing amounts, and admission times in order to generate ill-gotten federal reimbursements.[38] The defendants move to dismiss, arguing that Arik's allegations are insufficiently pled and barred by the FCA's public-disclosure rule, and that he lacks personal knowledge of the claims he presents.[39] While Arik disagrees,[40] he seeks leave to amend his complaint[41] and provides a proposed third amended complaint[42] that slightly modifies his current allegations.

**Discussion**

### I. Motions to dismiss [ECF Nos. 69, 70, 72]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption

---

[36] ECF No. 2 at 2.
[37] *See generally* ECF No. 14.
[38] ECF No. 53.
[39] *See* ECF Nos. 69, 70, 72.
[40] ECF No. 91–93.
[41] ECF No. 94.
[42] ECF No. 94–1.

of truth.[43]  Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[44]  The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[45]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[46]  Additionally, "as with all fraud allegations, a plaintiff must plead FCA claims 'with particularity'" under Rule 9(b).[47]  To satisfy Rule 9(b), "a pleading must identify 'the who, what, when, where, and how of the misconduct charged,'" as well as "'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'"[48]

### A. The FCA

The FCA imposes significant civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval"; "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "conspires to commit" either of the previous acts.[49]  The Act allows a private plaintiff to enforce its provisions by bringing a qui tam suit on behalf of the United States.[50]  To state an FCA claim, a plaintiff must allege "(1) a false statement or fraudulent course of conduct, (2)

---

[43] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[44] *Id.*

[45] *Id.* at 679.

[46] *Id.*

[47] *Winter ex rel. United States v. Gardens Reg'l Hosp. and Med. Ctr., Inc.*, 953 F.3d 1108, 1116 (9th Cir. 2020).

[48] *Cafasso U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citations omitted)) (alteration in original).

[49] 31 U.S.C. § 3792(a)(1).

[50] *Id.* § 3730(b).

8

made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."[51] Courts are advised to interpret the FCA "broadly, in keeping with Congress's intention 'to reach all types of fraud, without qualification, that might result in financial loss to the Government.'"[52]

Arik's allegations fall under a "false certification" theory of FCA liability, which can be either "express" or "implied."[53] Express certification occurs when "the entity seeking payment certifies compliance with a law, rule[,] or regulation as part of the process through which the claim for payment is submitted."[54] Implied certification occurs "when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement."[55] Arik concedes that his false-medical-necessity certifications are "express,"[56] asserting that the provided medical services were not "reasonable and necessary," in violation of Medicare's statutory and regulatory medical-necessity requirements.[57]

### 1. *Arik's allegations fail to satisfy Rule 9(b)'s pleading standards.*

Arik's professional disagreement with Desert View's diagnoses and treatments are well-documented.[58] But as before, he has failed to articulate whether and how the described

---

[51] *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017).

[52] *Gardens Reg'l Hosp.*, 953 F.3d at 1116 (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)).

[53] *See id.* at 1114.

[54] *Ebeid*, 616 F.3d at 998.

[55] *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995 (2016).

[56] ECF No. 53 at ¶¶ 112–214 (claiming that each patient falls under "False Express Certification of Medical Necessity").

[57] *See Gardens Reg'l. Hosp.*, 953 F.3d at 1113, 1118–19.

[58] *See, e.g.*, ECF No. 53 at ¶¶ 112–214.

9

fraudulent claims—which include both the patient-based-fraud theory[59] and the altered-billing-codes and admissions-times and artificially enlarged-billing-amounts theory[60]—were submitted to the government for reimbursement. The Ninth Circuit does not require a plaintiff to "identify representative examples of false claims to support every allegation," but he must allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."[61] A complaint provides the requisite indicia of reliability when "specific allegations of the defendant's fraudulent conduct necessarily [lead] to the plausible inference that false claims were presented to the government."[62]

The defendants argue, and Arik concedes,[63] that he improperly claims that both private and commercial insurers received Desert View Hospital's false claims[64]—calling into question whether an FCA action exists at all, given that the statute does not afford a remedy to private insurers. But Arik also fails to connect (1) the direct "submi[ssion of] a false claim" to Medicare, Medicare Advantage, or Medicaid and (2) the general reimbursement scheme that might result in a fraudulent payment based on that direct submission. Instead, Arik's complaint

---

[59] *Id.* at ¶¶ 112–214

[60] *Id.* at ¶¶ 220, 229, 250.

