UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America ex rel. Tali Arik, <br><br>  Plaintiff <br><br> v. <br><br> DVH Hospital Alliance, LLC, et al., <br><br>  Defendants | Case No.: 2:19-cv-01560-JAD-VCF <br><br> **Order Denying Motions to Dismiss, to Strike, and for More Definite Statement** <br><br> [ECF Nos. 108, 109] |

Relator Tali Arik brings this qui tam suit under the False Claims Act, alleging that Desert View Hospital and its contracted hospitalist Irfan Mirza defrauded the federal government by seeking reimbursement for medically unnecessary and improper services, treatments, tests, and hospitalizations. I dismissed with leave to amend Arik's first- and second-amended complaints in 2020 and 2021, respectively. The hospital and Mirza now move to dismiss Arik's third-amended complaint, arguing that his claims remain insufficiently pled. In the alternative, Mirza moves to strike one paragraph from the complaint and for a more definite statement. Because I find that Arik's amended allegations satisfy federal pleading standards, I deny all of the motions.

## Discussion

### I.  Motion-to-dismiss standard

Federal pleading standards require plaintiffs to plead enough factual detail to "state a claim to relief that is plausible on its face."[1] This demands that the complaint be filled with "more than an unadorned, the-defendant-unlawfully-harmed-me accusation";[2] plaintiffs must make direct or inferential factual allegations about "all the material elements necessary to sustain

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

recovery under *some* viable legal theory."[3] The court must accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth, and resolve all factual disputes in the plaintiff's favor.[4] A complaint that fails to meet this standard must be dismissed.[5]

A claim predicated on fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure (FRCP) 9(b), which requires that, when fraud is alleged, the plaintiff must "state with particularity the circumstances constituting fraud."[6] Those circumstances must include the "who, what, when where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."[7] But "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[8]

## II. The False Claims Act

The False Claims Act (FCA) imposes significant civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."[9] A private plaintiff may enforce the act's provisions by bringing a qui tam suit on behalf of the United States.[10] To state an FCA claim, a plaintiff must

---

[3] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

[4] *Iqbal*, 556 U.S. at 678–79.

[5] *Twombly*, 550 U.S. at 570.

[6] *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (quoting Fed. R. Civ. P. 9(b)).

[7] *Cafasso U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (cleaned up).

[8] Fed. R. Civ. P. 9(b) (cleaned up).

[9] 31 U.S.C. § 3792(a)(1).

[10] *Id.* § 3730(b).

allege "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."[11]  Courts are advised to interpret the FCA "broadly, in keeping with Congress's intention 'to reach all types of fraud, without qualification, that might result in financial loss to the Government.'"[12]

Arik's allegations fall under a "false certification" theory of FCA liability, which can be either "express" or "implied."[13]  Express certification occurs when "the entity seeking payment certifies compliance with a law, rule[,] or regulation as part of the process through which the claim for payment is submitted."[14]  Implied certification occurs "when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement."[15]  Arik appears to posit that his claims are based on an express-false-certification theory,[16] asserting that the provided medical services were not "reasonable and necessary," but were certified to be so, in violation of Medicare's statutory and regulatory medical-necessity requirements.[17]

---

[11] *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017).

[12] *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 953 F.3d 1108, 1116 (9th Cir. 2020), *cert. denied sub nom. RollinsNelson LTC Corp. v. United States ex rel. Winters*, 141 S. Ct. 1380 (2021) (quoting *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968)).

[13] *See id.* at 1114.

[14] *Ebeid*, 616 F.3d at 998.

[15] *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995 (2016).

[16] ECF No. 103 at ¶ 72, 166–67, 641, 644.

[17] *See Gardens Reg'l. Hosp.*, 953 F.3d at 1113, 1118–19.

