GREGORY R. JONES (admitted *pro hac vice*)
POLSINELLI LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 556-1801
Facsimile:  (310) 556-1802
gjones@polsinelli.com

DAYNA C. LAPLANTE (admitted *pro hac vice*)
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
Telephone: (312) 819-1900
Facsimile:  (312) 873-2970
dlaplante@polsinelli.com

JOHN H. COTTON (Nevada Bar No. 005268)
KATHERINE L. TURPEN (Nevada Bar No. 008911)
JOHN H. COTTON & ASSOCIATES, LTD.
7900 W. Sahara Ave., Suite 200
Las Vegas, Nevada 89117
Telephone: (702) 832-5909
Facsimile:  (702) 832-5910
jhcotton@jhcottonlaw.com
kturpen@jhcottonlaw.com

Attorneys for Defendant
DVH HOSPITAL ALLIANCE, LLC

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. TALI ARIK, M.D.<br><br>              Plaintiff/Relator,<br><br>       v.<br><br>DVH HOSPITAL ALLIANCE, LLC, d/b/a DESERT VIEW HOSPITAL; VISTA HEALTH MIRZA, M.D. P.C. d/b/a VISTA HEALTH; and IRFAN MIRZA, M.D.,<br><br>              Defendants. | Case No.: 2:19-CV-01560-JAD-VCF<br><br>**REPLY IN SUPPORT OF DEFENDANT DVH HOSPITAL ALLIANCE, LLC'S MOTION TO FOR SUMMARY JUDGMENT**<br><br>Hearing:<br><br>Date:        June 22, 2023<br>Time:        2:00 p.m.<br>Courtroom:  6D |

# TABLE OF CONTENTS

**Page No.**

I.     INTRODUCTION ............................................................................................... 1

II.    ARIK'S DEFICIENT RESPONSE TO THE UNDISPUTED MATERIAL FACTS ............. 1

III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON ARIK'S
       MEDICAL NECESSITY FRAUD CLAIMS ........................................................... 3

       A.   There Is No Genuine Dispute Regarding The Falsity Of Medical Necessity
            Certifications For The Patient Episodes Addressed By Arik's Experts ........................ 3

       B.   The "Failure to Transfer" Claims Must Be Dismissed ................................................. 10

       C.   Arik Should Not Be Permitted To Prove False Claims Through Extrapolation ............ 13

       D.   The Medicare Advantage Claims Must Be Dismissed ................................................. 15

       E.   Scienter Is Not Genuinely Disputed ........................................................................... 16

       F.   Arik's Medically Unnecessary Testing Claims Fail ..................................................... 20

IV.    CONCLUSION ................................................................................................ 20

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Graham v. Honeywell Int'l, Inc.*,
No. CV TDC-21-0310, 2022 WL 4017459 (D. Md. Sept. 2, 2022) ......................................... 12

*Home Casual Enter. Ltd. v. Home Casual, LLC*,
No. 11-CV-655, 2012 WL 13041994 (W.D. Wis. Nov. 13, 2012)......................................... 4

*Nigro v. Sears, Roebuck & Co.*,
784 F.3d 495 (9th Cir. 2015) ........................................................................................... 6, 17

*Scolaro v. Vons Cos., Inc.*,
No. 2:17-cv-1979, 2019 WL 7284738 (D. Nev. Dec. 27, 2019) ...................................... 4

*Semper Fi Holdings Series LLC v. N. Am. Capacity Ins. Co.*,
No. CV197274, 2021 WL 6104392 (C.D. Cal. Oct. 7, 2021) ......................................... 5

*Sierra v. Desert Palace, Inc.*,
No. 2:12-CV-230, 2014 WL 4796938 (D. Nev. Sept. 26, 2014) ..................................... 2

*State Farm Fire & Cas. Co. v. Bell*,
30 F. Supp. 3d 1085 (D. Kan. 2015) .......................................................................... 18

*United States ex rel. Dooley v. Metic Transplantation Lab, Inc.*,
No. CV1307039, 2017 WL 4323142 (C.D. Cal. June 27, 2017)....................................... 11, 17

*United States ex rel. Lewis v. Cal. Inst. of Tech.*,
No. 2:18-cv-05964, 2021 WL 1600488 (C.D. Cal. Apr. 19, 2021) ..................................... 17

*United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.*,
114 F. Supp. 3d 549 (E.D. Tenn. 2014) ........................................................................ 14

*United States ex rel. Martinez v. KPC Healthcare Inc.*,
No. 8:15-cv-01521, 2017 WL 10439030 (C.D. Cal. June 8, 2017)................................. 15, 16

*United States ex rel. Osinek v. Permanente Med. Group, Inc.*,
No. 13-cv-03891, 2022 WL 16943886 (N.D. Cal. Nov. 14, 2022) ...................................... 19

*United States ex rel. Wall v. Vista Hospice Care, Inc.*,
No. 3:07-CV-00604-M, 2016 WL 3449833 (N.D. Tex. June 20, 2016) ........................... 14

*United States ex rel. Winter v. Gardens Reg'l Hosp. & Med. Ctr.*,
935 F.3d 1108 (9th Cir. 2020) ...................................................................................... 5

*United States v. Burkich*,
No. 1:19-CV-3510-MLB, 2022 WL 4236243 (N.D. Ga. Sept. 14, 2022) ........................... 16

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

*United States v. Carolina Liquid Chemistries, Corp.*,
   No. 13-CV-01497-JST, 2019 WL 3207851 (N.D. Cal. July 16, 2019) ................................. 8

*United States v. DaVita Inc.*,
   No. 8:18-cv-01250, 2020 WL 3064771 (C.D. Cal. Apr. 10, 2020) ........................................ 5

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) .......................................................................................... 7

*United States v. UnitedHealthcare Ins. Co.*,
   No. 15-CV-7137, 2018 WL 2933674 (N.D. Ill. June 12, 2018) ......................................... 16

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
   579 U.S. 176 (2016) ...................................................................................................... 11

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) .......................................................................................... 6

*United States v. Kitsap Physicians Serv.*,
   314 F.3d 995 (9th Cir. 2002) ............................................................................................ 6

*Wasco Prod., Inc. v. Southwall Techs., Inc.*,
   435 F.3d 989 (9th Cir. 2006) .......................................................................................... 15

**Statutes**

31 U.S.C. § 3729(a)(1) ........................................................................................................ 14

42 U.S.C. § 1395dd(b)(3) .................................................................................................... 11

42 U.S.C. § 1395y(a)(1)(A) ................................................................................................. 20

**Other Authorities**

42 C.F.R. § 412.3(a) ............................................................................................................. 8

42 C.F.R. § 413.60(a) ......................................................................................................... 20

42 C.F.R. § 482.30(b)(3) ..................................................................................................... 18

Fed. R. Civ. P. 56(e)(2) ........................................................................................................ 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

## I.     INTRODUCTION

Defendant DVH Hospital Alliance, LLC dba Desert View Hospital ("Desert View") seeks summary judgment on the claims brought by relator Tali Arik, M.D. ("Arik") under the False Claims Act ("FCA").  Arik's opposition confirms that there is no genuine dispute of material fact regarding whether Desert View submitted false claims to the federal government for medically unnecessary hospital services or did do so with the requisite scienter.  Arik purports to contest Desert View's undisputed material facts, but he fails to cite any evidence supporting his positions in violation of federal and local rules.  Arik then attempts to create the specter of triable fact issues by describing myriad "facts" that either are immaterial to the resolution of Desert View's motion, lack evidentiary support altogether, rely on inadmissible testimony, or completely mischaracterize the evidence.  In doing so, he largely ignores, or asks the Court to disregard, the evidence underlying Desert View's motion. Such tactics fail to withstand summary judgment.