[61] *Ebeid*, 616 F.3d at 998 (quoting *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)) (internal quotation marks omitted); *see also United States v. Ojai Valley Cmty. Hosp., Inc.*, No. CV 17-6972, 2018 WL 6177257, at *7 (C.D. Cal. Jul. 30, 2018) ("Relator has not ple[d] who submitted the false claims, any specific claims that were submitted to CMS, any actual fraudulent charges Ojai submitted, or why the representations were false.").

[62] *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 457 (4th Cir. 2013).

[63] ECF No. 91 at 17 ("Nonetheless, to appease DVH's concerns, Dr. Arik (to the best of his ability) removed from the proposed TAC all insurances he believed to be private commercial insurers . . . and clarified that 'Medicare/Humana' was intended to mean Humana Medicare Advantage Plan.").

[64] *See* ECF No. 53 at ¶¶ 112, 114, 117–19, 121, 123–29 (noting that a single claim was provided to two payors, which included private commercial insurers like Humana, Anthem, United, and AARP.).

seemingly posits at least three methods by which Desert View Hospital receives ill-gotten funds from the government, asserting that it: directly submits claims for individual services to the government, passes along inflated-risk adjustment data" that results in "inaccurate capitation rates," and submits "inaccurate inpatient service reports."[65] He also claims that the "fraudulent billing practice[s]," which include altering inpatient-admission times and billing codes, were "commonly used" "for billing Medicare and other government programs for medications, IV solution, and radiology services."[66]

These theories are inconsistent and at odds with the law that Arik describes in his complaint. According to his own allegations, a CAH does not directly submit a claim to the government;[67] it either creates a cost report for which it receives an annualized cost-based reimbursement (under Medicare) or works with a private insurer, who passes along hospital-developed data to the government to develop capitation rates for hospital services (under Medicare Advantage). As I advised Arik in my prior order, clarifying how Desert View Hospital falsified claims under these schemes is essential to satisfying the FCA's requirement that a fraudulent claim be submitted.[68] After all, under Medicare Advantage, any improper billing may be caught by a third-party audit and thus not result in a fraudulent repayment;[69] under Medicare, any improper-testing claim may never make it into the cost report that affects the interim per

---

[65] *See id.* at ¶¶ 47, 48, 112–214.

[66] *Id.* at ¶ 255.

[67] *See id.* at ¶¶ 85–87 ("Desert View Hospital, as a CAH, is not subject to Medicare's Inpatient Prospective Payment System [] or the Hospital Outpatient Prospective Payment System.").

[68] *See United States ex rel. DVH Hosp. Alliance, LLC*, No. 2:19-cv-01560, 2020 WL 6173528 at *4 n.59 ("[T]hese details matter.") (Oct. 21, 2020); *see also United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1017 (9th Cir. 2018).

[69] 42 C.F.R. § 422.308(c).

11

diem rate because that rate is calculated by the number of days a patient remains in the hospital and not the tests that patient receives.[70] Thus, it is entirely unclear from the face of Arik's complaint whether and how these alleged "false claims" were actually passed along to the government, such that they resulted in fraudulent reimbursements or payments. But because Arik might amend his complaint to remedy these pleading deficiencies, I dismiss his claims without prejudice.

### 2. *Some of Arik's medical-necessity claims are insufficiently pled.*

The defendants also challenge the sufficiency of Arik's medical-necessity claims, arguing that he fails to satisfy the pleading standard articulated in *Winter ex rel. United States v. Gardens Regional Hospital and Medical Center, Inc.*[71] In *Gardens Regional Hospital*, the Ninth Circuit addressed whether the relator's subjective disagreement with the hospital staff's certifications regarding the medical necessity of inpatient admissions could form the basis of an FCA claim.[72] As a matter of first impression, the court concluded that it could, holding that "false certification of medical necessity can give rise to FCA liability" and that "the FCA does not require a plaintiff to plead an 'objective falsehood.'"[73] Instead, a physician's certification that treatment was "medically necessary" "can be false or fraudulent for the same reasons [that] any opinion can be false or fraudulent."[74] "These reasons include if the opinion is not honestly held, or if it implies the existence of facts—namely, that inpatient hospitalization is needed to diagnose or treat a medical condition, in accordance with accepted standards of medical practice—that do not

---

[70] *Id.* §§ 413.5, 413.20, 413.50, 413.60(a)–(c), 413.64(e), 413.70.
[71] *Gardens Reg'l Hosp.*, 953 F.3d 1108 (9th Cir. 2020).
[72] *Id.* at 1117.
[73] *Id.* at 1118–19.
[74] *Id.* at 1119.