### III.     Arik's fraud allegations about the hospital are pled with sufficient particularity.

When I dismissed Arik's second-amended complaint, I granted him leave to amend to "(1) articulate whether and how the hospital submitted fraudulent claims for federal, and not private, reimbursement; and (2) clarify the fraudulence of the hospital's treatments, diagnoses, and admissions, in line with the standard articulated in [*Winter ex rel. United States v. Gardens Regional Hospital and Medical Center, Inc.*]"[18]  In *Gardens Regional Hospital*, the Ninth Circuit addressed whether the relator's subjective disagreement with the hospital staff's certifications regarding the medical necessity of inpatient admissions could form the basis of an FCA claim.[19] The court concluded that it could, holding that "false certification of medical necessity can give rise to FCA liability" and that "the FCA does not require a plaintiff to plead an 'objective falsehood.'"[20]  Instead, a physician's certification that treatment was "medically necessary" "can be false or fraudulent for the same reasons [that] any opinion can be false or fraudulent."[21] "These reasons include if the opinion is not honestly held, or if it implies the existence of facts— namely, that inpatient hospitalization is needed to diagnose or treat a medical condition, in accordance with accepted standards of medical practice—that do not exist."[22]  Thus, the Ninth Circuit determined that the *Gardens Regional Hospital* relator sufficiently alleged fraudulent conduct: she reviewed inpatient admissions at the defendant hospital, determined that those

---

[18] ECF No. 100 at 19.
[19] *Gardens Reg'l Hosp.*, 953 F.3d. at 1117.
[20] *Id.* at 1118–19.
[21] *Id.* at 1119.
[22] *Id.*

admissions failed to satisfy the hospital's own admission criteria, and presented evidence that those admissions were improperly billed to Medicare.[23]

### A. The representative-patient examples in Arik's third-amended complaint meet the *Gardens Regional Hospital* standard or involve issues of fact that shouldn't be resolved at this stage.

In my most recent dismissal order, I found that only 34 of the representative-patient examples Arik claims exhibited Desert View Hospital's (DVH) fraudulent conduct met the *Gardens Regional Hospital* standard.[24] These examples survived dismissal because they sufficiently alleged that those patients' admissions went against DVH's own admissions criteria and medical consensus, involved treatments the hospital couldn't provide, or "raise[d] thorny questions of diagnostic accuracy and hospitalization decisions [that] should not be resolved" at the motion-to-dismiss stage.[25] Nevertheless, because the two claims those examples undergirded did not meet the FRCP 9(b) particularity requirement, I dismissed them.[26]

In his third-amended complaint, Arik excised the vast majority of the representative-patient examples I found insufficiently pled under *Gardens Regional Hospital*[27] and only re-alleged one of the dismissed examples.[28] The facts alleged about that patient, 35(p), now include that, under appropriate-use criteria published by several nationally recognized medical societies, it was medically unnecessary "to perform a nuclear stress test" or "an echocardiogram" on a patient who presents a low risk for coronary-heart disease and hypertensive-heart disease and has

---

[23] *Id.* at 1120.
[24] ECF No. 100 at 13–14.
[25] *Id.*
[26] *Id.* at 9–12.
[27] *See generally* ECF No. 103 at ¶¶ 168–636.
[28] *See id.* at ¶¶ 284–94.

5

recently received an echocardiogram.[29]  Because 35(p) wasn't admitted as an inpatient, compliance with the hospital's admissions criteria wasn't necessary, so noncompliance with those criteria cannot be a basis for finding a lack of medical necessity.  But given the additional details Arik has pled, this patient's example presents a complex factual issue about the tests' medical necessity that is best not resolved at this stage of proceedings.  Arik re-pleads the 34 representative-patient examples in the second-amended complaint that I found sufficiently alleged;[30] they remain so.

**B.     Arik's fraud allegations meet the FRCP 9(b) particularity requirement.**

In my last order, I instructed Arik to plead with particularity whether and how fraudulent claims were submitted for federal-government reimbursement because his second-amended complaint "fail[ed] to connect (1) the direct submission of a false claim to Medicare, Medicare Advantage, or Medicaid and (2) the general reimbursement scheme that might result in a fraudulent payment based on that direct submission."[31]  In his third-amended pleading, Arik cures this deficiency by presenting more facts related to two categories of allegedly fraudulent Medicare or federally-funded-healthcare-program claims: (1) individual claims hospitals submit to federally funded healthcare programs on a per-patient basis and (2) the annual-cost report that reconciles the hospital's actual costs with the per-patient payments it received.[32]  He also alleges that similarly medically unnecessary claims were submitted to a Medicare Advantage organization (MAO) that then paid those claims.[33]  And as a result, false-claim information and

---

[29] *Id.* at ¶¶ 286–89.
[30] *See* ECF No. 103 at ¶¶ 168–636; *see also* ECF No. 100 at 12–14.
[31] ECF No. 100 at 10 (cleaned up).
[32] ECF No. 103 at ¶¶ 52–89; *see also generally* ¶¶ 168–636.
[33] *See id.* at ¶¶ 528, 542, 558, 573–74, 591, 605, 618, 631.

costs were passed along to the federal government, artificially inflating the MAO's capitation rate.[34] These allegations are sufficient for the complaint to survive the defendants' motions to dismiss.