Despite Arik's effort to obfuscate the relevant evidentiary issues in this case, the majority of the claims for which Arik seeks to impose FCA liability either lack any affirmative expert or treating physician testimony to establish the absence of medical necessity or are based on an unprecedented effort to extrapolate liability without any statistical expert testimony.  There are only 16 allegedly false claims remaining that Arik's affirmative medical expert believes were medically unnecessary.  But for these claims, Arik does not have sufficient evidence of falsity to survive summary judgment because his expert's testimony is neither admissible nor sufficient to create a triable issue of fact, and Arik's "other evidence" of fraud is based on a tortured narrative built on "facts" that are either innocuous, unsupported by the evidentiary record, or taken out of context.  Unable to rebut Desert View's evidence demonstrating the absence of scienter, Arik takes a similar misguided approach to try to create a genuine dispute as to that element, providing further grounds for granting summary judgment.  Summary judgment is also warranted for the other fraud theories Arik has pled, as he concedes they should be dismissed.

## II.     ARIK'S DEFICIENT RESPONSE TO THE UNDISPUTED MATERIAL FACTS

As required by Federal Rule of Civil Procedure 56(c)(1)(A) and Local Rule 56-1, Desert View provided 18 undisputed facts that are material to the disposition of this motion ("UMF")

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

1  with specific evidentiary support.  ECF No. 171, p. 18-20.  Arik agrees that certain UMFs are

2  undisputed (Nos. 7, 8, 10).  ECF No. 186, p. 4.  But he also claims that he cannot respond to one

3  UMF (No. 10) and disputes the remaining UMFs because they are "inconsistent" with other

4  evidence (Nos. 1-4, 6, 12) or require "clarification" (Nos. 5, 11, 13-14), without identifying any

5  supporting evidence.[1]  *Id.* at n. 3-5.  Arik's approach violates Rule 56(c)(1)(A) and Local Rule 56-

6  1's requirement to cite to "particular" portions of evidence and forces Desert View and the Court

7  to hunt through the evidence to evaluate the veracity of his factual assertions and search the

8  haystack for his proverbial needle.  As this Court has recognized, "[t]he Ninth Circuit cautions that

9  parties who do not provide pinpoint citations to evidence supporting assertions made in a statement

10  of disputed or undisputed facts risk exclusion of that evidence because the court is not required to

11  'paw over files without the assistance from the parties' in order to evaluate their contentions."

12  *Sierra v. Desert Palace, Inc.*, No. 2:12-CV-230, 2014 WL 4796938, at *3 (D. Nev. Sept. 26, 2014)

13  (citations omitted).  Because Arik has violated these rules, the Court should consider the UMFs in

14  Desert View's brief to be undisputed for purposes of the motion.  *See* Fed R. Civ. P. 56(e)(2).

15  Arik cannot create triable issues of material fact by simply declaring, without support, that

16  certain UMFs are contested.  For example, UMF 6 is that "InterQual inpatient admission criteria

17  were satisfied for each of the inpatient admissions challenged in Arik's expert reports."  ECF No.

18  171, p. 19.  This UMF is critical given that the Court declined to dismiss Arik's medical necessity

19  fraud claim because he alleged that the inpatient admissions failed to satisfy InterQual.  ECF No.

20  100, p. 13.  Arik did not develop any evidence to support this allegation (see ECF No. 173-8, p.

21  17-18), and he is wrong about it (see ECF No. 173-3, ¶¶ 4-13).  Yet Arik purportedly contests

22  UMF 6 stating that "patients admitted as in-patients but should have been observation or

23  discharged and *do not meet InterQual criteria*."  ECF 186, p. 4 n. 3 (emphasis added).  He cites

24  *no evidence* – because there is none – to support this statement.  *Id.*  This problem also plagues

25  other UMFs Arik supposedly contests.[2]

---

[1] UMFs 15-18 are no longer relevant because Arik concedes that he is not pursuing the fraud theories relating to those facts.  ECF No. 186, p. 17 n. 77.  Therefore, summary judgment is warranted on the three non-medical necessity fraud theories alleged in the third amended complaint.  ECF No. 171, p. 35-38.

[2] Arik fails to cite any evidence, because there is none, for his assertions that: (i) IDT meetings "were not collaborative and nurses' input was disregarded" (UMF 12); (ii) Desert View had "an unwritten policy" of

2

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

Following his deficient responses to the UMFs, Arik provides a 9-page narrative setting forth scores of aspirational – but not actual – "facts" that he characterizes as "material to the disposition of this motion." ECF No. 186, p. 4-13. This misleading tactic must not convince the Court that there are numerous contested material facts that defeat summary judgment. Many of the facts described in Arik's narrative, such as the hospital's ownership history (*id.* at 5) and background information about the prior hospitalist group (*id.*), are immaterial to the specific challenges raised by Desert View. Numerous other "facts" either have no evidentiary support (*id.* at 6, 8) or cite to unauthenticated websites (*id.* at 4 n. 8, 10; *id.* at 8 n. 35; *id.* at 12 n. 35). Arik's factual narrative does not comply with the letter or spirit of Rule 56 and Local Rule 56-1 and should be disregarded for purposes of this motion. With respect to the factual assertions Arik raises in response to Desert View's arguments, Desert View addresses those assertions hereafter.

## III. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON ARIK'S MEDICAL NECESSITY FRAUD CLAIMS

### A. There Is No Genuine Dispute Regarding The Falsity Of Medical Necessity Certifications For The Patient Episodes Addressed By Arik's Experts

There are two populations of patient episodes at issue in this case: (1) the Probe Sample Episodes involving medical records produced in discovery that are addressed by Arik's affirmative medical necessity expert (Dr. Rodney Armstead); and (2) the Complaint Episodes alleged in the third amended complaint that are addressed by Arik's rebuttal medical necessity expert (Dr. Daniel Woodward). ECF No. 171, p. 22. Summary judgment should be granted on the alleged false claims related to these patient episodes because: (1) Arik's medical necessity expert testimony is neither admissible (see ECF No. 172) nor sufficient to create a triable issue of fact on the element of falsity; and (2) Arik has no other evidence demonstrating that Desert View billed the government for medically unnecessary services provided to these patients. ECF No. 171, p. 22-27. Additionally, Arik cannot use Woodward's testimony on the Complaint Episodes to survive

increasing admissions (UMF 5); (iii) Desert View received "additional reimbursement from counting improper admission days in their cost reports, which influenced annual payment rates" (UMF 11); and (iv) the "final decision [to improperly admit patients] was in hands of CEO and hospitalist (as part of the Medical Executive Committee) who were complicit in fraud" (UMFs 13-14). ECF No. 186, p. 4 n. 3-4.

1   summary judgment because he was disclosed as a rebuttal expert.  *Id.* at 23.

2        In response, Arik argues that summary judgment is not warranted on claims relating to the

3   Probe Sample Episodes and Complaint Episodes for three reasons: (1) his expert testimony

4   survives Desert View's *Daubert* challenge; (2) the parties' dueling expert testimony alone is

5   sufficient to create a genuine dispute about false medical necessity certifications; and (3) other

6   evidence supports the falsity of the claims at issue.  ECF No. 186, p. 19-22.  None of these

7   responses establishes a triable issue of fact on the element of falsity.

8              *1.   Summary Judgement Is Proper For The Complaint Episodes*

9        Arik does not dispute that he cannot use Woodward's opinions regarding the Complaint

10  Episodes to withstand summary judgment because he was disclosed as a rebuttal expert.  ECF 186,

11  p. 20.  Instead, Arik pivots his strategy by claiming that he and Dr. Hazelitt can opine about the

12  medical necessity of the Complaint Episodes because they were the patients' "treating physicians."