12

exist."[75] Thus, the Ninth Circuit determined that the *Gardens Regional Hospital* relator sufficiently alleged fraudulent conduct: she reviewed inpatient admissions at the defendant hospital, determined that those admissions failed to satisfy the hospital's own admission criteria, and presented evidence that those admissions were improperly billed to Medicare.[76]

Most, though not all, of Arik's improper patient-care accounts satisfy the standard set out in *Gardens Regional Hospital*. Like the *Gardens Regional Hospital* relator, Arik properly asserts that certain inpatient admissions "fail[] to satisfy the hospital's own admissions criteria— the InterQual criteria," permitting admissions that go "against the medical consensus."[77] He also claims that many patients were admitted to the hospital for treatments that the hospital could not provide because it lacked the necessary facilities.[78] These allegations are similar to those in *Garden Regional Hospital*, where the relator described psychiatric admissions to a hospital devoid psychiatric-treatment services or doctors.[79] Many of Arik's accounts also raise thorny questions of diagnostic accuracy and hospitalization decisions, which largely present questions of fact that cannot and should not be resolved at this stage.[80]

---

[75] *Id.*

[76] *Id.* at 1120.

[77] *Compare id.* at 1120, *with* ECF No. 53 at ¶¶ 139–40, 147–48, 171, 176, 179, 180–92, 198–99, 201–14.

[78] *See, e.g.*, ECF No. 53 at ¶¶ 112–37, 149, 170, 178, 193, 194.

[79] *See Gardens Reg'l Hosp.*, 953 F.3d at 1120–21 ("[S]he alleges that a number of hospital admissions were for diagnoses that had been disprove by laboratory tests, and that several admissions were for psychiatric treatment, even though Gardens Regional was not a psychiatric hospital—and one of those patients never even saw a psychiatrist.").

[80] *See* ECF No. 53 at ¶¶ 112–37, 143.

But some accounts, as before, merely document Arik's disagreements with Mirza's and other staff members' medical decisions,[81] asserting little more than his "reasonable difference of opinion"[82] on medical care. Those accounts lack entirely the indicia of subjective falsity required by the Ninth Circuit and, in fact, often show Mirza's belief that her medical decisions were reasonable.[83] And still others are either entirely devoid of supporting details needed to meet Rule 9(b)'s requirements or more closely resemble medical-malpractice claims.[84] So I dismiss those insufficiently pled claims related to those patients with leave to amend.

### 3. *The FCA's public-disclosure bar does not apply.*

The defendants argue that the FCA's statutory public-disclosure bar limits Arik's ability to plead the new fraud theories[85] raised in his prior, proposed amended pleading. "The FCA's public[-]disclosure bar deprives federal courts of subject[-]matter jurisdiction when a relator alleges fraud that has already been publicly disclosed, unless the relator qualifies as an 'original source.'"[86] Under the statute, information is considered publicly disclosed if it is contained "(i)

---

[81] *Id.* at ¶¶ 141–42, 144–46, 150, 151, 152, 153, 154–66, 168, 169, 173, 177, 197.

[82] *Gardens Reg'l Hosp.*, 953 F.3d at 1120.

[83] *See, e.g.*, ECF No. 53 at ¶¶ 141 ("Dr. Mirza stated, 'because of history of hypertension, will get an echocardiogram.'"); 142 ("Dr. Mirza states, 'wife reported that he is not breathing well. She would like to have a stress test and an echocardiogram done while he is here . . . . Which I will order."); 200.

[84] *Id.* at ¶¶ 167 (documenting an unknown "test" given to a patient with weakness that was "medically unnecessary," resulting in an unspecified claim made to the government on an unknown date); 176 (asserting, without explanation, that there "was no medical indication for an impatient admission" and providing an unspecified claim made to the government on an unknown date); 195 ("[A]fter the discharge from Desert View Hospital, the patient had to be treated at a higher level of care facility as an inpatient."); 196.

[85] *Id.* at ¶¶ 220, 229, 253 (asserting that the defendants altered inpatient admissions times and billing codes and fraudulently billed for services).