For his per-patient claims, Arik describes how critical-access hospitals like DVH submit claims and receive interim reimbursement from Medicare intermediaries at least once a month.[35] Each claim so submitted includes a certification that (a) a physician found hospital admission medically necessary and (b) all claim information is "true, accurate, and complete."[36] He then includes numerous representative-patient examples that show that a specific patient was admitted or underwent treatment or testing against medical necessity, DVH submitted a claim to a federal healthcare program for those services, and the federal government or its intermediaries paid DVH an amount certain for them.[37]

DVH's annual-cost report, which includes a thorough certification statement signed by a hospital administrator, reconciles the interim payments it received throughout the year and the hospital's actual costs.[38] According to Arik, Medicare uses this report to set the payment schedule that it'll apply to DVH's inpatient hospital stays the following year. And "upon information and belief," Arik alleges that DVH's annual-cost reports incorporate the per-patient costs for which it received federal reimbursements over the course of a calendar year.[39] Allegations based on information and belief are generally insufficient to satisfy the FRCP 9(b)

---

[34] *See id.* at ¶¶ 546, 563, 579, 595, 623, 636.
[35] *Id.* at ¶ 74; ECF No. 111 at 9 (citing 42 CFR § 413.60).
[36] ECF No. 103 at ¶ 36.
[37] *See generally id.* at ¶¶ 168–636.
[38] *Id.* at ¶ 62–77.
[39] *See, e.g., id.* at ¶ 174.

particularity requirement.[40] But considering Arik's allegation in the context of his full complaint, including the per-patient reimbursements and the peculiarity of significant year-over-year admission-rate, testing-order-rate, and transfer-rate changes after DVH contracted with Mirza and his hospitalist group, I find his report-based claims sufficiently pled.

Arik's allegations about fraudulent Medicare Advantage claims similarly survive defendants' motions to dismiss. Defendants argue that Arik has not established an FCA claim on the basis of Medicare Advantage fraud because he again relies on allegations based on "information and belief" to show that the false-diagnosis information underlying those claims was submitted to the federal government and ultimately impacted the relevant MAO's capitation rate.[41] But under the FCA, "it is sufficient to allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."[42] Arik's allegation of the broader scheme to pump up DVH's revenues through its contract with Mirza and description of the Medicare Advantage reimbursement process, paired with the representative examples of Medicare Advantage claims submitted and paid out by the MAO, strongly indicate that the diagnosis information for those patients was passed onto the federal government. At this stage, that is enough. So I deny defendants' motions to dismiss those claims.

---

[40] In his response to the hospital's motion to dismiss, Arik attempts to rely on a loosened fraud-pleading standard articulated by the Ninth Circuit in *Wool v. Tandem Computers, Inc.* ECF No. 111 at 10 n.8, 15. But as DVH counters, that standard is inapposite. ECF No. 114 at 4. It is generally only relevant in situations involving corporate or securities fraud. *See Ebeid*, 616 F.3d at 999.

[41] ECF No 108 at 10–11; *see also, e.g.*, ECF No. 103 at ¶ 174.

[42] *Ebeid*, 616 F.3d at 998–99 (cleaned up).