13  *Id.*  This stunt runs headlong into Arik's theory that the Vista Health hospitalists made improper

14  treating decisions and otherwise fails to save the Complaint Episodes from dismissal.

15       First, Arik provides *no evidence* that he and Hazelitt treated the Complaint Episode patients

16  while they were at Desert View, such as declarations or references to the medical records.

17       Second, Arik *never disclosed* himself or Hazelitt as the treating physicians for the

18  Complaint Episodes or that they would provide medical necessity opinion testimony.  *See* ECF

19  Nos. 186, p. 20 n. 81, and 187-38, p. 2-3 (generically disclosing that Arik and Hazelitt will testify

20  "regarding the allegations of the Complaint").  This Court has precluded such insufficient

21  disclosures of treating physician testimony in these circumstances.  *See Scolaro v. Vons Cos., Inc.*,

22  No. 2:17-cv-1979, 2019 WL 7284738, at *4-6 (D. Nev. Dec. 27, 2019) (precluding treating

23  physician from testifying about undisclosed opinion relating to matters beyond his treatment).

24       Third, Arik provides *no "treating physician" testimony* from himself or Hazelitt opining

25  about the lack of medical necessity regarding the Complaint Episodes.  ECF No. 186, p. 20.  Arik

26  cannot create a triable issue of fact without any actual evidence.  *See Home Casual Enter. Ltd. v.*

27  *Home Casual, LLC*, No. 11-CV-655, 2012 WL 13041994, at *16 (W.D. Wis. Nov. 13, 2012) (a

28  party "cannot rely on their own Rule 26 disclosures as evidence to defeat summary judgment").

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

1   At a minimum, the Court should grant summary judgment on the Complaint Episodes.

2      *2. Arik's Expert Testimony Does Not Create A Triable Issue Of Fact*

3     With respect to whether the expert testimony of Armstead and Woodward satisfies the

4   requirements of Federal Rule of Evidence 702 and *Daubert*, Desert View refers to the briefing

5   submitted in connection with that motion.  *See* ECF Nos. 172, 190.

6     Even if the Court denies Desert View's *Daubert* motion, Arik is wrong that expert

7   testimony alone can create a genuine dispute regarding the falsity of medical necessity

8   certifications under the FCA.  ECF No. 186, p. 19, 21 (citing *United States ex rel. Winter v.*

9   *Gardens Reg'l Hosp. & Med. Ctr.*, 935 F.3d 1108, 1119 (9th Cir. 2020)).  In *Winter*, the Ninth

10   Circuit held that because a physician's clinical judgment is inherently subjective, a medical

11   necessity fraud claim under the FCA requires "*other evidence* to prove [] falsity" beyond "a

12   reasonable disagreement between physicians."  935 F.3d at 1118 (citations omitted).  Thus, while

13   admissible expert testimony may establish that reasonable physicians disagree about the medical

14   necessity of clinical services, such disagreement, by itself, is not enough to establish falsity.  *Id.* at

15   1118-19.  More evidence is required.  *Id.*; *see also United States v. DaVita Inc.*, No. 8:18-cv-

16   01250, 2020 WL 3064771, at *8 (C.D. Cal. Apr. 10, 2020) (dismissing medical necessity FCA

17   claim because the complaint "details only Relator's subjective difference of opinion with other

18   physicians as to the medical necessity of certain treatment").  Therefore, Arik's medical necessity

19   expert testimony, even if admissible, by itself, does not create a triable issue of fact for falsity.

20      *3. Arik's "Other Evidence" Does Not Create A Triable Issue Of Fact*

21     In his response, Arik purports to offer "additional evidence" supposedly demonstrating that

22   the Vista Health hospitalists admitted and tested patients for medically unnecessary reasons.  ECF

23   No. 186, p. 20-22.  The Court is not required to accept Arik's unreasonable inference of the lack

24   of medically necessity when it is unsupported by the "additional evidence" he cites.  *See Semper*

25   *Fi Holdings Series LLC v. N. Am. Capacity Ins. Co.*, No. CV197274, 2021 WL 6104392, at *3

26   (C.D. Cal. Oct. 7, 2021) ("[t]he mere existence of a scintilla of evidence in support of the [non-

27   movant's] position will be insufficient; there must be evidence on which the jury ... could find by

28   a preponderance of the evidence that the [non-movant] is entitled to a verdict ....").  None of the

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

evidence Arik cites is specific to any of the patient episodes described in his experts' reports or to particular false claims for medically unnecessary services. *See U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) (the FCA "focuses on the submission of a claim, and does not concern itself with whether or to what extent there exists a menacing underlying scheme"); *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("unsavory conduct is not, without more, actionable under the FCA"). Nor do Arik's factual assertions contradict the Vista Health hospitalists' declarations that they honestly and genuinely believed the specific services at issue were medically necessary and that they were familiar with the patients' medical conditions to render their decisions.[3] ECF Nos. 173-5, ¶¶ 12-44, 173-6, ¶¶ 11-18, 173-7, ¶¶ 7-16. Arik has no evidence to the contrary – shockingly, he had the opportunity to depose the hospitalists and *never chose to question them on the bases for their clinical decisions.*

Instead, each of the evidentiary propositions relied upon by Arik is either overstated, taken out of context, or contradicts the actual evidence Arik cites. First, Arik's evidence does not show that Vista Health *promised* to increase admissions at Desert View, as Arik claims. The letter of intent Arik cites merely reflects that the Vista Health hospitalists "[w]orking with ER physicians" (who are not alleged to have engaged in misconduct) "will increase current volume of admissions" because they are "capable of providing care to the sick patients of multiple etiology and specialties." ECF No. 187-9, p. 3. This is hardly controversial given that, as a board-certified cardiologist (Mirza) and pulmonologist (Arshad) (ECF Nos. 173-5, ¶ 3, 173-6, ¶ 3), they were qualified to treat a wider range of patients (ECF No. 173-3, ¶¶ 12-18). Vista Health was still contractually obligated to comply with federal fraud and abuse laws and Desert View's inpatient admission policies. ECF Nos. 173-25, § 6.2, p. 16, 173-26, § II, p. 4-9, 173-2, ¶ 26.

Second, Arik's evidence does not show that inpatient admissions at Desert View increased "by more than 60% year-over-year" after Vista Health's contract began. ECF No. 186, p. 20. Arik submits documents representing a *three-month snapshot* (January-March 2019) showing that

---

[3] Without citing any authority, Arik asks the Court to simply ignore the hospitalists' declarations because they are "self-serving." ECF No. 186, p. 21. The Ninth Circuit has held that it is error to disregard party declarations in deciding summary judgment if they are otherwise admissible. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015) (observing that "declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position").

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

1  during that timeframe, admissions increased by 55% while total ER visits decreased by 9%.  ECF

2  Nos. 187-18, 187-20, 187-19.  However, comparing 2018 and 2019 in their entirety, Desert View's

3  inpatient admissions actually increased by 22%, while ER visits remained relatively flat.  ECF No.

4  173-2, ¶ 28.  Including the numbers for 2020, when Arik alleges the fraud scheme was still

5  "ongoing" (ECF 103, ¶ 160), inpatient admissions actually *decreased* from 2019 by 23%, even

6  though ER visits only decreased by 16%.  ECF 173-2, ¶ 28.  A key measure that hospitals track is

7  the ratio of admissions to ER visits.  ECF No. 201-1, p. 2.  From this perspective, Desert View's

8  admission ratio did not appreciably change from 2018 (7.1%) to 2019 (8.7%) to 2020 (8.0%).  ECF

9  173-2, ¶ 28.  Without a statistical or hospital expert to explain the significance of these numbers,

10  Arik's cherrypicked and distorted statistics are not probative of any fraudulent activity.[4]

11         Third, the so-called "Hamilton Email" (ECF No. 187-30) constitutes inadmissible hearsay

12  (see ECF No. 202) and contradicts Arik's core fraud theory because it suggests that the Vista

13  Health hospitalists were *resistant* to certain admission recommendations from ER physicians for

14  patients they believed should be transferred from Desert View to receive ICU services.