[86] *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 569 (9th Cir. 2016) (quoting *United States ex rel. Hartpence v. Kinetic Concepts*, 792 F.3d 1121, 1123 (9th Cir. 2015)).

in a [f]ederal criminal, civil, or administrative hearing in which the [g]overnment or its agent is a party; (ii) in a congressional, Government Accountability Office, or other [f]ederal report, hearing, audit, or investigation; or (iii) from the news media."[87] But this bar does not apply if the government opposes its application or "the person bringing the action is an original source of the information," meaning that he "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions."[88] Thus, the public-disclosure bar sets up a "two-tiered inquiry," requiring courts to first "determine whether there has been a prior 'public disclosure'" of the "allegations or transactions" and, second, to "inquire whether the relator is an 'original source'" within the meaning of the statute.[89]

The defendants may be correct that Arik fails to allege that he is the original source of these allegations. But they fail to satisfy the first step of the inquiry because a proposed amended pleading filed in the same litigation, when the government has expressly declined to intervene, does not satisfy the statute's public-disclosure requirement. Courts have generally held that "information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure of allegations."[90] But that appears to apply to information disclosed in prior litigation and not to successive pleadings in the same action. In *United States v. Northrop*, for example, the Ninth Circuit remarked that information that had been publicly disclosed in a separate state court suit and brought by a different relator was subject to the public-disclosure bar. So too in *U.S. ex rel. Siller v. Becton Dickinson & Co.*, when the Fourth

---

[87] 31 U.S.C. § 3730(e)(4)(A).

[88] *Id.* § 3730(e)(4)(A)–(B).

[89] *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000).

[90] *United States v. Northrop Corp.*, 59 F.3d 953, 966 (9th Cir. 1995) (quoting *U.S. ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1350 (4th Cir. 1994)) (internal quotation marks omitted).

Circuit determined that allegations raised in a prior, state court action should be considered publicly disclosed in a subsequent and separate federal action.[91]  The defendants do not cite, nor can I find, any controlling precedent stating that a proposed amended pleading in the same litigation would be considered publicly disclosed.  Such a ruling would, in fact, bar amendments to a complaint, which cannot be that statute's goal.  So I decline to dismiss these new fraud claims as jurisdictionally barred.

### 4. *Arik's conspiracy claims are barred as a matter of law.*

Finally, the defendants encourage me to apply the intracorporate-conspiracy doctrine to Arik's new conspiracy claims, which would require their dismissal.  To state a conspiracy claim under the FCA, a relator must demonstrate that (1) the defendants conspired with one or more persons to induce the United States to allow or pay a false claim; and (2) one or more of the conspirators performed any act to effect the object of the conspiracy; (3) which injured the United States as a result of the false claim.[92]  But under the intracorporate-conspiracy doctrine, a "conspiracy requires an agreement among two" or more "distinct business entities;"[93] the claim cannot lie for "the operations of a corporate enterprise," which "must be judged as the conduct of a single corporation."[94]  While the Ninth Circuit has yet to apply the intracorporate-conspiracy doctrine to an FCA claim,[95] multiple courts have used this principle to bar conspiracy claims

---

[91] *Siller*, 21 F.3d at 1350.

[92] *See United States ex rel. Stinson, Lyons, Gerlin & Bastamante v. Provident Life & Accident Ins. Co.*, 721 F. Supp. 1247, 1258 (S.D. Fla. 1989); *United States ex rel. Costa v. Baker & Taylor, Inc.*, No. C-95-1825, 1998 WL 230979, at *5 (N.D. Cal. Mar. 20, 1998).

[93] *United States v. Hughes Aircraft Co.*, 20 F.3d 974, 979 (9th Cir. 1994).

[94] *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 770 (1984).

[95] *See United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1027 (S.D. Cal. 2017) (collecting cases).

when the alleged conspirators are a parent corporation and its wholly-owned subsidiary,[96] "sister corporations that are wholly owned subsidiaries of the same parent,"[97] or "agents and employees of a corporation" acting "in their official capacities on behalf of the corporation."[98]

I find those courts' reasoning persuasive and conclude that Arik's conspiracy claims are barred as a matter of law. In his complaint, he alleges a unity of interest between the defendants,[99] asserting that (1) Universal Health Services is the parent company of Valley Health, which acquired Desert View Hospital, (2) Mirza is an employee of Vista Health Mirza, and (3) the Mirza entities worked as agents and employees of the Desert View Hospital defendants, providing hospitalist services.[100] His amended pleadings fare no better, indicating that Universal Health is the parent company of Valley Health and Desert View Hospital, which are thus sister companies.[101] This relationship renders these defendants subject to the intracorporate-conspiracy doctrine: there can be no meeting of the minds between distinct entities when the entities are not, in reality, distinct.