Finally, defendants object to the inclusion of the ancillary fraudulent practices Arik describes in his complaint: DVH, with Mirza's assistance, (1) altered admission times so that they would get reimbursed for an additional inpatient-stay day, (2) increased the cost of regularly ordered services like blood draws, and (3) rebilled denied services as different services.[43]  All of these practices either involved the same false certifications on the same claims forms as Arik's medical-necessity claims, or were otherwise factually false statements submitted to the federal government for reimbursement.[44]  Although Arik doesn't provide representative-patient examples for these practices, a "a relator is not required to identify actual examples of submitted false claims [nor] to identify representative examples of false claims to support every allegation."[45]  The complaint's allegations about the broader fraudulent scheme and, for example, the previous hospitalist's resistance to these practices, drastic lengths-of-stay increases after Mirza's hiring, and resultant increases in revenue, are sufficiently reliable indicia that these claims for reimbursement were also submitted.  So Arik's FCA claims based on these practices may proceed as well, and defendants' motions to dismiss are thus denied in their entirety.

**IV.  Arik's allegations about Mirza are sufficiently clear, definite, and material to the claims in this case.**

FRCP 12(f) permits federal district courts to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter."[46]  Mirza moves to strike as scandalous one paragraph of the complaint, which reads in relevant part:

---

[43] ECF No. 103 at ¶¶ 637–73; *see* ECF No. 108 at 13–19; *see also* ECF No. 111 at 15–21.
[44] ECF No. 111 at 15 –21; *see generally* ECF No. 103 at ¶¶ 637–73.
[45] *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1209 (9th Cir. 2019).
[46] Fed. R. Civ. P. 12(f).

9

> Dr. Mirza was publicly reprimanded . . . by the Arizona Medical Board . . . , based on a finding that he had caused actual harm to two patients by implanting pacemakers which *were not medically indicated*. He once had a California medical license, which was revoked by a Disciplinary Order[,] followed by [a] surrender of his California license . . . . In the meantime, a formal Complaint was filed before the Board of Medical Examiners of the State of Nevada . . . , relating to the disciplinary action taken in Arizona. That case was resolved by a Settlement Agreement . . . . Desert View's contract with Dr. Mirza's company to provide hospitalist services began six weeks later . . . .[47]

Mirza argues that "[t]hese allegations run far afield of the merits of this case and recklessly careen into the salacious[,] merely seek[ing] to harass and embarrass" him.[48] Arik counters that the information about Mirza's disciplinary proceedings in Arizona, California, and Nevada—rooted in his apparently wrongful implantation of pacemakers into two patients who didn't need them—are public knowledge and especially relevant to a case involving allegations that Mirza and DVH collectively performed countless medically unnecessary services upon patients, thereby defrauding them and their insurer-payor, the United States.[49] Although these allegations are obviously unflattering to Mirza, they may speak to his or the hospital's knowledge about medical necessity, among other facets of the plaintiff's case, so I cannot find that they are so irrelevant to this case or so sensational that they need to be struck from the complaint. I thus deny this motion.

Finally, I also deny Mirza's alternative motion for a more definite statement. FRCP 12(e) allows district courts to order a party to clarify its pleading when it is "so vague or ambiguous that the [opposing] party cannot reasonably prepare a response."[50] Mirza is correct that most of

---

[47] ECF No. 103 at ¶ 130 (emphasis added).
[48] ECF No. 109 at 16–17.
[49] ECF No. 112 at 10–12.
[50] Fed. R. Civ. P. 12(e).

Arik's representative-patient examples in the third-amended complaint do not detail the level of Mirza or his hospitalist group's involvement with those specific cases.[51] But some do, and others provide for broader allegations of his participation in the overarching fraudulent scheme—as does the rest of the complaint.[52] And Mirza's extensive motion practice belies any contention that the complaint was too vague or ambiguous to prevent him from fully responding. So I deny his motion for a more definite statement as well.

## Conclusion

IT IS THEREFORE ORDERED that defendants DVH Hospital Alliance, LLC; Valley Health Systems LLC; Universal Health Services, Inc.'s motion to dismiss **[ECF No. 108]** and defendants Vista Health Mirza, M.D. P.C. and Irfan Mirza's motion to dismiss **[ECF No. 109] are DENIED**.

IT IS FURTHER ORDERED that Mirza's alternative motion to strike and for a more definite statement **[ECF No. 109] is DENIED**.

_____
U.S. District Judge Jennifer A. Dorsey
March 31, 2022

---

[51] ECF No. 109 at 15–16.

[52] *See, e.g.*, ECF No. 103 at ¶¶ 321, 347, 431, 567, 634; *see also, e.g.*, ¶¶ 129, 131–44.