15         Fourth, Arik grossly misconstrues and overstates the content and context of the text

16  messages between Mirza and Arshad and between Mirza and the ER physicians (Drs. Watson and

17  Hayes).  ECF No. 186, p. 21.  The first flaw in Arik's evidentiary story is the disconnect between

18  the timing of the text messages and the patient episodes he challenges in this case.  The text

19  exchanges between Mirza and Watson (ECF No. 187-31) and between Mirza and Hayes (ECF No.

20  187-32) began in June 2020.  Every patient episode challenged by Arik's experts received services

21  at Desert View *prior to June 2020.  See* ECF Nos. 173-1, 173-21, 173-22.  Given the inherently

22  subjective nature of admission decisions, and ever changing circumstances, there is no logical link

23  between text messages in June 2020 onward and fraudulent admission decisions in 2019. *See*

24  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1181-82 (9th Cir. 2016) (FCA liability

25  requires a link between the scheme alleged and the submission of false claims); *United States v.*

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[4] Arik also claims that Desert View's inpatients under Vista Health "also stayed longer" (noting an increase
28  in the average of length of stay ("LOS") from 2.52 nights to 2.83 nights).  ECF No. 186, p. 9.  As before,
Arik is not painting the full picture.  Comparing 2018 to 2019, Desert View's average LOS increased from
only 2.62 nights to 2.71 nights (or 3.4%).  ECF No. 201-1, p. 2.

Polisinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

1   *Carolina Liquid Chemistries, Corp.*, No. 13-CV-01497-JST, 2019 WL 3207851, at *7 (N.D. Cal.

2   July 16, 2019) ("[a] particularized theory of a fraudulent scheme, absent sufficient details to show

3   that it took place," warrants dismissal under Rule 9(b)).

4          Next, Arik improperly focuses on the speed with which Mirza responded to admission

5   recommendations from ER physicians.[5]  ECF No. 186, p. 10.  For any of these allegedly "fast

6   approvals," Arik proffers *no evidence* that the decision to admit, transfer, or place in observation

7   status was the *wrong decision*, *i.e.*, not medically necessary.  All Arik can tell the Court is that this

8   decision was made quickly.  But that does not support his theory of the case unless he can

9   demonstrate that the admission decision was substantively incorrect.[6]

10         Arik also asserts that Mirza was "admitting every ER patient" and that there "are no texts

11  [from ER physicians] in which Mirza denied an admission request."  ECF No. 186, p. 10, 21.  This

12  is untruthful.  A closer review of the text strings reveals that Mirza and the ER physicians

13  recommended admitting almost as many patients for observation as they did for inpatient status.

14  *See*, *e.g.*, ECF Nos. 187-31, p. 4 (3/23/21 @ 19:05), p. 5 (4/30/21 @ 17:44), p. 7 (5/19/21 @ 00:41,

15  00:45, and 00:47; and 6/3/21 @ 17:42), p. 9 (8/3/21 @ 00:32 and 21:08), p. 10 (8/5/21 @ 19:05),

16  p. 12 (10/14/21 @ 23:19:54), p. 13 (11/10/21 @ 19:49 and 20:00), p. 14 (11/10/21 @ 23:25 and

17  11/19/21 @ 19:33), p. 17 (1/11/22 @ 21:16 and 1/12/22 @ 1:15), and 187-32, p. 17 (9/18/21 @

18  22:16).  The text strings also demonstrate that they frequently approved the transfer of patients to

19  hospitals that provide a higher level of care.  *See*, *e.g.*, ECF Nos. 187-31, p. 6 (5/13/21 @ 14:04),

20  and 187-32, p. 3 (12/19/20 @ 7:37) (Hayes: "I cancelled 3rd admission and will transfer for higher

21  level."  Mirza: "Thx.").  These decisions are precisely what Arik contends should have occurred

22  when a patient does not warrant inpatient admission.  *See*, *e.g.*, ECF No. 103, ¶ 483.

23         Arik also misconstrues the context of an October 6, 2021 text exchange between Mirza and

24

25  [5] Arik assumes that Mirza's assent to the text message is tantamount to an "admission decision."  It is not.
    *See* ECF No. 201-2, p. 105:14-106:5.  A hospitalist does not "admit" a patient until he completes his rounds

26  and enters an actual admission order.  42 C.F.R. § 412.3(a).

    [6] On the whole, the text messages between Mirza and the ER physicians reflect that ER physicians are the

27  origin of an admission decision by recommending to hospitalists the patient's next course of treatment.
    ECF No. 201-3, p. 14:25-19:8.   The text messages are actually evidence of two more physicians (Hayes

28  and Watson) who, in their professional judgment, believed that an inpatient admission was medically
    appropriate.

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

1    Arshad where Arshad supposedly declares that he is admitting "everybody" to Desert View.  ECF

2    No. 187-33, p. 3.  Nothing about the context of these texts – including the ones that immediately

3    precede and follow those cited by Arik – suggests they are anything more than the physicians'

4    contemporaneous observations about what is occurring in the hospital at the time of the text.  *Id*.

5    at 3-12.  The days-long conversation depicts two physicians struggling to handle the influx of

6    patients during the COVID pandemic and trying to *transfer* patients from Desert View.  *Id.* at 10.

7         Fifth, Arik mischaracterizes the DHHS report and overstates the inadmissible declaration

8    of a former nurse (Nora Fletcher) to conclude that Mirza failed to transfer patients.  ECF No. 186,

9    p. 12, 21 (citing ECF Nos. 187-34, 187-27).  Contrary to Fletcher's statement, which lacks

10   foundation, the DHHS report did *not* substantiate any complaint that Desert View "failed to

11   transfer the patient to a tertiary care hospital."  ECF No. 187-27, ¶ 15.  The DHHS report describes

12   two incidents, neither of which occurred in September 2019, as Fletcher declares.  ECF No. 187-

13   34, p. 2, 8.  The incident referred to in her declaration (#NV00058633) involved a patient who

14   presented at Desert View in March 2019, was recommended to be transferred to another facility,

15   refused such transfer, and then died.  *Id*. at 15-16.  The only "plan of correction" related to that

16   incident was for Desert View to better *document* the patient's transfer refusal.[7]  *Id*. at 8.  Notably,

17   DHHS determined that the allegations raised by Fletcher, which are repeated in her declaration,

18   "*could not be substantiated*."  *Id*. at 3-4 (emphasis added).  This severely limits the evidentiary

19   value of the DHHS report and exposes the patent misstatements that lard Fletcher's declaration.

20        Sixth, the evidence does not show that "medical staff were retaliated against or ignored

21   when they complained that patients were unnecessarily and unreasonably being admitted to DVH

22   instead of a higher-acuity hospital."  ECF No. 186, p. 21 (citing ECF Nos. 187-11, 187-26, 187-

23   27).  Hazelitt lacks any personal knowledge of patients who were improperly admitted and not

24   transferred by any of the Vista Health hospitalists for a fairly significant reason: she no longer

25   worked at Desert View when Vista Health's contract commenced in January 2019.  ECF Nos. 187-

26   11, p. 124:1-126:15 (no testimony attached), and 173-13, p. 17:10-19:8.  Former nurse Lisa Smith

27

28   ---
[7] The second incident (#NV00057994) occurred in May 2019 and involved an unsubstantiated allegation that a patient was improperly transferred to another facility.  ECF 187-34, p. 2.