Arik asks me to carve out an unspecified exception to this doctrine, arguing that the defendants' "gross culpability" means that they should be held to task for conspiracy, while relying on out-of-circuit decisions that have held parent corporations liable for the actions of

---

[96] *See, e.g.*, *United States v. Aerojet Rocketdyne Holdings, Inc.*, 381 F. Supp. 3d 1240, 1249 (E.D. Cal. 2019); *United States ex rel. Campie v. Gilead Scis., Inc.*, No. C-11-0941, 2015 WL 106255, at *15 (N.D. Cal. Jan. 7, 2015).

[97] *Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 249 (1st Cir. 2012) (collecting cases).

[98] *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983).

[99] *See, e.g.*, ECF No. 53 at ¶¶ 21, 27.

[100] *See id.* at ¶¶ 16–28.

[101] ECF No. 92 at 13.

their subsidiaries.[102] Those cases are inapposite. In both *United States ex rel. Beattie v. Comsat Corp.* and *United States ex rel. Harris v. Lockheed Martin Corp.*, the district courts addressed conspiracy allegations approaching a criminal conspiracy under federal law.[103] Arik has not only failed to allege similar claims, but the criminal-conspiracy exception adopted in the Eleventh Circuit has been explicitly rejected by courts in this circuit.[104] And while Arik may find the defendants' conduct deeply wrong, that does not mean that their wrongdoing amounts to a conspiracy. So I dismiss his conspiracy claim.

## II. Motion for leave to amend [ECF No. 94]

Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that "[t]he courts should freely give leave [to amend] when justice so requires."[105] In determining whether to grant leave to amend, district courts consider five factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) whether the plaintiff has previously amended the complaint, and (5) futility of amendment.[106] The factors do not weigh equally—"[f]utility alone can justify denial of a motion to amend"[107] and, among the other factors, the Ninth Circuit apportions the greatest weight to potential prejudice.[108] Absent futility, a factually supported showing of prejudice, or a

---

[102] *Id.*

[103] *United States ex rel. Beattie v. Comsat Corp.*, 8:96-cv-966-T, 2001 WL 35992080, at *3 (M.D. Fla. Apr. 18, 2011); *United States ex rel. Harris v. Lockheed Martin Corp.*, 905 F. Supp. 2d 1343, 1354–55 (N.D. Ga. 2012).

[104] *See United States ex rel. Huey v. Summit Healthcare Ass'n*, No. CV-10-8003, 2011 WL 814898, at *7 (D. Ariz. Mar. 3, 2011) ("The victim of an FCA conspiracy is the United States. It may prosecute corporations and their agents and employees for acting in unison should it find criminal charges warranted.").

[105] *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

[106] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

[107] *Id.*

[108] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

18

heavy influence of the other factors, there is a strong presumption in favor of permitting amendment.[109]

Mirza and Vista Health claim that any amendment to Arik's complaint would be futile, stressing that he has had the opportunity to amend his pleadings before.[110] As discussed above, I find that amendment is not futile with respect to Arik's first and second claim for relief. Arik might bolster his allegations to (1) articulate whether and how the hospital submitted fraudulent claims for federal, and not private, reimbursement; and (2) clarify the fraudulence of the hospital's treatments, diagnoses, and admissions, in line with the standard articulated in *Gardens Regional Hospital*. But I find that amendment of Arik's conspiracy claim would be futile: his own allegations reveal that each defendant is a subsidiary, parent, sister corporation, or agent of the others, and thus cannot conspire to violate the FCA.[111] So I dismiss his conspiracy claims with prejudice.

**CONCLUSION**

IT IS THEREFORE ORDERED that the defendants' motions to dismiss **[ECF Nos. 69, 70, 72] are GRANTED**. Arik's first and second causes of action are dismissed without prejudice and with leave to amend. Arik's third cause of action, asserting conspiracy claims, is dismissed with prejudice and without leave to amend.

IT IS FURTHER ORDERED that Arik's motion seeking leave to amend **[ECF No. 94] is GRANTED:** Arik has until May 17, 2021, to file his third amended complaint consistent with

---

[109] *Id.* (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186–87 (9th Cir. 1987)).

[110] ECF No. 95 at 8.

[111] *Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment.").

19

this order. If he fails to do so, Arik's claims against the defendants will be deemed abandoned and dismissed and this case will be closed without further notice.

IT IS FURTHER ORDERED that Arik's motion to extend time **[ECF No. 86] is DENIED as moot**.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: May 3, 2021