1   does not identify any retaliation that she experienced.  ECF No. 187-26, ¶ 16.  Fletcher claims she

2   received "'counseling sessions', various write-ups, and poor performance evaluations" when she

3   "complained about the patient care provided by Drs. Mirza and Arshad" (ECF No. 187-27, ¶ 21),

4   but her declaration merely reveals her complaints about their *behavior* and her (unqualified)

5   disagreement with their treatment decisions.  *Id*. ¶¶ 6-20.  Critically, DHHS found her retaliation

6   allegations to be *unsubstantiated*.  ECF No. 187-34, p. 3-4 (Allegation Nos. 3, 10).

7        Finally, Arik's evidence does not show that Mirza had "a documented and recurring history

8   of … performing medically unnecessary and unreasonable procedures and failing to timely initiate

9   patient transfers to higher-acuity facilities."  ECF No. 186, p. 21.  The lone exhibit cited by Arik

10   (ECF No. 187-16) is a 4-page excerpt of Mirza's application for privileges to Desert View.  The

11   document merely reflects that in 2018, an Arizona hospital's medical executive committee

12   brought, but then "rescinded," some adverse action against Mirza's privileges related to "quality

13   of care and [his] behavior," which he "vehemently denied" and "refuted."  *Id*. at 3.  The issue

14   resulted in a settlement with the Arizona Medical Board, which triggered a suspension in

15   California and a public reprimand in Nevada.  *Id*.  Arik provides no evidence demonstrating what

16   the "quality of care" issue concerned, let alone whether it involved a medical necessity concern,

17   making medically unnecessary decisions, or failing to initiate transfers to higher-acuity facilities,

18   as Arik contends.  *Id*. at 2-4.  The glaring disconnect between Arik's factual proposition and the

19   actual evidence is emblematic of his overall approach of making sweeping generalizations, cherry-

20   picking out-of-context portions of evidence, and then distorting the meaning of those evidentiary

21   fragments.  Arik cannot create a triable issue of fact as to falsity through such tactics.

22       **B.**    **The "Failure to Transfer" Claims Must Be Dismissed**

23        Arik seeks to prove that Desert View violated the FCA by submitting claims for medically

24   unnecessary hospital admissions because the Vista Health hospitalists "failed to transfer" 20

25   patients to hospitals with more sophisticated facilities.  ECF No. 171, p. 27-29.  There are two

26   problems with this theory.  The first is that this is not a cognizable medical necessity theory under

27   the FCA; and Arik's own experts agree that each of the 20 patients needed inpatient hospitalization.

28   *Id*.  The second problem is that Arik's theory is entirely speculative because a physician cannot

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

10

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

1   unilaterally decide to transfer a patient to another hospital; a transfer requires patient consent,

2   available transportation, and facility agreement to accept the patient. *Id*. at 28.

3          Arik responds with a variety of legally, factually, and logically unsupported assertions.

4   ECF No. 186, p. 22-23. First, Arik argues that Desert View's challenge ignores the "reasonable"

5   component of the Medical Necessity Requirement, and the Two-Midnight Rule "has no role in this

6   analysis." *Id*. at 22. These arguments echo Arik's attempt to justify his experts' failure to apply

7   the Two-Midnight Rule in forming their medical necessity opinions and should be rejected for the

8   reasons discussed in Desert View's *Daubert* motion reply. *See* ECF No. 190, p. 11-14. Arik also

9   argues that it was unreasonable for Desert View to admit and not transfer patients that it "was not

10  equipped to provide higher-acuity care." ECF No. 186, p. 22. Arik cites no law, regulation,

11  regulatory guidance, or evidence to support his argument. *Id*. Even so, a physician cannot transfer

12  a patient with an acute medical need without other conditions being met, such as the patient's

13  consent. *See, e.g.*, 42 U.S.C. § 1395dd(b)(3) (discussing refusal to consent to transfer).

14         Next, Arik argues that "every medical necessity case would be foreclosed as 'pure

15  speculation' unless a patient was asked about every possible treatment or medical course,'" under

16  Desert View's challenge. ECF No. 186, p. 22-23. The Court should reject this logical fallacy.

17  What differentiates Arik's "failure to transfer" theory from other medical necessity theories is that

18  it is based on a criticism of what a physician *should have done*, rather than the medical necessity

19  of what a physician *actually did* (and billed the government for). While the former might serve as

20  the basis of a negligence claim, the latter is what the FCA governs. *See Universal Health Servs.,*

21  *Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 196 (2016) (observing that the FCA "centers

22  on allegations of fraud, not medical malpractice"); *United States ex rel. Dooley v. Metic*

23  *Transplantation Lab, Inc.*, No. CV1307039, 2017 WL 4323142, at *26 (C.D. Cal. June 27, 2017)

24  (rejecting relator's medical necessity theory that defendant submitted false claims because it failed

25  to apply the "gold standard" for services at issue). There is no question here that the non-

26  transferred patients needed to be hospitalized. *See* ECF Nos. 173-20, p. 12-25, 173-22, p. 6-39,

27  173-16, p. 155:6- 15, 238:14-239:5, 173-17, p. 85:17-86:2. Arik's core criticism is that these

28  patients should have been hospitalized at a non-CAH "facility with higher-acuity services" in Las

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

Vegas (ECF No. 186, p. 23), the natural consequence of which is that the patients would have received more expensive care, resulting in even higher government reimbursement.  There is no legal support for such an *underpayment* fraud theory under the FCA, and Arik cites none.  *See, e.g.*, *Graham v. Honeywell Int'l, Inc.*, No. CV TDC-21-0310, 2022 WL 4017459, at *5 (D. Md. Sept. 2, 2022) (defendant did not violate FCA because its alleged practices could not have resulted in a false claim causing financial loss to the government).

Finally, Arik claims that Desert View's challenge "ignore[s] evidence that suggests that Defendants' hospitalists made essentially *automatic*, non-patient-specific decisions to admit patients to DVH whose health conditions mandated transfer to a facility with higher-acuity services than DVH was equipped to provide" and "that the hospitalists *routinely* failed to educate patients on the need to be transferred and the risks of staying at DVH."  ECF No. 186, p. 12 (emphasis added).  None of the evidence cited by Arik competently supports his hyperbolic assertions:

- Hazelitt's testimony is unhelpful because she has no personal knowledge of any admission decisions or non-transfer decisions by the Vista Health hospitalists because she no longer worked at the hospital when they started. ECF No. 173-13, p. 17:10-19:8.

- Armstead's testimony is unhelpful because he has never worked in a hospital setting since his training more than 37 years ago.  ECF Nos. 173-16, p. 22:6-7, 35:10-36:20, 45:14-21, and 173-23, p. 2-6.

- Neither of the former nurse declarations are helpful because they only worked with the Vista Health hospitalists for a few months and the only supposed "failure to transfer" episode described in their declarations during this timeframe involved a patient who "had *refused to be transferred* to Las Vegas."  ECF Nos. 187-26, ¶¶ 3-18 (describing no transfer incidents), 187-27, ¶¶ 3, 12-15 (describing one "failure to transfer" incident; emphasis added).[8]

- The inadmissible hearsay "Hamilton Email" is unhelpful because it describes the Vista Health hospitalists *resisting* admission recommendations from ER physicians for patients they believed they should be transferred from Desert View.  ECF No. 187-30.

Moreover, the text message evidence submitted by Arik plainly shows that the Vista Health hospitalists regularly approved the transfer of patients to hospitals that provide a higher level of care.  *See, e.g.*, ECF No. 187-32, p. 3.  Arik's effort to support his "failure to transfer" theory with

---

[8] Again, contrary to Fletcher's foundationally-deficient statement, the DHHS report did *not* substantiate any complaint that Desert View "failed to transfer the patient to a tertiary care hospital" (ECF No. 187-27, ¶ 15).  *See* ECF No. 187-34, p. 3-4.

1    evidence that is either inadmissible, unhelpful, or mischaracterized demonstrates that summary

2    judgment is separately warranted for these 20 claims. *See* ECF No. 173-1.

3    **C.      Arik Should Not Be Permitted To Prove False Claims Through Extrapolation**

4           Arik confirms that he will attempt to prove at trial that Desert View submitted false claims

5    for unnecessary hospital services in violation of the FCA through "sampling and extrapolation."

6    ECF No. 186, p. 23-27. In doing so, Arik purports to expand the scope of Desert View's liability

7    *without*: (1) evidence of the bills, medical records, and payments underlying those claims;

8    (2) medical expert testimony opining that the claims were for medically unnecessary services; or

9    (3) statistical expert testimony validating his sampling methodology. *Id.* Remarkably, without the

10   benefit of any statistical expert, Arik suggests that Armstead's findings are statistically significant,

11   such that the jury should be permitted to extrapolate them into some larger universe of claims.[9]

12   Permitting Arik to do so would represent the *first known FCA case in the country* involving the

13   extrapolation of liability and damages without statistical expert testimony and constitutes a plain

14   violation of Desert View's due process rights. ECF No. 171, p. 29-31.

15          None of Arik's responses legitimize his extrapolation plan. First, Arik incorrectly claims

16   that Desert View has not cited any authority that requires a relator to have a statistical expert to

17   present an extrapolation theory. ECF No. 186, p. 23-24. In its motion, Desert View cited multiple

18   cases demonstrating that, to comport with due process concerns, courts rigorously apply the

19   reliability principles under Federal Rule of Evidence 702 when deciding whether to permit a relator

20   to extrapolate in FCA cases. ECF No. 171, p. 29-30 (citing cases). There is *not a single case* that

21   Desert View is aware of where a court has allowed a relator to carry its burden of proof through

22   extrapolation without statistical expert testimony. Unsurprisingly, Arik does not cite any cases

23   that support doing so in the FCA context.[10]

---

[9] In a footnote, Arik states that his medical necessity expert (Armstead) can testify about the validity of the sampling methodology used for the Probe Sample Episodes. ECF No. 186, p. 26 n. 90. Armstead did not participate in selecting the sample, did not perform any statistical analysis of his findings, offers no opinions on those topics, and is not qualified to do so. ECF No. 201-2, p. 82:16-83:2, 118:18-119:21, 278:14-21.

[10] *See* ECF No. 186, p. 23-24, 24 n. 84 (citing *Ratanasen v. State of Cal., Dep't of Health Servs.*, 11 F.3d 1467, 1470-72 (9th Cir. 1993) (not an FCA case; rejected due process challenge to state agency audit finding Medicaid overpayments using sampling and extrapolation because statistical expert testified that the "random sampling method chosen for this case was 'appropriate, valid and reliable'")), (citing *Ill. Physicians Union v. Miller*, 675 F.2d 151, 156 (7th Cir. 1982) (not an FCA case; rejecting due process

---

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

Second, Arik asserts that calculating the *amount* of damages is "well within the traditional role of a jury" and that his extrapolation plan "involves nothing more than 'simple math'."  ECF No. 186, p. 25-26 (citations omitted).  This assertion ignores that Arik is seeking to extrapolate *both* liability *and* damages under the FCA.  *See, e.g.*, *United States ex rel. Wall v. Vista Hospice Care, Inc.*, No. 3:07-CV-00604-M, 2016 WL 3449833, *12-13 (N.D. Tex. June 20, 2016) (rejecting relator's attempt to prove liability under the FCA through extrapolation because extrapolating the number of false claims for unnecessary medical services requires individualized determinations of medical judgment underlying each claim).  Indeed, damages are calculated under the FCA based on the amount and number of false claims submitted to the government.  *See* 31 U.S.C. § 3729(a)(1).  Arik's claim that his extrapolation pitch to the jury involves "simple math" is also misguided.  He states that the jury can calculate damages by simply (1) calculating an error rate through dividing the 16 "errors" found by Armstead by the sample size of 50 and (2) then applying that error rate – regardless of its statistical significance – to some unspecified "whole."  ECF No. 186, p. 26.  If extrapolation were this simple, statistical expert testimony never would be necessary to present it.[11]  The Court should preclude Arik from extrapolating liability.[12]

---

challenge to state agency audit finding Medicaid overpayments using sampling and extrapolation because state was permitted to shift burden to the physician to prove that the agency's statistical calculations were inaccurate)), (citing *United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.*, 114 F. Supp. 3d 549, 567-72 (E.D. Tenn. 2014) (denying summary judgment on government's attempt to prove liability under FCA using extrapolation because there was no due process concern "as long as the statistical sample is a valid sample that is representative of the universe of claims" and reserving judgment on defendant's motion challenging the reliability of the relator's statistical expert under Federal Rule of Evidence 702)).

[11] Notably, Arik fails to identify or disclose the damages that this exercise would yield, and he has no damages expert in this case.  ECF Nos. 186, p. 23-27, 187-38, p. 11.

[12] Arik also blames Desert View for the shortcomings of his extrapolation case.  ECF No. 186, p. 24-27.  Referencing his previous failed motion to compel the production of additional patient records, Arik appears to argue that Desert View cannot raise a due process challenge regarding his attempt to extrapolate because it reneged on some discovery agreement.  *Id*. at 24-25.  Desert View disputes Arik's recollection of events, as no such agreement ever existed.  *See, e.g.*, ECF No. 126, p. 7 n. 2 (refuting any such agreement); ECF No. 141, p. 16 n. 4 (same).  Regardless, Desert View is not aware of any authority that allows a relator to create a triable issue of fact or preclude a defendant from raising a constitutional defense based on the relator's last ditch failed attempt to obtain discovery.  None of this represents *actual evidence* that Arik can use to survive summary judgment.  Nor does it defeat Desert View's due process challenge, which is that Desert View is unable to test the reliability and qualifications of any statistical expert, cross-examine that person at trial, or present its own rebuttal statistical expert.  *Martin*, 114 F. Supp. 3d at 570.

14

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

### D.  The Medicare Advantage Claims Must Be Dismissed

Arik admits that for the 18 patient episodes addressed in his expert reports that involved claims submitted to MAOs, there is no evidence that either (1) the diagnosis information provided by Desert View to the MAOs was inaccurate or unsupported or (2) the MAOs received additional reimbursement from CMS based on any inaccurate or unsupported information from Desert View. ECFs No. 171, p. 19 (UMFs 10-11), 31-32; ECF No. 186, p. 4 n. 4 (admitting UMFs 10-11).  These are critical elements of proving an FCA violation based on claims submitted under the Medicare Advantage Program.  ECF No. 171, p. 31-32 (citing *United States v. UnitedHealthcare Ins. Co*., No. 15-CV-7137, 2018 WL 2933674, at \*7 (N.D. Ill. June 12, 2018); *United States ex rel. Martinez v. KPC Healthcare Inc*., No. 8:15-cv-01521, 2017 WL 10439030, at \*5 (C.D. Cal. June 8, 2017)).  Arik's concession mandates summary judgment be granted on the 18 patient episodes that involved claims submitted to an MAO.

Despite his concession, Arik argues that summary judgment is not warranted for these 18 claims because "[w]hile this is certainly one way to manipulate the Medicare Advantage program, it is not the only fraud scheme affecting those programs."  ECF No. 186, p. 27.  The fraud theory articulated in Arik's opposition is that Desert View "caused harm through the Medicare Advantage program" because its allegedly medically unnecessary inpatient claims *to Medicare* caused its per diem reimbursement rate *from Medicare* to fraudulently increase, which in turn led to increased reimbursement from MAOs because they "pay based on the calculated Medicare care rate."  *Id*. at 27-28 (emphasis added).  Arik's new Medicare Advantage fraud theory fails for multiple reasons.

First, this fraud theory is wholly different than what Arik alleges in the operative complaint (see, e.g., ECF No. 103, ¶ 546) and what convinced the Court to deny Desert View's motion to dismiss the Medicare Advantage fraud claims (see ECF No. 127, p. 8 (concluding Arik's allegations "strongly indicate that the diagnosis information for those patients was passed onto the federal government")).  This unalleged fraud theory should be disregarded.  *See Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("summary judgment is not a procedural second chance to flesh out inadequate pleadings") (citations omitted).

Second, Arik cites no evidence to support his new Medicare Advantage fraud theory other than the *hypothetical* deposition testimony of *Desert View's CAH expert*. ECF No. 186, p. 27-28 (citing 187-23, p. 43:23-44:12) ("Medicare Advantage plans are paid, *generally*, based on the rate letters [from Medicare] …") (emphasis added). Desert View's CAH expert's opinions are unrelated to the Medicare Advantage Program. *See* ECF No. 201-4, p. 48:2-8. Arik submits no other evidence that would suggest the existence of a triable issue of fact for his theory, such as the supposed increased Medicare per diem rates that Desert View received from increased admissions or that Desert View was actually paid by the MAOs at issue (Aetna, Anthem, Humana, and United) based on those supposedly-inflated Medicare per diem rates. ECF No. 186, p. 27-28.

Third, Arik cites no legal authority that recognizes his new fraud theory under the Medicare Advantage Program. *Id.* Neither of the two cases addressed by Arik supports the type of fraud theory that he attempts to cobble together. *See UnitedHealthcare*, 2018 WL 2933674, at *7 (dismissing FCA claim based on false Medicare Advantage claims because relator failed to allege that the MAO submitted false risk adjustment data to the government); *Martinez*, 2017 WL 10439030, at *5 (dismissing FCA claim based on false Medicare Advantage claims because relator failed to allege how claims submitted to MAO led to an overpayment by the government).

Finally, Arik's Medicare Advantage fraud theory fails by his own admission. Under this theory, Arik must still prove that the MAOs received additional reimbursement from the government based on their receipt of medically unnecessary claims. That only happens if the MAOs pass along false risk adjustment data to CMS used in calculating inflated rates, which Arik admits he cannot prove. Thus, summary judgment should be separately granted on these 18 claims.

### E.   Scienter Is Not Genuinely Disputed

Arik concedes that he must prove scienter among two groups of defendants: (1) the Vista Health hospitalists, who ordered the allegedly medically unnecessary care; and (2) Desert View, who submitted claims containing allegedly false certifications of medically necessary services. ECF No. 186, p. 28-30. Arik's response does not save his FCA claim from summary judgment.[13]

---

[13] Arik cites an out-of-circuit district court decision for the proposition that the scienter element is "rarely appropriate for summary judgment." ECF No. 186, p. 28 (citing *United States v. Burkich*, No. 1:19-CV-3510-MLB, 2022 WL 4236243, at *10 (N.D. Ga. Sept. 14, 2022)). *Burkich* involved the denial of *the*

16

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

1          *1.    The Vista Health Hospitalists Lacked The Requisite Scienter*

2          Summary judgment is separately warranted for Arik's medical necessity claims based on

3   the Probe Sample Episodes and Complaint Episodes because the Vista Health hospitalists honestly

4   and genuinely believed that their admission and testing decisions were medically necessary and

5   that those decisions are supported by the patients' documented medical conditions.  ECF No. 171,

6   p. 32-33.  Having no evidence to directly rebut this testimony (because he did not depose the

7   physicians about their specific medical decisions at issue), Arik argues that the Court should

8   disregard it because the declarations are "self-serving" and "conclusory."  ECF No. 186, p. 29.

9   The only case cited by Arik to support this argument is the Ninth Circuit's decision in *Nigro*, which

10  held that the district court *erred* in disregarding a party's own declaration in deciding summary

11  judgment.  784 F.3d at 497-98.  Here, as in *Nigro*, the declarations of the Vista Health hospitalists

12  should not be disregarded because they have personal knowledge of their own treatment decisions

13  and their statements are based on their re-review of the medical records for each specific patient

14  episode challenged by Arik.  *See* ECF Nos. 173-5, ¶¶ 11-44, 173-6, ¶¶ 10-18, 173-7, ¶¶ 6-16.

15  Arik's opposition confirms that he has no evidence to rebut their testimony.

16          Nevertheless, Arik contends that there is "ample evidence" of scienter for the Vista Health

17  hospitalists.  ECF No. 186, p. 28.  As discussed previously, his assertions that Vista Health

18  "promised" to increase admissions at Desert View and "bragged" about the admission numbers in

19  January 2019 misstates the evidence; his characterization of the Hamilton Email undermines his

20  fraud and scienter theories; and his conclusions about the after-the-fact texts from Mirza to Arshad

21  and to the ER physicians do not reflect that the Vista Health hospitalists made medically

22  unnecessary admission decisions during the relevant time period.  Nor does the largely-

23  inadmissible testimony of Smith and Fletcher suggest that the Vista Health hospitalists provided

24  unnecessary services.  Both nurses complain about having to treat sicker patients at Desert View

25

26  *government's* motion for summary judgment.  *Id.* at *10-12.  District courts within the Ninth Circuit have
    granted summary judgment for the defendant on scienter grounds.  *See United States ex rel. Dooley v. Metic*

27  *Transplantation Lab, Inc*., No. CV1307039, 2017 WL 4323142, at *23-27 (C.D. Cal. June 27, 2017)
    (granting summary judgement on medical necessity FCA claim because relator's evidence did not create a

28  triable issue of fact regarding scienter); *United States ex rel. Lewis v. Cal. Inst. of Tech*., No. 2:18-cv-05964,
    2021 WL 1600488, at *12-13 (C.D. Cal. Apr. 19, 2021) (same).

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

17

1   (ECF Nos. 187-26, ¶¶ 8, 12-16, 187-27, ¶¶ 8-10) and the physicians' behavior towards nurses

2   (ECF Nos. 187-26, ¶¶ 8, 10-11, 17-18, 187-27, ¶¶ 6, 11, 16, 18-20), but their conclusory testimony

3   about whether the medical conditions of unidentified patients warranted inpatient admission or

4   certain testing should be disregarded because they are not qualified to opine on those issues (ECF

5   Nos. 187-26, ¶¶ 13-14, 187-27, ¶¶ 7-8, 10-11, 18-19).  *See State Farm Fire & Cas. Co. v. Bell*, 30

6   F. Supp. 3d 1085, 1097 n. 5 (D. Kan. 2015) (concluding medical necessity testimony from expert

7   nurse was admissible because it was based on reliable information provided by plaintiffs' medical

8   providers not her own education, training, and experience).  Arik's evidence does not create a

9   genuine dispute about whether the Vista Health hospitalists acted with the requisite scienter.

10                              2.      *Desert View Lacked The Requisite Scienter*

11          Arik's purported scienter evidence against Desert View is even thinner.  As a threshold

12   issue, Arik offers *no response* to Desert View's evidence that its legally-mandated utilization

13   review ("UR") team assessed the inpatient admissions challenged by Arik in real-time and

14   determined that each episode satisfied the InterQual criteria for inpatient admission.  *See* ECF No.

15   173-3, ¶¶ 4-11.  The UR process is specifically designed to ensure that an independent team

16   assesses the propriety of a hospital's inpatient admissions.  *See* 42 C.F.R. § 482.30(b)(3).  The fact

17   that Desert View used an independent UR process to assess the propriety of the admissions by the

18   Vista Health hospitalists and that this process verified the inpatient admissions at issue as

19   appropriate, consistent with the testimony of Defendants' medical necessity experts (ECF Nos.

20   173-18, p. 10-81, 173-19, p. 7-12, 173-21, p. 10-46), negates any inference of scienter.

21          Arik's purported scienter evidence is neither "ample" nor creates a genuine dispute that

22   Desert View "acted knowingly as defined under the FCA."  ECF No. 186, p. 29-30.  Arik cites

23   Hazelitt's testimony describing a conversation she had with Desert View's CEO (Susan Davila)

24   where Davila supposedly said that the reason she was replacing RPG with Vista Health was to

25   increase hospital admissions.  ECF No. 187-11, p. 130:8-131:14.  However, Hazelitt admitted that

26   Davila did not tell her that Desert View was hiring Vista Health to "unnecessarily" admit patients

27   or provide services to them.  *Id.*  Hazelitt's testimony is consistent with Davila's testimony that

28   she replaced RPG with Vista Health because their specialty services would allow more patients to

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

18

1   be admitted to, and less transferred from, Desert View.  ECF No. 173-2, ¶¶ 12-13, 16-20, 26-27.

2   This is exactly what Desert View's reports reflect: "Vista Health brings specialty service skill in

3   the area(s) of cardiology and pulmonology which has increased the overall acuity … and volume

4   of admitted patients."  ECF No. 187-19, p. 3.  A hospital's desire to increase medically necessary

5   admissions is not probative of scienter under the FCA; otherwise, virtually every hospital in the

6   country could be subject to FCA liability for aspiring to expand its services.  *See United States ex*

7   *rel. Osinek v. Permanente Med. Group, Inc.*, No. 13-cv-03891, 2022 WL 16943886, at *6 (N.D.

8   Cal. Nov. 14, 2022) ("[l]ooking for ways to increase revenue is not in and of itself illegal").

9        Arik's assertion that Desert View disregarded the terms of its contract with Vista Health

10   because it did not force the Vista Health hospitalists to relinquish their privileges based on their

11   disciplinary actions is a red herring.  ECF No. 186, p. 29.  Desert View was aware of Mirza's out-

12   of-state disciplinary history before contracting with Vista Health and received approval from the

13   regional Chief Medical Officer to proceed with the contract; the hospital's independent Medical

14   Executive Committee ("MEC") accepted the recommendation of the Credentials Committee to

15   grant Mirza privileges; and Desert View's independent Community Board of Directors approved

16   the MEC's decision.  ECF No. 173-2, ¶¶ 22-24.  These facts are not probative of fraudulent intent.

17        Arik's remaining "scienter" evidence derives from the two former nurse declarations.  ECF

18   No. 186, p. 29-30.  Again, much of their testimony is inadmissible, misconstrued by Arik, and

19   ultimately of little value because the declarations are conclusory, address irrelevant issues, and

20   concern only a sliver of the alleged fraud scheme given that both nurses left in early 2019.  Notably,

21   both nurses describe raising complaints about the Vista Health hospitalists' admission and testing

22   practices (ECF No. 187-26, ¶¶ 12, 14, 16; ECF 187-27, ¶¶ 9, 17-18), but neither made a single

23   complaint through Desert View's "COE" system raising those concerns.  *See* ECF Nos. 187-28

24   (COEs involving Arshad), 187-29 (COEs involving Mirza).  None of the four COEs submitted by

25   Fletcher (Smith did not submit any COEs about Mirza or Arshad) describe any unnecessary

26   medical care ordered by Mirza or Arshad.  ECF No. 187-28, p. 2-5, 13-17.  Despite disclosing 49

27   current and former employees of Desert View (or its affiliated companies) as witnesses who are

28   "expected to testify regarding the facts and allegations of the Complaint" (see ECF No. 187-38, p.

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

19

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

1  14-22), Arik was only able to obtain testimony from two, and neither declarant supports his

2  scienter allegations.  This dearth of evidence requires that summary judgment be granted.

3      **F.    Arik's Medically Unnecessary Testing Claims Fail**

4          Arik seeks to prove that Desert View submitted 8 false claims to Medicare and Medicaid

5  involving allegedly medically unnecessary testing.  ECF No. 171, p. 34-35; ECF Nos. 173-1, 173-

6  20, 173-22, 173-4, ¶ 8 (Patients 2-3, 63, 66, 69, 70, 75, 1047).   Because these claims were

7  submitted for inpatient services, Desert View was reimbursed a per diem amount for every

8  midnight they spent in the hospital as inpatients.  42 C.F.R. § 413.60(a); ECF No. 173-41, p. 17.

9  Desert View did not receive any additional reimbursement for ancillary testing provided to those

10  patients, whether those services were medically necessary or not.  *Id.*  In response, Arik argues

11  that this does not matter because the Medical Necessity Requirement requires "*all* treatment"

12  rendered to a patient to be reasonable and necessary.  ECF No. 186, p. 30.  Arik cites no authority

13  to support this argument.  That is because it ignores the Medical Necessity Requirement, which is

14  *payment standard*, not an all-encompassing treatment standard.  *See* 42 U.S.C. § 1395y(a)(1)(A)

15  ("*no payment may be made …*) (emphasis added).  Arik also argues that Desert View's challenge

16  "ignores Part B claims made by and paid to the Vista Defendants…."  ECF No. 186, p. 30.  Arik

17  offers no evidence of any claims submitted by the Vista Health defendants for these 8 patient

18  episodes.  *Id.*  Thus, if Arik is unable to prove that those episodes involved medically unnecessary

19  inpatient admissions – the only service for which Desert View was paid, then he cannot establish

20  liability under the FCA for providing non-reimbursed medically unnecessary testing services.

21  **IV.   CONCLUSION**

22          For the foregoing reasons, Desert View respectfully requests that the Court grant summary

23  judgment on the claims asserted in this action.

24  Dated: May 25, 2023                              POLSINELLI LLP

25

26                                                  By: */s/ Gregory R. Jones*
                                                    ───────────────────────────
27                                                  GREGORY R. JONES
                                                    Attorneys for Defendant
28                                                  DVH HOSPITAL ALLIANCE, LLC

1

## <u>CERTIFICATE OF SERVICE</u>

2

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that on May 25, 2023, I

3

caused the foregoing to be served through the Court's CM/ECF system addressed to:

4

Jesse M. Sbaih
Ines Olevic-Saleh
Jesse Sbaih & Associates, Ltd.
The District at Green Valley Ranch
170 South Green Valley Parkway, Suite 280
Henderson, NV 89012
(702) 896-2529
jsbaih@sbaihlaw.com
*Attorneys for Relator*

5

6

7

8

9

Frederick M. Morgan, Jr.
Sonya A. Rao
Jillian L. Estes
Morgan Verkamp, LLC
35 East Seventh Street
Cincinnati, OH 45202
rick.morgan@morganverkamp.com
sonya.rao@morganverkamp.com
jillian.estes@morganverkamp.com
*Attorneys for Relator*

10

11

12

13

14

15

Crane M. Pomerantz
Tiffany Solari
Clark Hill LLP
1700 S. Pavilion Center Drive, Ste. 500
Las Vegas, NV 89135
cpomerantz@clarkhill.com
tsolari@clarkhill.com
*Attorneys for Defendants Irfan Mirza, M.D. and
Vista Health Mirza, M.D. P.C.*

16

17

18

19

20

21

Troy K. Flake
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, NV 89101
(702) 388-6336
troy.flake@usdoj.gov
*Attorneys for United States*

22

23

24

25

26

*/s/ Gregory R. Jones*
GREGORY R. JONES

27

28

Polsinelli LLP
2049 Century Park East
Suite 2900, Los Angeles, CA 90067
310-556-1801

CERTIFICATE OF SERVICE
89628960.9

CASE NO. 2:19-CV-01560-JAD-VCF